UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| TROYCE MANASSA, AUSTIN DASENT, and J'TA FREEMAN, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>NATIONAL COLLEGIATE ATHLETIC ASSOCIATION; THE BOARD OF GOVERNORS OF THE NATIONAL COLLEGIATE ATHLETIC ASSOCIATION; and THE DIVISION I BOARD OF DIRECTORS OF THE NATIONAL COLLEGIATE ATHLETIC ASSOCIATION,<br><br>Defendants. | | Case No. 1:20-cv-03172-RLY-MJD |

## DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

## TABLE OF CONTENTS

I.     INTRODUCTION ............................................................................................- 1 -

II.    FACTUAL BACKGROUND ...........................................................................- 2 -

   A.     The NCAA and the APP ....................................................................- 2 -

   B. Plaintiffs Manassa, Dasent, and Freeman .............................................- 4 -

III.   ARGUMENT ...................................................................................................- 5 -

   A.     Plaintiffs' Complaint Must Be Dismissed for Lack of Standing ...........- 5 -

     1.   Plaintiffs Lack Constitutional Standing Because They Have Suffered No
      Injury in Fact....................................................................................- 5 -

     a)    Plaintiffs Manassa and Dasent's Alleged Injuries Are Conjectural.....................- 6 -

     b)    Plaintiff Freeman Does Not Allege any Injury at All, Nor Does She
      Adequately Allege a Certain Future Injury..........................................- 7 -

     2.   Plaintiffs Manassa and Dasent Lack Constitutional Standing for Their Federal
      Civil Rights Claims Because Their Alleged Injuries Are Not Redressable ...........- 9 -

     4.   Plaintiffs Lack Standing to Seek Injunctive Relief ................................- 10 -

     5.   Alleged Class Status Does Not Confer Standing.....................................- 11 -

   B. Defendants NCAA Board of Governors and NCAA Division I Board of Directors
     Lack Capacity to Be Sued.......................................................................- 12 -

   C. Plaintiffs Manassa and Dasent's Claims under 42 U.S.C. § 1985 Must Be Dismissed
     as Untimely...........................................................................................- 13 -

     1.   The Statute of Limitations for Plaintiffs Manassa and Dasent's Claims under
      42 U.S.C. § 1985 Has Expired..........................................................- 13 -

     2.   The Relevant Statute of Limitations Should Not Be Tolled.....................- 14 -

   D.     Plaintiffs' Complaint Fails to State a Claim under 42 U.S.C. § 1981 ...................- 16 -

     1.   Plaintiffs Do Not Allege Loss of a Contractual Benefit or Privilege .....................- 16 -

     2.   Plaintiffs' Complaint Fails to Satisfy the "But-For" Standard ...............................- 18 -

     3.   Plaintiffs' Complaint Does Not Plausibly Plead Purposeful Discrimination .........- 19 -

   E. Plaintiffs' Complaint Fails to State a Claim under 42 U.S.C. § 1985 .........................- 22 -

i

1.  Plaintiffs Cannot Allege a Conspiracy as a Matter of Law ....................................- 23 -

2.  Plaintiffs' Complaint Does Not Plausibly Plead Discriminatory Animus .............- 23 -

F.  Plaintiff Freeman Fails to State a Claim under the D.C. Human Rights Act ...............- 24 -

IV.  CONCLUSION............................................................................................................- 26 -

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .................................................................................19, 20, 21, 23

*Asher v. Chase Bank USA, N.A.*,
  310 F. App'x 912 (7th Cir. 2009) .............................................................................14

*Cada v. Baxter Healthcare Corp.*,
  920 F.2d 446 (7th Cir. 1990) ....................................................................................14

*Cathedral of Joy Baptist Church v. Vill. of Hazel Crest*,
  22 F.3d 713 (7th Cir. 1994) ......................................................................................13

*Charleston v. Bd. of Trustees of Univ. of Illinois at Chicago*,
  741 F.3d 769 (7th Cir. 2013) ...............................................................................19, 23

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013) ....................................................................................................7

*Clark v. City of Braidwood*,
  318 F.3d 764 (7th Cir. 2003) ....................................................................................15

*Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*,
  589 U.S. ___, 140 S. Ct. 1009 (2020) ..................................................................17, 18

*In re Copper Antitrust Litig.*,
  436 F.3d 782 (7th Cir. 2006) ....................................................................................14

*Copperweld Corp v. Independence Tube Corp.*,
  467 U.S. 752 (1984) ..................................................................................................22

*Exec. Sandwich Shoppe, Inc. v. Carr Realty Corp.*,
  749 A.2d 724 (D.C. 2000) ...........................................................................................7

*Gay Rights Coal. of Georgetown Univ. Law Ctr. v. Georgetown Univ.*,
  536 A.2d 1 (D.C. 1987) .............................................................................................24

*Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania*,
  458 U.S. 375 (1982) ..................................................................................................15

*Grendell v. Ohio Supreme Court*,
  252 F.3d 828 (6th Cir. 2001) ....................................................................................10

*Heard v. Sheahan,*
    253 F.3d 316 (7th Cir. 2001) ..........................................................................15

*Hecker v. Deere & Co.,*
    556 F.3d 575 (7th Cir. 2009) .............................................................................2

*Heslep v. Ams. for African Adoption, Inc.,*
    890 F. Supp. 2d 671 (N.D.W. Va. 2012) ..........................................................12

*Hoagland v. Town of Clear Lake, Ind.,*
    415 F.3d 693 (7th Cir. 2005) .......................................................................12, 13

*McCauley v. City of Chicago,*
    671 F.3d 611 (7th Cir. 2011) ............................................................................23

*McReynolds v. Merrill Lynch & Co.,*
    694 F.3d 873 (7th Cir. 2012) .......................................................................18, 20

*Means v. City of E. St. Louis, Ill.,*
    No. 12-CV-655-WDS, 2012 WL 6052054 (S.D. Ill. Dec. 5, 2012) ....................14

*Molovinsky v. Fair Employment Council of Greater Washington, Inc.,*
    683 A.2d 142 (D.C. 1996) ..................................................................................7

*Naguib v. Illinois Dep't of Prof'l Regulation,*
    986 F. Supp. 1082 (N.D. Ill. 1997) ...................................................................23

*Nicosia v. Amazon.com, Inc.,*
    834 F.3d 220 (2d Cir. 2016)..............................................................................10

*Novak v. State Parkway Condo. Ass'n,*
    No. 13 C 08861, 2015 WL 1058014 (N.D. Ill. Mar. 6, 2015) ............................12

*O'Shea v. Littleton,*
    414 U.S. 488 (1974)..........................................................................................11

*Odogba v. Wisconsin Dep't of Justice,*
    22 F. Supp. 3d 895 (E.D. Wis. 2014)................................................................21

