Exhibit B

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| TROYCE MANASSA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NATIONAL COLLEGIATE ATHLETIC ASSOCIATION,<br><br>Defendant. | Case No. 1:20-cv-03172-RLY-MJD |

### Declaration of Raymond J. Biederman

I, Raymond J. Biederman, declare, pursuant to 28 U.S.C. §1746, under penalty of perjury that the following facts are true and correct:

1.     I am an attorney licensed to practice in Indiana, and I am the Chief Executive Officer and Co-Founder of Proteus Discovery Group, LLC ("Proteus"). In that capacity, I have personal knowledge of the facts set forth in this declaration.

2.     Proteus has a longstanding relationship with the National Collegiate Athletic Association (the "NCAA").

3.     The NCAA retained Proteus in or about 2017, to assist the NCAA with a variety of e-discovery related needs.

4.     Proteus has served as the NCAA's e-discovery vendor in this lawsuit (the "Manassa Project"), as well as in roughly fifty (50) other lawsuits.

5.     Due to my role at Proteus, I am knowledgeable about Proteus's internal processes and procedures related to the selection and engagement of attorneys to assist Proteus clients like the NCAA in document review projects.

1

6.      Among other things, as the NCAA's e-discovery vendor, Proteus hires licensed attorneys without any disciplinary record as independent contractors, to perform document review, analysis, and coding of the NCAA's documents in connection with producing non-privileged documents responsive to discovery requests served on the NCAA.

7.      Ravi Sakthivel ("Sakthivel") submitted two applications to Proteus applying for an independent contractor position as a document review attorney for Proteus' clients on two separate projects.

8.      Mr. Sakthivel submitted his first application to Proteus on or about October 11, 2021.  Proteus contacted Mr. Sakthivel to work on a then pending NCAA project on October 26 and 27, 2021.  He did not reply to either request.

9.      Mr. Sakthivel submitted a second application to Proteus on or about January 31, 2022.  This position sought document review attorneys to assist in the review, analysis, and coding of documents for the Manassa Project.

10.     None of the application materials submitted by Mr. Sakthivel contained any reference whatsoever to FeganScott LLC ("FeganScott"). Attached hereto as **Exhibit 1** is a true and correct copy of the resume that Mr. Sakthivel provided Proteus as part of his application materials for the Manassa Project, which notably omits any mention of FeganScott. In fact, he affirmatively represented in his resume that he was currently employed by Robbins Geller Rudman & Dowd LLP.  Had he provided an accurate resume to Proteus, Proteus would not have hired him for this project.

11.     Proteus hired Mr. Sakthivel as a document review attorney for the NCAA in the Manassa Project on or about March 2, 2022.

12.     Before Proteus hires an attorney as an independent contractor to assist in any document review project, it generally engages in the following due diligence: Proteus (a) reviews and analyzes the application materials provided by candidates, which include among other things, the candidate's current resume; (b) interviews the candidate, (c) confirms that the candidate is a licensed attorney in good standing, and (d) confirms that the candidate does not have any attorney disciplinary history.

13.     After performing the above steps, Proteus decides whether to extend an independent contractor offer to an attorney to assist in a document review project. If Proteus extends such an offer, it provides the attorney with a conflict of interest form that the attorney is required to review and complete prior to starting any Proteus project.

14.     Proteus does not generally perform an internet search of information related to independent contractor candidates, because among other things, this approach is consistent with recognized employment best practices. For example, when a prospective employer refrains from conducting internet searches of candidates, the prospective employer is less likely to obtain information about whether a candidate falls within any protected status under anti-discrimination laws, which helps facilitate a prospective employer to make neutral employment decisions.

15.     Proteus engaged in due diligence about Mr. Sakthivel prior to hiring him to work as a document review attorney for the NCAA in this lawsuit.