*Payton v. Rush-Presbyterian-St. Luke's Med. Ctr.,*
    184 F.3d 623 (7th Cir. 1999) ............................................................................22

*Rozar v. Mullis,*
    85 F.3d 556 (11th Cir. 1996) (applying Georgia's personal injury statute of
    limitations to § 1985 claim) .............................................................................13

*Schirmer v. Nagode,*
    621 F.3d 581 (7th Cir. 2010) ..............................................................................9

*Seung-Whan Choi v. Bd. of Trustees of Univ. of Illinois*,
 No. 16 C 11627, 2017 WL 3278823 (N.D. Ill. Aug. 2, 2017) .................................................5

*Sierakowski v. Ryan*,
 223 F.3d 440 (7th Cir. 2000) .................................................................................................10

*Smith v. Gomez*,
 550 F.3d 613 (7th Cir. 2008) .................................................................................................22

*Smith v. Henderson*,
 982 F. Supp. 2d 32 (D.D.C. 2013) .........................................................................................24

*Spokeo, Inc. v. Robins*,
 578 U.S. ___, 136 S. Ct. 1540 (2016) .................................................................................5, 11

*Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*,
 554 U.S. 269 (2008) ................................................................................................................8

*Summerhill v. Terminix, Inc.*,
 637 F.3d 877 (8th Cir. 2011) .................................................................................................14

*Theta Chi Fraternity, Inc. v. Leland Stanford Junior Univ.*,
 212 F. Supp. 3d 816 (N.D. Cal. 2016) ....................................................................................12

*Tierney v. Vahle*,
 304 F.3d 734 (7th Cir. 2002) ..................................................................................................5

*Tsau v. United States*,
 805 F. App'x 434 (7th Cir. 2020) ...........................................................................................6

*United States v. Kubrick*,
 444 U.S. 111 (1979) ..............................................................................................................14

*Willmschen v. Trinity Lakes Improvement Ass'n*,
 840 N.E.2d 1275 (Ill. Ct. App. 2005) .....................................................................................12

*Wilson v. Giesen*,
 956 F.2d 738 (7th Cir. 1992) .................................................................................................13

*Ziglar v. Abbasi*,
 137 S. Ct. 1843 (2017) ...........................................................................................................22

**Statutes**

42 U.S.C. § 1981 ................................................................................................................ *passim*

42 U.S.C. § 1985 ................................................................................................................ *passim*

D.C. Code § 2-1402.01 ..............................................................................................................24

D.C. Code § 2-1402.68 .................................................................................................24

Ga. Code § 9-3-33 ........................................................................................................13

Ind. Code Ann. § 16-22-3-24 ......................................................................................11

Ind. Code Ann. § 16-23-1-47 ......................................................................................11

Ind. Code Ann. § 21-27-4-2 .........................................................................................12

Ind. Code Ann. § 21-27-5-2 .........................................................................................12

**Other Authorities**

Federal Rule of Civil Procedure Rule 9(b) ..................................................................14

Federal Rule of Civil Procedure 17(b) ...................................................................11, 12

Ind. Trial Rule 17(E) ...................................................................................................11

Although Plaintiffs purport to represent a class in bringing claims against Defendants National Collegiate Athletic Association; the Board of Governors of the National Collegiate Athletic Association; and the Division I Board of Directors of the National Collegiate Athletic Association, they do not even have standing themselves to assert these claims. Even if they could satisfy that basic threshold issue, their claims are untimely and deficient on the merits. Defendants respectfully request that the Court grant their motion and dismiss the claims against them pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## I.      INTRODUCTION

This is a case brought by three individuals who previously participated in Division I college athletics. The Complaint alleges that the NCAA's Academic Performance Program ("APP") discriminates against Black student-athletes, in general, and historically black colleges and universities ("HBCU"), in particular, regarding postseason ineligibility penalties. The Complaint asserts claims under 42 U.S.C. § 1981, 42 U.S.C. § 1985, and the D.C. Human Rights Act ("DCHRA").

Plaintiffs purport to represent one nationwide class and two subclasses—(1) all Black student-athletes who participated in Division I athletics at an HBCU and experienced a postseason ineligibility penalty from the 2010-11 season onward (the "Nationwide Class"), (2) all Black student-athletes who participated in Division I athletics at an HBCU during the 2020-21 season ("Current DI HBCU Subclass"), and (3) all Black student-athletes who participated in Division I athletics at an HBCU located in the District of Columbia from the 2010-11 season onward (the "District of Columbia Subclass").

Four deficiencies in the Complaint warrant the requested dismissal. First, the named plaintiffs lack standing to bring the claims asserted in the Complaint. Second, neither the Board

of Governors of the NCAA nor the Division I Board of Directors of the NCAA are entities with capacity to be sued. Third, Plaintiffs Manassa and Dasent's claims under 42 U.S.C. § 1985 are untimely. Finally, the Complaint fails substantively for a number of reasons as to the pleaded causes of action. As such, for the reasons set forth below, the Complaint should be dismissed.

## II.      FACTUAL BACKGROUND[1]

### A.      The NCAA and the APP

The NCAA is an unincorporated association of educational institutions and conferences which administers intercollegiate athletic competition. Complaint at ¶ 54. The NCAA's Constitution and Bylaws govern the conduct of intercollegiate athletics programs of member institutions in areas such as ethics, eligibility, and conduct. *Id.* at ¶ 55. The Board of Governors, composed of Presidents and Chancellors from schools of various sizes and regions plus five members unaffiliated with any member institution, is charged with ensuring that each of the NCAA's three athletic divisions operates consistently with the basic purposes, fundamental policies and general principles of the Association. *Id.* at ¶ 57-58. Member institutions are organized into three athletic divisions, each with separate rules governing athletics, which are proposed and adopted by the member institutions and conferences. *Id.* at ¶ 62-63; see § 5.01.01 of reference (NCAA Division I Manual) cited in n. 12 of the Complaint, at 12. Division I has its own Board of Directors, which provides strategic direction and oversight for that division's collegiate model. *Id.* at ¶ 63.

---

[1] This Factual Background recites the pertinent facts set forth and alleged in the Complaint as if true for purposes of this motion only.  It also cites to references footnoted within the Complaint as well as information central to the allegations set forth and alleged in the Complaint. *See Hecker v. Deere & Co.*, 556 F.3d 575, 582 (7th Cir. 2009) (finding that the district court properly considered "documents to which the Complaint had referred" and that were "central to the plaintiffs' claim.").

The member institutions within the NCAA have historically enacted legislation to maintain academic eligibility requirements that dictate whether a student-athlete or sports team at a member institution is eligible to participate in regular season and postseason competition. *Id.* at ¶ 107-108. These academic eligibility requirements have evolved several times since the first implementation of such requirements in the 1960s, culminating in the current system, the APP, enacted in 2004. *Id.* at ¶ 130. The APP considers the academic metrics of an entire team to determine whether to impose penalties. *Id.* The APP features a three-level penalty structure, with penalties increasing in severity for successive years of academic underperformance. *Id.* at ¶ 131. One penalty available from level two onward is restriction of a team's ability to participate in postseason competition. *Id.* at ¶ 132.