16.     Attached hereto as **Exhibit 2** is a true and correct copy of the "Description of Services/Compensation/Expenses/Conflict of Interest" form that Proteus provided to Mr. Sakthivel for his review and signature, prior to his start on the Manassa Project. This form conspicuously states that his applicable scope of work included the "[r]eview, analysis, and coding

3

of documents provided to Proteus by Proteus' Client The National Collegiate Athletic Association

("NCAA")". Further, the last paragraph of this form titled "**Conflict of Interest**" states:

> After conducting an independent analysis of past and current clients, Contractor represents and warrants that Contractor has no business, professional, personal or other interest, including, but not limited to, the representation of other clients, that would conflict in any manner with the performance of Contractor's obligations under this agreement. If any actual or potential conflict of interest arises under this Agreement, Contractor shall immediately notify Proteus of such conflict in writing.

17.     Mr. Sakthivel signed the form attached here as **Exhibit 2** on March 2, 2022, and in

it, represented that no actual or potential conflict of interest would conflict in any manner with his

review, analysis, or coding of documents provided by the NCAA.  Had Mr. Sakthivel disclosed

the conflict of interest, Proteus would not have hired him for this project.

18.     As an attorney working on the Manassa Project, Mr. Sakthivel was provided a

comprehensive document review protocol to review prior to reviewing the NCAA's documents.

This protocol is privileged attorney-work product developed with the NCAA's counsel at Barnes

& Thornburg LLP (the "NCAA's Lead Counsel"). Among other things, the protocol contains the

mental impressions of the NCAA's Lead Counsel regarding issue codes that the reviewers are

instructed to use, which are associated with case themes and legal issues specific to the NCAA's

legal strategy and defense in this lawsuit.

19.     The protocol provided to Mr. Sakthivel contained exhibits which included, among

other things, a copy of the Complaint in this lawsuit, and Plaintiff's requests for production served

on the NCAA. Both of these documents prominently indicate in their respective signature blocks

that FeganScott, including Elizabeth Fegan, serves as Plaintiff's counsel in this lawsuit.

20.     Mr. Sakthivel was given access to the Manassa Project's recorded document review

training strategy meeting hosted for the attorneys engaged as independent contractors for the

Manassa Project. The NCAA's Lead Counsel joined this meeting, and shared among other things,

their view of the lawsuit, mental impressions about the case, and general case strategy. Attached as **Exhibit 3** is a screenshot of this recorded meeting showing Proteus team members on the Manassa Project, and one of the NCAA's Lead Counsel, Ms. Ezie-Boncoeur, presenting to the Manassa Project document review attorneys. Mr. Sakthivel's initials are shown next to the red arrow in this exhibit, listing him among meeting participants.

21.     Mr. Sakthivel attended at least four substantive meetings regarding case strategy in the Manassa Project, and instructions regarding how to code the NCAA's documents. One of these meetings included the training session for independent contract attorneys working on the Manassa Project. The NCAA's Lead Counsel participated in this recorded meeting, and shared among other things, their view of the lawsuit, mental impressions about the case, and general case strategy.

22.     Proteus's general practice is to record its Manassa Project strategy meetings and make those recordings available to project document reviewers, as a team resource to assist with questions that may arise during the Manassa Project. Mr. Sakthivel had access to recorded meetings.

23.     As an attorney on the Manassa Project, Mr. Sakthivel was also given access to the Manassa Project's Microsoft Teams discussion board. Proteus uses this interactive discussion board to notify document review attorneys about various items concerning this lawsuit's legal strategy, including, without limitation, to: (a) summarize meetings with the NCAA Lead Counsel regarding various case strategy items, (b) provide information to attorneys regarding how to code documents using various issue codes, (c) respond to attorney inquiries regarding privilege, confidentiality, and responsiveness considerations for documents, and (d) to touch base regarding status and general questions among all document review attorneys. Mr. Sakthivel posted questions in this Microsoft Teams discussion board during his time on the Manassa Project.