The APP is based on two metrics, the Graduation Success Rate ("GSR") and the Academic Progress Rate ("APR"). *Id.* at ¶ 134. A team's APR score is used to determine eligibility for postseason competition. *Id.* at ¶ 149. In calculating a team's cumulative APR score, each member on the team is eligible to receive two "points"—one for continuing enrollment as a full-time student, and one for meeting the NCAA's individual standards for academic eligibility. *Id.* at ¶ 135. The total points for the team are divided by the number of possible points and then multiplied by 1000. *Id.* The Division I Academic Performance Program Manual lists the minimum APR score for a team to participate in postseason competition as 930, although teams may use several "filters" to regain postseason eligibility based on (for example) a particular school's low-resource status.[2]

---

[2] NCAA Division I Academic Performance Program Manual, June 1, 2014, at 72-73.

B.      **Plaintiffs Manassa, Dasent, and Freeman**

Plaintiff Manassa played basketball on a full athletic scholarship at Savannah State University ("SSU") in Georgia during the 2015/2016 and 2016/2017 seasons, his junior and senior years. Complaint at ¶ 17. Before enrolling at SSU, Manassa alleges to have signed a National Letter of Intent ("NLI") and received a full athletic scholarship. *Id.* at ¶ 19. Neither a copy of the NLI or the specific terms of the purported agreement with SSU was submitted with Plaintiffs' Complaint. SSU's men's basketball team was barred from postseason competition for the 2016/2017 season as an APP penalty. *Id.* at ¶ 23-24. Manassa intends to continue his career by playing basketball overseas in the year 2021. *Id.* at ¶ 30.

Plaintiff Dasent transferred to Savannah State University from a junior college and played basketball on a full athletic scholarship there during his junior and senior years, during the 2016/2017 and 2017/2018 seasons. *Id.* at ¶¶ 32, 35. Before he began to play basketball at SSU, Dasent alleges to have also signed an NLI and received a full athletic scholarship, but neither a copy of the NLI or the specific terms of the purported agreement with SSU was submitted with the Complaint. *Id.* at ¶ 34. Dasent played basketball overseas following his graduation but is currently employed providing private basketball coaching. *Id.* at ¶¶ 45-46.

Plaintiff Freeman enrolled at Howard University, located in the District of Columbia, in the fall of 2019. *Id.* at ¶ 49. She was a member of the lacrosse team during the 2019/2020 season, and alleges to have received a full athletic scholarship from Howard, but no terms of that agreement are disclosed in the Complaint and she does not allege to have signed an NLI. Furthermore, Freeman is currently not a member of the Howard lacrosse team, alleging only that she "intends to play during the 2021/2022 season." *Id.* at ¶¶ 48, 50. She claims to have turned down other college scholarship offers to attend Howard in 2019. *Id.* at ¶ 51. Howard University's

women's lacrosse team was barred from postseason competition as an APP penalty for the 2012/2013 and 2014/2015 seasons but has not been subject to any such penalties since. *See* reference (NCAA APR Search Database) cited in n. 91 of the Complaint, at 37.[3]

## III.   ARGUMENT

### A.   Plaintiffs' Complaint Must Be Dismissed for Lack of Standing

To have constitutional standing, a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. ___, 136 S. Ct. 1540, 1547 (2016), as revised (May 24, 2016). Here, Plaintiffs fail to plead facts showing that they have suffered any injury in fact. Moreover, even if the Court were to find that the Complaint contains sufficient facts to show injury in fact (which it does not), the injuries Plaintiffs Manassa and Dasent allege are not capable of redress by a favorable judicial decision.

### 1.   Plaintiffs Lack Constitutional Standing Because They Have Suffered No Injury in Fact

To establish injury in fact, a plaintiff must show that he or she suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Spokeo*, 136 S. Ct. at 1548. Leaving aside for the moment the discussion of whether Plaintiffs have suffered any invasion of a legally protected interest, the injuries alleged by Plaintiffs Manassa and Dasent are speculative at best, while Plaintiff

---

[3] The Complaint cites to the NCAA APR Search Database in its entirety. "When a document is referenced in the complaint and central to plaintiff's claims, the Court may consider it in ruling on the motion to dismiss." *Seung-Whan Choi v. Bd. of Trustees of Univ. of Illinois*, No. 16 C 11627, 2017 WL 3278823, at *1 (N.D. Ill. Aug. 2, 2017) (citing *Hecker*, 556 F.3d at 582–83; *see also Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002) ("[T]he purpose of requiring conversion from Rule 12(b) or Rule 12(c) to Rule 56, if matters outside the pleadings are considered by the court, is to make sure that each party has notice of evidence that the opposing party wants to present in support of his claim or defense; reference in the pleading to the evidence furnishes that notice.").

Freeman's team was not even the subject of a post-season ban during her tenure.  None of these "injuries" can confer constitutional standing.

a)    **Plaintiffs Manassa and Dasent's Alleged Injuries Are Conjectural.**

The Complaint alleges that Plaintiffs Manassa and Dasent were not permitted to participate in postseason competition following the 2016/2017 basketball season, but the Complaint falls far short of showing any resulting concrete, particularized and (importantly) non-conjectural injury to these plaintiffs.

The Complaint couches its allegations of injury to Manassa and Dasent in wholly conjectural, "what-if" language that is far from particularized to each plaintiff. The only allegations specific to Manassa are that his "hopes for significant career milestones, such as scoring 1,000 points over his college career, were thwarted because of NCAA's postseason ban." Complaint at ¶ 194. According to Manassa, "[s]uch accolades and achievements would inevitably have assisted his post-college basketball career." *Id*. The allegations with respect to Dasent are even sparser: the Complaint alleges only that his team finished first but was banned from postseason play; it does not identify (even conjecturally) opportunities Dasent allegedly lost as a result. *Id.* ¶¶ 196-97.

These are precisely the type of allegations that courts have found inadequate to confer standing. As the Seventh Circuit recently held in rejecting similar claims, "a bald assertion that the [defendant] has deprived him credit, fame, and fortune is far-fetched, well beyond conjecture, and insufficient to confer standing." *Tsau v. United States*, 805 F. App'x 434 (7th Cir. 2020). Even if SSU had access to postseason play, it is wholly uncertain and conjectural that Manassa would have reached any specific point milestone, or indeed whether he would have played at all. By way of example, SSU's men's basketball team could have lost in the first round, or Manassa

- 6 -

could have experienced an injury. The same applies to Dasent—i.e., how the team would have performed and whether he would have actually played (let alone, played well) is speculative at best.