24.     Mr. Sakthivel was given access to the Relativity database that houses all documents collected for the NCAA in the Manassa Project, including those documents not yet reviewed for responsiveness or privilege. The documents collected include custodial Exchange and OneDrive data and non-custodial SharePoint data. These documents are not publicly available and were collected based on NCAA's Lead Counsel's work product.  These documents are used in a wide variety of NCAA cases, including other NCAA cases involving FeganScott. By way of example, documents collected in the Manassa Project included privileged legal hold memoranda and custodian interview information for the *Erin Aldrich v. The NCAA* case (in which FeganScott was lead counsel).

25.     Proteus provided Mr. Sakthivel with Proteus specific credentials to use for all work related to the Manassa Project that had specific privacy protections. That said, Proteus cannot confirm what screenshots, recordings, or copies that Mr. Sakthivel took of any documents or material made available to him as an attorney working on the Manassa Project for the NCAA, or shared with others. Mr. Sakthivel had the ability to discuss and share the contents of the documents or material provided to him in the Manassa Project with others, including on a phone call or on a Zoom or Microsoft Teams meeting with screen sharing capabilities; however, Proteus cannot confirm the extent to which that may have occurred.

26.     On April 4, 2022, Proteus terminated Mr. Sakthivel as an independent contractor. As stated in a true and correct copy of the April 4, 2022, termination email that Proteus sent to Mr. Sakthivel, which is attached hereto as **Exhibit 4**, Mr. Sakthivel was terminated from the Manassa Project due to "the severity and quantity of issues that we have seen repeated during QC [quality control], even after we have provided with you with feedback."

27.     From March 3, 2022 through his April 4, 2022 termination, Mr. Sakthivel billed 183.7 hours for his review, analysis, and coding NCAA documents in the Manassa Project. In that time, Mr. Sakthivel reviewed or coded 6,622 unique NCAA documents across 18 different custodians and a SharePoint site, some of which were voluminous documents exceeding 100 pages, and some of which contained confidential information.  Further, Mr. Sakthivel had access to and ran numerous queries over the document population.  These searches included viewing a search of all of the documents that had been identified as important on initial review.

28.     Based on Proteus' preliminary investigation, at least 640 documents that were produced to FeganScott in this lawsuit were reviewed and tagged as responsive by Mr. Sakthivel.

29.     After Mr. Sakthivel's termination, on or about April 22, 2022, Proteus learned that Mr. Sakthivel had been an attorney employed by Plaintiff's counsel in this lawsuit, FeganScott, during the entire time that he worked as an NCAA document reviewer in this lawsuit at Proteus. Prior to this date, Proteus and the NCAA had no knowledge of Mr. Sakthivel's affiliation with FeganScott.  Proteus shared this information with the NCAA's Lead Counsel the same day.

30.     Attached hereto as **Exhibit 5** is a true and correct copy of an April 29, 2022 letter from Elizabeth Fegan, the Managing Member of FeganScott, to Proteus. Among other things, this letter confirms that Mr. Sakthivel "was a **full-time employee of FeganScott LLC** from September 7, 2020, to April 27, 2022." (emphasis added).

31.      Attached hereto as **Exhibit 6** is a true and correct copy of a May 6, 2022 letter that Proteus sent to FeganScott's Managing Member, Elizabeth Fegan.

32.     Proteus has handled (and is currently handling) the NCAA's e-discovery needs in additional lawsuits aside from the Manassa Project that also include FeganScott as Plaintiff's counsel. Those lawsuits include: (a) *John Doe v. the NCAA, the University of San Francisco et al.,*

Case No. 22-1559 which is currently pending in the U.S. District Court for the Northern District of California San Francisco Division, and; (b) the formerly pending case *Erin Aldrich v. The NCAA*, Case No. 5:20-cv-01733-EJD in the Southern District of Indiana, Indianapolis Division.

33.     Proteus document reviewers are given permission-based access to this material.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 20, 2022.