The Complaint does not contain any facts to support the allegation that Manassa and Dasent lost any specific opportunities because of their lack of postseason play, nor does it state that they experienced any reductions in salary or revocations of professional basketball opportunities as a consequence. Indeed, as to Dasent, the Complaint alleges that, after graduating from SSU, he played basketball overseas and "is currently providing private basketball coaching and training to youth basketball teams and players." Complaint at ¶¶ 45-46. In short, neither Manassa nor Dasent have alleged actual, concrete, non-conjectural and particularized injuries sufficient for constitutional standing.

> **b)  Plaintiff Freeman Does Not Allege any Injury at All, Nor Does She Adequately Allege a Certain Future Injury.**

Plaintiff Freeman has not experienced any postseason penalty during her time on the lacrosse team at Howard University. Instead, she asks the Court to find that she has standing because "Ms. Freeman and her lacrosse team *are at risk* of being banned from postseason play by the NCAA's current rules." Complaint at ¶ 53 (emphasis added). Freeman does not plead that she is a current member of the Howard University women's lacrosse team, instead alleging that she participated in the 2019/2020 season and *intends* to resume participation for the 2021/2022 season. Complaint at ¶ 50. As such, even were a postseason penalty impending on the team, whether Ms. Freeman would be affected by that penalty is speculative given her allegations. Her

claims, including her claim under the DCHRA,[4] must be dismissed for lack of constitutional standing.

"[T]hreatened injury must be "certainly impending" to constitute injury in fact," and "[a]llegations of possible future injury" are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (citing *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)). Freeman's claim fails under these standards. Not only does Freeman fail to allege that she is currently a member of the Howard University women's lacrosse team, she also does not (and cannot) allege that she has or will suffer any injury in fact. Nothing in the Complaint supports a finding that a postseason ineligibility penalty to Howard University's women's lacrosse team is impending, and this is borne out by the lack of information on any future penalties in the NCAA's APR database. *See* reference (NCAA APR Search Database) cited in n. 91 of the Complaint, at 37. At best, the Complaint alleges that, *in the future*, Howard University's lacrosse team (a team Freeman has not alleged she is currently a member of) *might* be subject to APP post-season play penalties because Howard University is an HBCU or suffered penalties several years ago. These are precisely the type of speculative allegations about future injury that cannot confer standing. Because Howard University's women's lacrosse team was not subject to any penalties during the 2019/2020 season, the Complaint does not allege that any such penalties are impending, and Freeman does not allege she is currently a member of Howard's women's lacrosse team, Freeman lacks standing to bring a claim under 42 U.S.C. § 1981, 42 U.S.C. § 1985, or the DCHRA.

---

[4] Standing under the DCHRA is co-extensive with constitutional standing. *See Molovinsky v. Fair Employment Council of Greater Washington, Inc.*, 683 A.2d 142, 146 (D.C. 1996). Consequently, to have standing under the DCHRA, a plaintiff must allege "a minima of injury in fact[.]" *Exec. Sandwich Shoppe, Inc. v. Carr Realty Corp.*, 749 A.2d 724, 733 (D.C. 2000) (citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 364 (1982)).

### 2. Plaintiffs Lack Constitutional Standing for Their Federal Civil Rights Claims Because Their Alleged Injuries Are Not Redressable

"[T]o demonstrate redressability, the plaintiff must show a substantial likelihood that the requested relief will remedy the alleged injury in fact." *Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 287 (2008) (internal quotation marks omitted). Should the Court find that Manassa and Dasent have sufficiently alleged an injury in fact (which they have not), their claims still fail the constitutional standing test because the Court cannot fashion relief that would redress the alleged harms.[5]

The Court cannot turn back the hands of time and order that SSU be permitted to participate in postseason play for the 2016/2017 season, nor provide Manassa with a 1,000-point career points total, nor can it provide Manassa or Dasent with the media exposure, attention from scouts, or differing or better job opportunities that they claim players lose because of the postseason ineligibility penalties. Plaintiffs further do not and cannot plead financial harm with enough specificity that the Court could fashion a damages award.

Finally, even if the Court could find that the alleged injuries are redressable, the NCAA is not the proper party to provide such redress. Manassa and Dasent allege to have entered into an NLI contract with SSU, not the NCAA. Any harm experienced by Manassa or Dasent is traceable either to (1) SSU's purported failure to inform potential student-athletes about the team's penalty status, or (2) these plaintiffs failing to conduct reasonable research into the penalty status of the school before committing.

---

[5] Freeman's claims also fail redressability because she does not allege that she is a current student-athlete, and she is not a member of a team that is subject to APP penalties.

### 4.    Plaintiffs Lack Standing to Seek Injunctive Relief

Plaintiffs, in their Complaint, also appear to seek permanent injunctive relief against the NCAA. Complaint at ¶ 223. However, "[t]o establish their standing to seek [injunctive] relief, the plaintiffs must show that: (1) they are under threat of an actual and imminent injury in fact; (2) there is a causal relation between that injury and the conduct to be enjoined; and (3) it is likely, rather than speculative or hypothetical, that a favorable judicial decision will prevent or redress that injury." *Schirmer v. Nagode*, 621 F.3d 581, 584–85 (7th Cir. 2010).

Here, Manassa and Dasent have not and cannot show that they are under threat of an actual or imminent injury. Past harm, even to the same plaintiff requesting injunctive relief, is insufficient to establish standing. *See Sierakowski v. Ryan*, 223 F.3d 440, 444 (7th Cir. 2000) (no standing because prospect of future, non-consensual HIV tests was "purely speculative" despite previous non-consensual test). Both Manassa and Dasent have already graduated from college, and both have already invalidated any remaining collegiate athletic eligibility they may have had by playing professional basketball overseas. Any action taken by Defendants going forward cannot impact them, and any court order enjoining Defendants' conduct would similarly have no effect. Because both injury and redressability are absent, neither Manassa nor Dasent has standing to request injunctive relief.

Plaintiff Freeman, while possibly still a student at Howard University, similarly does not plead that she is under threat of an actual or imminent injury in fact. First, and as discussed above, Freeman does not plead that she is currently a student-athlete at Howard and only speculatively pleads her intent to return to playing lacrosse for the 2021/2022 season. As such, any action taken by the NCAA with regard to the women's lacrosse team would have only a hypothetical possibility of impacting her at all. Further, even presuming that Freeman does

adequately plead her status as a student-athlete, the Complaint does not allege that the women's lacrosse team at Howard is the subject of any impending postseason ineligibility penalty. Instead, it asks the court to infer that because the team was subject to such a penalty several years ago, there is a risk that it will happen again. "While enhanced risk of future injury may constitute injury-in-fact in certain circumstances, such injuries are only cognizable where the plaintiff alleges actual future exposure to that increased risk." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016) (internal quotation marks omitted); *see also Grendell v. Ohio Supreme Court*, 252 F.3d 828, 833 (6th Cir. 2001) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)) ("Previous sanctions might be 'evidence bearing on whether there is a real and immediate threat of repeated injury.' However, where the threat of repeated injury is speculative or tenuous, there is no standing to seek injunctive relief."). Without the threat of actual or imminent harm, Freeman similarly has no standing to request injunctive relief.