Raymond J. Biederman

Exhibit B-1

# Ravi Sakthivel

San Diego County, California    rksakthivellaw@gmail.com    925-390-9125

**Summary**

I am a California Licensed Attorney in good standing who is flexible, reliable, and self-motivated. I practiced over 5 years as a project-based document review attorney with extensive review experience in the insurance, healthcare, complex litigation, SEC, pharmaceutical class actions and criminal fields. I have successfully completed over 100 document review projects that have ranged in length from less than a week (requiring 10-12 hour a day to reach the deadline) to over a year and a half. Though I am based on the West Coast I have successfully completed document review projects based on Mountain, Midwest, and East Coast time with no issues.

**Experience**

 **Document Review Attorney (Project Based)**

Robbins Geller Rudman & Dowd LLP 2019 - Present

- Reviewed documents and analyzed content for responsiveness to requests for production, advancing to the QC team and the privilege review.
- Guided legal team and examined team members' document analysis for accuracy, providing feedback on improving production quality.
- Prepared privilege log, preserving attorney-client and work product privilege.

 **Document Review Attorney (Project Based)**

TCDI 2017 - Present

- Conducted search queries of multi-million-page databases to perform fact investigations, prepare for witness depositions, and to respond to discovery requests from opponents.
- Reviewed documents for relevance, content, and privilege before production.
- Performed Quality Control of document review teams.

 **Managing Director**

Imagine Reporting 2018 - 2019

- Manage all contract reviews and negotiations with customers, suppliers, and vendors.
- Provide legal advice and recommendations on applicable laws and risk mitigation strategies.
- Interpret and analyze contract documents to review, evaluate, and accept or reject customer requests.

 **Document Review Attorney (Project Based)**

Catalyst Repository Systems 2016 - 2019

- Analyzed complex legal documents including emails, contracts, spreadsheets and other financial documents.
- Determined which issues applied to each document and coded the documents accordingly.
- Reviewed and determined if the document was responsive to the issues in the case and determined if any type of attorney-client privilege applied.

 **Document Review Attorney (Project Based)**

Epiq 2016 - 2019

- Conducted advanced and last pass privilege review.

- Utilized Relativity to scan documents for statements against interest.

- Assisted in preparing documents for production.

- Reviewed documents produced by opposing counsel for content, relevance and importance.

 **Legal Compliance Officer**

Arcana Inc. 2016 - 2017

- Led the legal review of assignment provisions during a corporate restructure to mitigate legal risk.

- Reviewed and negotiated master service, professional services, and so ware licensing agreements.

- Researched and updated the company privacy policy to comply with recent regulatory changes.

- Increased document review efficiency by developing and implementing a new E-Signature procedure.

 **Senior Legal Director**

TransLegal 2014 - 2016

- Designed & implemented legal strategies to meet goals & support business objectives at the executive-level.

- Analyzed legal processes and procedures to identify areas of improvement and develop updates to increase operational efficiency, productivity, and quality.

- Dra ed and negotiated complex and high-risk contracts as a hands-on leader.

 **Senior Managing Attorney**

Camacho & Associates 2012 - 2014

- Managed land acquisition and cellular tower leases for Verizon Wireless, T Mobile & AT&T.

 **Staff Attorney**

Choe, Jackson & Weitz 2009 - 2012

- Litigated foreclosure defense, unlawful detainer, & bankruptcy cases in CA and Federal jurisdictions.

 **Associate Attorney**

Hastings & Grewal 2007 - 2009

- Led Federal Immigration Law case management. Dra  legal memoranda, performed legal & case research, and represented petitioners in Asylum Hearings and Citizenship Interviews.