### 5.    Alleged Class Status Does Not Confer Standing

If the Court determines that the named plaintiffs lack standing to bring any claims on their own behalf, then their class-action claims must also fail for lack of standing. As held by the United States Supreme Court, "That a suit may be a class action ... adds nothing to the question of standing, for even named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong.'" *Spokeo*, 136 S. Ct. at 1547 n. 6 (quoting *Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 40, n. 20 (1976)), *see also O'Shea v. Littleton*, 414 U.S. 488, 494 (1974).

### B.     Defendants NCAA Board of Governors and NCAA Division I Board of Directors Lack Capacity to be Sued

Federal Rule of Civil Procedure 17(b) provides that, for parties that are neither individuals nor corporations, a party has the "capacity to sue or be sued" according to "the law of the state where the court is located." *See* Fed. R. Civ. P. 17(b)(3). Indiana permits an unincorporated association to sue or be sued in its common name. *See* Ind. Trial Rule 17(E). However, no Indiana statute allows for suit against a board of directors of an unincorporated association. The Indiana legislature has codified specific exceptions for other types of boards, such as boards of certain hospitals, Ind. Code Ann. §§ 16-22-3-24, 16-23-1-47, and boards of trustees of certain universities, Ind. Code Ann. §§ 21-27-5-2, 21-27-4-2. However, the legislature has not created an exception for suit against a board of any type of entity or an unincorporated association like the NCAA.

Several courts in other jurisdictions have also found that boards do not exist separate from their corporate counterparts, and are not separate legal entities with capacity to be sued under Rule 17(b)(3). *See Theta Chi Fraternity, Inc. v. Leland Stanford Junior Univ.*, 212 F. Supp. 3d 816, 821 (N.D. Cal. 2016) (granting motion to strike claims against board of fraternity association); *Novak v. State Parkway Condo. Ass'n*, No. 13 C 08861, 2015 WL 1058014, at *3 (N.D. Ill. Mar. 6, 2015) (referencing the "general common-law principle that a board of directors can neither sue in its own name nor be sued"); *Heslep v. Ams. for African Adoption, Inc.*, 890 F. Supp. 2d 671, 678 (N.D.W. Va. 2012) (dismissing claims under 17(b) against a board because it is not a separate legal entity from the corporation); *Willmschen v. Trinity Lakes Improvement Ass'n*, 840 N.E.2d 1275, 1280 (Ill. Ct. App. 2005) (affirming dismissal of a corporate board of directors as a separate entity, collecting cases from other jurisdictions). This Court should join

- 12 -

those courts and dismiss the claims against the NCAA Board of Governors and NCAA Division I Board of Directors, both of which lack the capacity to be sued independently.

### C.   Plaintiffs' Claims under 42 U.S.C. § 1985 Must Be Dismissed as Untimely

#### 1.   The Statute of Limitations for Plaintiffs Manassa and Dasent's Claims under 42 U.S.C. § 1985 Has Expired

For claims under 42 U.S.C. § 1985, "the statute of limitations is determined by the law of the state in which the violation took place." *Hoagland v. Town of Clear Lake, Ind.*, 415 F.3d 693, 699–700 (7th Cir. 2005). As Plaintiffs Manassa and Dasent were both student-athletes at Savannah State University in Georgia when the men's basketball team experienced the postseason ineligibility penalty, Georgia's statute of limitations applies. Federal courts determining the applicable statute of limitations for civil rights claims refer to the relevant state's personal injury statute of limitations. *See id.* at 700 (applying Indiana's personal injury statute of limitations to § 1985 claim); *Rozar v. Mullis*, 85 F.3d 556, 561 (11th Cir. 1996) (applying Georgia's personal injury statute of limitations to § 1985 claim). Georgia law provides, "[A]ctions for injuries to the person shall be brought within two years after the right of action accrues." Ga. Code § 9-3-33.

"Civil rights claims . . . accrue when the plaintiff knows or should know that his or her constitutional rights have been violated." *Wilson v. Giesen*, 956 F.2d 738, 740 (7th Cir. 1992). Although the Complaint specifically refuses to state when any plaintiff incurred their respective alleged injuries, Plaintiffs Manassa and Dasent were subjectively aware of the postseason ban, and thus their claims accrued, in the spring of 2017, when their team was not allowed to participate in postseason play. Therefore, any claims under § 1985 should have been brought, at the latest, within two years of the start of postseason competition following the 2016/2017 basketball season, by the spring of 2019. Plaintiffs Manassa and Dasent, however, did not file

this suit until December 10, 2020. Plaintiffs' claims under 42 U.S.C. § 1985 are, thus, untimely and should be dismissed.

### 2.    The Relevant Statute of Limitations Should Not Be Tolled

The Complaint states generally that the court should consider any and all applicable statutes of limitations tolled "by reason of the discovery rule, Defendants' fraudulent concealment, and/or Defendants' continuing violations." Complaint at ¶ 207. None of these exceptions to the relevant statute of limitations are pertinent here.

The discovery rule "postpones the beginning of the limitations period of a federal claim from the date the party is injured to the date when the party discovers or should have discovered the injury, exercising reasonable diligence." *Cathedral of Joy Baptist Church v. Vill. of Hazel Crest*, 22 F.3d 713, 717 (7th Cir. 1994). Further, "[t]he burden of showing that the complaints falls within the purview of the discovery rule exception requires plaintiff to show that even with exercise of reasonable diligence he could not have known of the purported injury." *Means v. City of E. St. Louis, Ill.*, No. 12-CV-655-WDS, 2012 WL 6052054, at *2 (S.D. Ill. Dec. 5, 2012). Although the Complaint alleges that Manassa and Dasent neither knew nor had reason to know at the time of SSU's postseason ban that their rights had been violated, as previously discussed, they obviously knew about the postseason ban since it allegedly prevented them from playing in the 2016/2017 postseason.[6]

---

[6] Knowledge of a potential legal claim stemming from an injury is not necessary for a claim to accrue. *See United States v. Kubrick*, 444 U.S. 111, 122 (1979) ("We are unconvinced that for statute of limitations purposes a plaintiff's ignorance of his legal rights and his ignorance of the fact of his injury or its cause should receive identical treatment. . . . The prospect is not so bleak for a plaintiff in possession of the critical facts that he has been hurt and who has inflicted the injury. He is no longer at the mercy of the latter. There are others who can tell him if he has been wronged, and he need only ask."); *see also In re Copper Antitrust Litig.*, 436 F.3d 782, 792 (7th Cir. 2006) ("Under the discovery rule, the statute does not begin running until the plaintiff discovers that he has been injured and who caused the injury.").