**Education**

 **University of the Pacific - McGeorge School of Law**

Doctor of Law (J.D.), Law

 **University of California, Santa Cruz**

Bachelor of Arts (B.A.), History

**Licenses & Certifications**

 **Registered Process Server** - County of San Diego

Issued Jun 2018 - Expires Jun 2020 3306

 **License to Practice Law** - State Bar of California

256327

 **Relativity Certified User** – Relativity

**Skills**

Litigation • Legal Research • Civil Litigation • Legal Writing • Legal Advice • Courts • Legal Assistance •
Personal Injury   •  Westlaw  • Arbitration

Exhibit B-2

**EXHIBIT A**
**Description of Services/Compensation/Expenses/Conflict of Interest**

**Services to be provided by Contractor**:

Review, analysis, and coding of documents provided to Proteus by Proteus' Client, The National Collegiate Athletic Association ("NCAA")               .

**Term of Agreement:** Approx. 2-3 weeks depending on volume of documents.

**Confidential Information (as defined in Section 2.l of the Independent Contractor Agreement) may be utilized:** (Check boxes as applicable, and set forth details as desired in space provided)

[ ]     Only at Proteus' business premises

[X]     At Contractor's premises provided that appropriate confidentiality procedures and arrangements are observed

[ ]     Other:  Given the investigation related concerns of this project, Proteus' Client requires confidentiality including downloading documents only to Proteus' Computers.  As such, this review should occur at Proteus.

**Compensation**

Proteus shall pay Contractor Twenty-Five Dollars per hour ($25.00/hour) for work performed by Contractor to complete Services (as that term is defined in the Independent Contractor Agreement), which shall be due and payable to Contractor bi-weekly on or before the 16th day and first day of each month.

**Expenses**

Contractor is responsible for his or her own expenses unless Contractor receives prior written approval from an officer of Proteus that an expense is reimbursable by Proteus.  Notwithstanding the foregoing provision, Proteus agrees to reimburse Contractor for the following expenses:

NONE

**Conflict of Interest**

After conducting an independent analysis of past and current clients, Contractor represents and warrants that Contractor has no business, professional, personal or other interest, including, but not limited to, the representation of other clients, that would conflict in any manner with the

performance of Contractor's obligations under this agreement.  If any actual or potential conflict of interest arises under this Agreement, Contractor shall immediately notify Proteus of such conflict in writing.

**CONTRACTOR**

Ravi Sakthivel
_____
CONTRACTOR (Print Name)

*Ravi Sakthivel*
_____
CONTRACTOR SIGNATURE

3/2/2022
_____
DATE

**PROTEUS DISCOVERY GROUP, LLC**

By: _____

Its: _____

Exhibit B-3



Exhibit B-4

| | |
|---|---|
| **From:** | Vanessa Woolsey |
| **To:** | ravisakthivel@gmail.com |
| **Cc:** | Scott Collins; Sarah Barth |
| **Subject:** | Termination of Independent Contractor Agreement |
| **Date:** | Monday, April 4, 2022 6:35:39 PM |
| **Attachments:** | image001.png |
| | image002.png |
| | image003.png |
| | image004.png |
| | image005.png |
| | image006.png |

Ravi,

I regret to inform you that we will be terminating your Independent Contractor Agreement with Proteus Discovery Group effective immediately.  Unfortunately, the severity and quantity of issues that we have seen repeated during QC, even after we have provided with you with feedback, make us believe that this project is no longer a good fit for you.

Please be sure that all your time through today is entered accurately into QuickBooks.

We wish you well with your future endeavors.

Regards,

**Vanessa Woolsey, CEDS**
Project Manager
Proteus Discovery Group

 317-664-7243
 vanessa.woolsey@proteusdiscovery.com
 www.proteusdiscovery.com
 155 E Market St, Suite 400, Indianapolis, IN, 46204





Exhibit B-5



FeganScott LLC
ATTORNEYS AT LAW
150 S. Wacker Dr., 24th Floor
Chicago, IL 6060g

PHONE 312.741.1019
FAX 312.264.0100

beth@feganscott.com

April 29, 2022

**Via Email and Certified U.S Mail**
Hamish Cohen, General Counsel & Co-Founder
Proteus Discovery Group
155 E. Market Street, Ste. 400
Indianapolis, Indiana 46204
hamish.cohen@proteusdiscovery.com

     Re:   Ravi Sakthivel

Dear Mr. Cohen,

    Ravi Sakthivel was a full-time employee of Fegan Scott LLC from September 7, 2020, to April 27, 2022. He was listed on the Firm's website. His LinkedIn profile also reflects his role as a Staff Attorney at Fegan Scott. A quick Google search would verify his employment at our Firm.