"Equitable estoppel, a subset of which is fraudulent concealment, applies when the plaintiff shows that the defendant misled him or took active steps to prevent him from filing suit before the statutory period expired." *Asher v. Chase Bank USA, N.A.*, 310 F. App'x 912, 917 (7th Cir. 2009). Plaintiffs must allege conduct by the defendant "above and beyond the wrongdoing upon which the plaintiff's claim is founded" intended to "prevent the plaintiff from suing in time." *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 451 (7th Cir. 1990). Additionally, "[u]nder Rule 9(b)'s heightened pleading standard, "allegations of fraud, including fraudulent concealment for tolling purposes, [must] be pleaded with particularity." In other words, Rule 9(b) requires plaintiffs to plead "the who, what, when, where, and how: the first paragraph of any newspaper story." *Summerhill v. Terminix, Inc.*, 637 F.3d 877, 880 (8th Cir. 2011) (citing *Great Plains Trust Co. v. Union Pac. R.R. Co.*, 492 F.3d 986, 995 (8th Cir. 2007)). However, Plaintiffs cite to no specific events or statements by Defendants that misled them, instead claiming generally that the NCAA maintains that the APP is nondiscriminatory and that the program is applied fairly. Complaint at ¶ 210.

The doctrine of continuing violation is one that governs when a case accrues, rather than whether the statute of limitations should be tolled. *See Clark v. City of Braidwood*, 318 F.3d 764, 766 (7th Cir. 2003). "A violation is called "continuing," . . . when it would be unreasonable to require or even permit him to sue separately over every incident of the defendant's unlawful conduct." *Heard v. Sheahan*, 253 F.3d 316, 319 (7th Cir. 2001). Although the Complaint assumes that every postseason ineligibility penalty given to any team at an HBCU from the enactment of the APP to present constitutes part of a continuing violation, in this case, the only alleged unlawful conduct that could have had *any* impact on any of the three named plaintiffs is

the postseason ineligibility penalty for the SSU men's basketball team for the 2016/2017 season. Neither Manassa nor Dasent experienced the effect of any further penalties during their time at SSU. Therefore, the doctrine of continuing violation is not applicable to the series of events alleged in the Complaint.

### D.      Plaintiffs' Complaint Fails to State a Claim under 42 U.S.C. § 1981

42 U.S.C. § 1981(a) states, "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens[.]" The statute defines the phrase "make and enforce contracts" to include "the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." *See* 42 U.S.C. § 1981(b). Further, the United States Supreme Court has held that "§ 1981, like the Equal Protection Clause, can be violated only by purposeful discrimination." *Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 391 (1982).

### 1.      Plaintiffs Do Not Allege Loss of a Contractual Benefit or Privilege

Plaintiffs do not allege that they, as individuals, were prevented from making a contract with their educational institution of choice—to the contrary, Plaintiffs Manassa and Dasent plead that they each signed an NLI with SSU.[7] Plaintiffs do not and cannot allege that they signed a contract with the NCAA; therefore, the substance of Plaintiffs' claim under § 1981 appears to be that the postseason ineligibility penalty from the member-enacted APP legislation prevented Plaintiffs from enjoying the benefits and privileges of their contracts with two of those member institutions—SSU and Howard.

---

[7] The Complaint states that Plaintiff Freeman was a member of the Howard University women's lacrosse team for the 2019/2020 season, and that she received an athletic scholarship, but does not specifically allege that she signed an NLI. As such, she, of course, does not have a Section 1981 claim.

The Complaint states that when a student signs an NLI, he or she agrees to attend a particular school "as a student-athlete," in exchange for which the student will receive "athletics financial aid for a particular number of years and the ability to participate and compete in NCAA athletics." Complaint at ¶ 102. Plaintiffs have not provided a copy of their NLIs, nor have they disclosed the specific terms contained in these agreements with their respective schools. Hence, those NLIs, along with their respective terms, are not before the Court. For this reason alone, Plaintiffs do not state a claim for deprivation of any contractual benefit or privilege. However, to the extent that the terms of Plaintiffs' NLIs are consistent with the typical terms referenced and contemplated on nationalletter.org, an educational site on National Letters of Intent (which is referenced in and central to the complaint), a review of those typical terms reveals that postseason play *is not* an intended benefit or privilege of the NLIs.[8]

The website further provides that an NLI is typically only an agreement to attend an institution in exchange for financial aid; there is no guarantee that the athlete will even make the team, let alone play.  As set forth in the Frequently Asked Questions section of the NLI website, a student is not required to sign an NLI, but a student who does so agrees to "attend the institution listed on the NLI for one academic year in exchange for that institution awarding athletics financial aid for one academic year."  There is no mention of postseason competition.[9] Even more plainly, the website posits that the standard NLI does not guarantee the athlete a spot on the team:

Question: "By signing an NLI, am I guaranteed that I will play on a team?"

---

[8] *See* reference cited in n. 32 of the Complaint, at 21.
[9] National Letter of Intent Signing the NLI FAQs
(http://www.nationalletter.org/frequentlyAskedQuestions/signingTheNli.html).

Answer: "No. Signing an NLI does not guarantee you playing time or a spot on the team. Rather, by signing an NLI, the institution with which you signed agrees to provide you athletics financial aid for the academic year."[10]

As such, participation in postseason competition, or in any competition at all, is not a benefit or privilege conferred by signing an NLI with a particular NCAA member institution. Rather, the benefit and privilege inuring from an NLI is the receipt of athletics financial aid for an academic year. Here, none of the plaintiffs allege that they did not receive financial aid from their respective schools, and in fact plead the opposite. *See* Complaint at ¶¶ 19, 34, 48. Plaintiffs cannot claim a non-existent NLI benefit and privilege—i.e., postseason play—in order to manufacture a § 1981 claim. Additionally, even if the court finds that postseason play is an intended benefit or privilege of the NLI contract, which it should not, Howard University's women's lacrosse team was not penalized while Freeman was a member, and she has therefore suffered no deprivation of a benefit or privilege under the NLI.

Because Plaintiffs received the benefits and privileges owed to them as party to their respective NLI contracts, they cannot state a claim under 42 U.S.C. § 1981.