    It has come to our attention that Mr. Sakthivel performed document review services on projects through your agency during this same time period. Not only were these activities a violation of multiple Firm policies, neither you nor Mr. Sakthivel ran any conflict checks through our Firm.  As a result, our Firm has been contacted by a Defendant in an active case we are prosecuting seeking to have our Firm disqualified because Mr. Sakthivel performed a document review on a project for it through an agency. Our Firm has been accused of a serious breach of professional ethics due to Mr. Sakthivel's actions.

    We ask that you provide the names of all companies for which Mr. Sakthivel performed document review and the names of any associated litigation so that we may determine whether any conflicts exist with our Firm's cases and the companies which we are suing.

    Given the potentially grave consequences to our Firm and its clients from Mr. Sakthivel's actions, we request that you provide this information by Wednesday, May 4, 2022. If you have any questions, please contact me right away.



Mark Firmani
April 29, 2022
Page 2

Sincerely,

Elizabeth A. Fegan
Managing Member

cc. Timothy Scott

Exhibit B-6



**Hamish S. Cohen**
**General Counsel & Co-Founder**
155 E Market St. Suite 400
Indianapolis, IN 46204
Main: (317) 614-7340
www. ProteusDiscovery.com

May 6, 2022

**Via Electronic Mail**
(beth@feganscott.com)

Ms. Elizabeth Fegan, Esquire
Managing Member
FeganScott LLC
160 S. Wacker Drive, 24th Floor
Chicago, Illinois 60606

Re:   Response to Your April 29, 2022 Correspondence Regarding
Attorney Ravi Sakthivel

Dear Ms. Fegan:

I am writing on behalf of Proteus Discovery Group, LLC ("Proteus") and in response to your correspondence of April 29, 2022, regarding Attorney Ravi Sakthivel.

As a preliminary matter, Proteus is not in privity with FeganScott LLC ("Fegan") and has no duty to respond or otherwise cooperate with Fegan's investigation.  Fegan is not and has never been Proteus's client, directly or indirectly.

That said, Proteus is willing to provide the following information voluntarily:

*First*, Attorney Sakthivel submitted an application to Proteus to provide legal document review services on an independent contractor basis.  In doing so, he submitted his curriculum vitae.  Sakthivel did not mention any association with Fegan.  Rather, his curriculum vitae states he is still employed by Robbins Geller Rudman & Dowd, LLP.

*Second*, Attorney Sakthivel executed an independent contractor agreement with Proteus on March 2, 2022.  The terms of this Agreement provided as follows: "[a]fter conducting an independent analysis of past and current clients, [Sakthivel] represents and warrants that [he] has no business, professional or other interest, including, but limited to, the representation of other clients, that would conflict in any manner with the performance of Contractor's obligations under this Agreement.  If any actual or potential conflict of interest arises under this Agreement, [Sakthivel] shall immediately notify Proteus of such conflict in writing."  Sakthivel never disclosed any conflict during his application, onboarding or work at Proteus, despite the fact – as Proteus subsequently discovered – he was employed by Fegan at all times he performed work for Proteus

May 6, 2022
Page 2

and working not only adverse to the NCAA, but on the very matter on which he was purportedly conducting document review.

      Please feel free to contact me directly if you would like to discuss this further.

           Very truly yours,

           Hamish S. Cohen

Cc:    Raymond Biederman, Esquire (CEO Proteus Discovery Group, LLC)
       Karoline Jackson, Esquire (General Counsel, Barnes & Thornburg LLP)