### 2. Plaintiffs' Complaint Fails to Satisfy the "But-For" Standard

In a case defining the standard for a plaintiff who brings a claim under § 1981, the Supreme Court recently held, "To prevail, a plaintiff must initially plead and ultimately prove that, but for race, it would not have suffered the loss of a legally protected right." *Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 589 U.S. ___, 140 S. Ct. 1009, 1019 (2020). The Supreme Court expanded on the application of this "but-for" test elsewhere in the opinion:

> The guarantee that each person is entitled to the "same right ... as is enjoyed by white citizens" directs our attention to the counterfactual—what would have happened if the plaintiff had

---

[10] National Letter of Intent Binding Agreement FAQs (http://www.nationalletter.org/frequentlyAskedQuestions/bindingAgreement.html).

been white? This focus fits naturally with the ordinary rule that a plaintiff must prove but-for causation. If the defendant would have responded the same way to the plaintiff even if he had been white, an ordinary speaker of English would say that the plaintiff received the "same" legally protected right as a white person. . . . Nor does anything in the statute signal that this test should change its stripes (only) in the face of a motion to dismiss.

*Id.* at 1015.

The Complaint here clearly fails to meet the "but-for" standard, despite its conclusory allegation that "[b]ut for [Plaintiffs'] race, they would not have suffered the loss of their legally-protected right to make and enforce contracts and to enjoy the benefits of those contracts." Complaint at ¶ 253. Indeed, had Plaintiffs been white, and all other relevant facts remained identical, the men's basketball team at SSU still would have received the same penalty of postseason ineligibility for failure to meet the relevant APP standards. Moreover, as the Complaint does not allege that the Howard University women's lacrosse team was subject to any APP penalties while Freeman was a member, she does not allege any loss of a purported contractual benefit or privilege. As such, Plaintiffs have not and cannot satisfy the "but for" standard in *Comcast.*

### 3.    Plaintiffs' Complaint Does Not Plausibly Plead Purposeful Discrimination

To show the required discriminatory intent under § 1981, "a plaintiff must demonstrate 'that the decisionmaker ... selected or reaffirmed a particular course of action at least in part because of, not merely in spite of, its adverse effects on an identifiable group.'" *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 885–86 (7th Cir. 2012).

Under the *Twombly/Iqbal* plausibility pleading standard, "[t]o state a claim for relief, a complaint must provide more than 'abstract recitations of the elements of a cause of action or conclusory legal statements.' Instead, a plausible claim must include 'factual content' sufficient

to allow the court 'to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Charleston v. Bd. of Trustees of Univ. of Illinois at Chicago*, 741 F.3d 769, 772 (7th Cir. 2013) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Additionally, where the factual content of a claim is consistent with unlawful behavior, but "compatible with" and "more likely explained by, lawful . . . behavior," the court will hold that the facts as pled do not plausibly state a claim for relief. *Iqbal*, 556 U.S. at 680.

The allegations here are almost identical to those the Court found conclusory and insufficient in *Iqbal*. *Compare Iqbal*, 556 U.S. at 680 ("Respondent pleads that petitioners "knew of, condoned, and willfully and maliciously agreed to subject [him]" to harsh conditions of confinement "as a matter of policy, solely on account of [his] religion, race, and/or national origin and for no legitimate penological interest"), *with* Complaint at ¶ 139 ("The NCAA had clear knowledge, purpose, and intent to address the racial disparities through the newly reformed APP, fully recognized that the APP continued to perpetuate the disparities, and implemented it anyway."). The allegations that "[t]he NCAA's continued enforcement of the APP, including its penalty structure and postseason access bans are intentionally discriminatory and were instituted because of race," and that "these acts violate Section 1981's prohibition against purposeful discrimination (Complaint at ¶ 235)," are likewise conclusory. These types of "abstract recitations" of the elements of a cause of action cannot state a claim for relief and are not entitled to the presumption of truth. *See Iqbal*, 556 U.S. at 681 ("It is the conclusory nature of respondent's allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth.").

As a whole, the facts set forth in the Complaint are just as compatible, and in fact more compatible, with a series of entirely lawful actions on the part of the NCAA and its membership.

- 20 -

As a result, the Complaint fails to state a claim for intentional discrimination under *Iqbal*. *See Iqbal*, 556 U.S. at 680. The Complaint goes into great detail about the disparate impact of the previous academic eligibility standards adopted by the NCAA's members to determine an athlete's eligibility for college sports, and cites to an article wherein the author states that the APP was enacted to "produce improved graduation performance, particularly in specific high-profile sports without having a disparate impact on ethnic minorities." From the Complaint's own source, the APP was thus enacted, not because of, and not even in spite of, but specifically with intent to avoid adverse effects on student-athletes who belonged to an ethnic minority. *See McReynolds*, 694 F.3d at 885–86 ("[A] plaintiff must demonstrate 'that the decisionmaker ... selected or reaffirmed a particular course of action at least in part because of, not merely in spite of, its adverse effects on an identifiable group.'").

The Complaint further admits that the stated purpose for the APP is to "ensure that the membership is dedicated to providing student-athletes with an exemplary educational and intercollegiate athletics experience in an environment that recognizes and supports the primacy of the academic mission of its member institutions, while enhancing the ability of student-athletes to earn a degree." Complaint at ¶ 133 (citing the NCAA Division I Academic Performance Program Manual). The NCAA's efforts to promote academic integrity and prevent its member institutions from exploiting student-athletes for their abilities while denying them a meaningful education should be praised rather than disparaged.

Finally, the Complaint acknowledges that the NCAA and its membership have already taken steps to manage and decrease any adverse effects on specific groups of student-athletes, namely creating the Historically Black Colleges and Universities and Low Resource Institution Academic Advisory Group. Complaint at ¶ 152. Had the member institutions and conferences

enacted the APP because of, rather than in spite of, any adverse effects on a particular class, moving to address and eliminate said effects would be nonsensical at best. This fact, like the others discussed above, supports a finding that it is equally plausible, if not more plausible, that the enactment of the APP was intended to serve the lawful (indeed, laudable) purpose of providing all student-athletes with a quality educational experience in addition to athletic opportunity, rather than part of some master plan to negatively impact the success of those same student-athletes.

As such, because the behavior alleged in the Complaint, as a whole, is "compatible with" and "more likely explained by, lawful . . . behavior," the Court should find that the Plaintiffs have failed to plausibly allege intentional discrimination. *Iqbal*, 556 U.S. at 680.

### E.   Plaintiffs' Complaint Fails to State a Claim under 42 U.S.C. § 1985

"A plaintiff must allege four elements to make out a valid cause of action under § 1985(3): (1) a conspiracy; (2) a purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to his person or property or a deprivation of any right or privilege of a citizen of the United States." *Odogba v. Wisconsin Dep't of Justice*, 22 F. Supp. 3d 895, 914 (E.D. Wis. 2014) (citing *Triad Assocs., Inc. v. Chi. Hous. Auth.*, 892 F.2d 583, 591 (7th Cir. 1989), overruled on other grounds, *Bd. of Cnty. Comm'rs, Wabaunsee Cnty. v. Umbehr*, 518 U.S. 668, 673(1996). The Complaint fails at the first element, as all defendants to this action are part of the same entity, and cannot be the parties to a conspiracy among themselves.

### 1.      Plaintiffs Cannot Allege a Conspiracy as a Matter of Law

Coordinated conduct by constituents of the same entity is considered to be the conduct of a single actor, and cannot form the basis for a finding of conspiracy.  *See Copperweld Corp v. Independence Tube Corp.*, 467 U.S. 752, 769–771 (1984). "Conspiracy requires an agreement— and in particular an agreement to do an unlawful act—between or among two or more separate persons." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1867 (2017) (citing *Copperweld*, 467 U.S. at 769– 771). As such, when two constituents of the same legal entity make an agreement in the course of their official duties for that legal entity, there has not been an agreement between two or more separate people under conspiracy law. *See id.* at 1867; *see also Payton v. Rush-Presbyterian-St. Luke's Med. Ctr.*, 184 F.3d 623, 632 (7th Cir. 1999) ("[U]nder the intracorporate conspiracy doctrine a conspiracy cannot exist solely between members of the same entity."). Here, all defendants exist under the umbrella of the NCAA, and, therefore, cannot be parties to a conspiracy.  Thus, Plaintiffs fail to state a claim under § 1985, and this cause of action must be dismissed.

### 2.      Plaintiffs' Complaint Does Not Plausibly Plead Discriminatory Animus

"Section 1985(3) prohibits a conspiracy to deprive another of equal protection under the law . . . but the conspiracy must be motivated by racial, or other class-based discriminatory animus." *Smith v. Gomez*, 550 F.3d 613, 617 (7th Cir. 2008). Plaintiffs address this requirement with another conclusory recitation of the element: "Defendants' actions were done with invidious discriminatory animus against Blacks and were effectuated through the implementation and imposition of programs that discriminated against Black student-athletes at HBCUs." Complaint at ¶ 264.

Nevertheless, to state a plausible claim for relief, "saying the magic words is not enough: [plaintiffs] must offer "further factual enhancement." *Charleston*, 741 F.3d at 775. Plaintiffs do not present any non-conclusory facts relating to the elements of a § 1985 claim. Instead, the Complaint incorporates by reference the same facts presented in support of all of the claims therein. As discussed above, the facts pled in the complaint about the purpose and effect of the APP program make equally likely, or even more likely, that the APP was enacted for a series of lawful and benign reasons, including to remedy past defects in other academic eligibility programs. *See McCauley v. City of Chicago*, 671 F.3d 611, 617 (7th Cir. 2011) (dismissing case under *Twombly* and *Iqbal* where alleged conduct was "just as consistent with a lawful investigation as an illegal conspiracy").

"[B]ald assertions of discriminatory animus behind the conspirators' action, unsupported by any meaningful, factual allegations," are "not enough to withstand a motion to dismiss." *Naguib v. Illinois Dep't of Prof'l Regulation*, 986 F. Supp. 1082, 1092 (N.D. Ill. 1997) (citing *Bombliss v. County of Lee*, 23 F.3d 410, 1994 WL 117970, at *3 (7th Cir. 1994)). Because the Complaint does not go beyond such bald assertions in pleading discriminatory intent, Plaintiffs fail to state a claim for relief under 42 U.S.C. § 1985, and this cause of action must be dismissed.

## F.     Plaintiff Freeman Fails to State a Claim under the D.C. Human Rights Act

The DCHRA, which the Complaint cites in general, provides, "[e]very individual shall have an equal opportunity to participate fully in the economic, cultural and intellectual life of the District and to have an equal opportunity to participate in all aspects of life, including, but not limited to, in employment, in places of public accommodation, resort or amusement, in educational institutions, in public service, and in housing and commercial space accommodations." D.C. Code § 2-1402.01. The Complaint alleges the members of the District of

Columbia Class have been deprived of equal opportunity to participate in college athletics, and specifically in postseason competition, by the academic eligibility requirements of the APP, and categorizes their subsequent injuries as "loss of future earning potential, lost benefits, and emotional distress." Complaint at ¶ 273. However, and as discussed previously, Freeman must herself state a claim under the DCHRA, separate from any claims that may be held by the purported class, to avoid dismissal.

Actions or practices with a disparate impact on a protected class may violate the DCHRA. D.C. Code § 2-1402.68. However, a "defendant may protect against such a disparate-impact claim by showing that her decision was justified by a neutral, nondiscriminatory reason[.]" *Smith v. Henderson*, 982 F. Supp. 2d 32, 52 (D.D.C. 2013); *see also Gay Rights Coal. of Georgetown Univ. Law Ctr. v. Georgetown Univ.*, 536 A.2d 1, 29 (D.C. 1987) (action that is neutral on its face but has some disparate impact on a protected class does not violate the DCHRA if it is "independently justified for some nondiscriminatory reason").

As shown *supra* in the section regarding standing, Freeman has not suffered any impact, disparate or otherwise, from the APP.  As such, Freeman's DCHRA claim fails on its face. Moreover, her claim also fails because the Complaint several times references the neutral, nondiscriminatory reason for the enactment of the APP, and for the existence of academic progress standards for college athletes in general. For example, the NCAA Bylaws cited in the Complaint state, "Eligibility requirements shall be designed to ensure proper emphasis on educational objectives, to promote competitive equity among institutions and to prevent exploitation of student athletes."[11] The nondiscriminatory "independent justification" for the NCAA membership's enactment of the APP is to encourage all of its member institutions to

---

[11] *See* references cited in n.12 of the Complaint, at 12 (NCAA Bylaws, 2.12, NCAA Division I Manual 2020-2021 (https://web3.ncaa.org/lsdbi/reports/getReport/90008)).

provide student-athletes with a quality college education as well as opportunities to participate in sports at the collegiate level.

## IV.     CONCLUSION

In consideration of the foregoing, Defendants request that the Court grant this Motion to Dismiss, dismiss Plaintiffs' Complaint in its entirety, and grant such other and further relief as the Court deems proper.

DATED: February 8, 2021                        Respectfully submitted,

*Victor D. Vital*
R. Anthony Prather
State Bar No. 6478-49
Jessica Lindemann
State Bar No. 31058-49
BARNES & THORNBURG LLP
11 S. Meridian Street
Indianapolis, IN 46204
Telephone: (317) 236-1313
Facsimile:  (317) 231-7433

-AND-

Victor D. Vital (Admitted *Pro Hac Vice*)
BARNES & THORNBURG LLP
2121 N. Pearl Street, Suite 700
Dallas, Texas 75201
Telephone: (214) 258-4200
Facsimile:  (214) 258-4199

*Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 8, 2021, a copy of the foregoing was filed electronically. Service of this filing will be made on all ECF-registered counsel by operation of the court's electronic filing system.  Parties may access this filing through the court's system.

<i><u>Victor D. Vital</u></i>