# EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| TROYCE MANASSA, *et al*., | |
| Plaintiffs, | |
| v. | No.:  1:20-cv-03172-RLY-MJD |
| NATIONAL COLLEGIATE ATHLETIC ASSOCIATION, | |
| Defendant. | |

**DECLARATION OF ELIZABETH A. FEGAN**

I, Elizabeth A. Fegan, under oath, declare and state as follows:

**A.  My Background**

1.      I am a Managing Member of Fegan Scott LLC. I have full knowledge of the matters stated herein and could and would testify hereto.

2.      I graduated from Loyola University Chicago School of Law in 1995.  Since 2002, my practice has focused primarily on class actions. I launched and was the Managing Partner of the Chicago office of Hagens Berman Sobol Shapiro LLP, a top nationwide class action firm, from October 2004 to May 2019. In May 2019, I founded Fegan Scott LLC (the "Firm") with Timothy Scott.

3.      A representative sampling of cases on which I am working or have worked include:

- *In re Zantac (Ranitidine) Products Liability Litigation*, MDL No. 2924, No. 20 MD-2924 (S.D. Fla.): in this combined mass tort and class action against pharmaceutical manufacturers for failure to warn regarding the risk of cancer from Zantac (used to treat heartburn and acid indigestion), I was appointed to the Plaintiffs' Steering Committee. This litigation is ongoing;

- *In re TikTok Inc. Consumer Privacy Litigation,* No. 20-cv-4699 (N.D. Ill.): I am one of three Co-Lead Counsel in this class action for violation of the Illinois Biometric Privacy Act and other nationwide privacy laws. Plaintiffs' motion for final approval of a $92 million settlement is pending;

- *Geiss v. The Weinstein Co., Harvey Weinstein et al.,* No. 17-cv-09554 (S.D.N.Y.), I led this class action on behalf of movie industry victims of sexual abuse by Harvey Weinstein. A $17 million sexual misconduct claims fund was created in the TWC bankruptcy;

- *Marrero v. Puerto Rico Electrical Power Authority, and various global oil companies*, No. 15-01167 (D.P.R.): I was appointed as Liaison Counsel in this racketeering action in which the court certified a class of all customers of the power authority in Puerto Rico;

- *Sheet Metal Workers Local No. 20 Health and Welfare Fund v. CVS Health Corp.*, et al., No. 16-00046 (D.R.I.): I am part of the Lead Counsel team in this RICO and consumer fraud class action in which the court certified a class of third party payor health plans, who allege they were overcharged for generic drugs at CVS.

4.      I also have represented student-athletes in class actions against the NCAA in this District and others nationwide. *See, e.g., John Doe 1 v. NCAA,* No. 3:22-cv-1559 (N.D. Cal.) (challenging the NCAA's failure to protect student athletes from sexual abuse by NCAA coaches); *Aldrich v. NCAA*, No. 1:20-cv-02310-JRS-MG (S.D. Ind.) (challenging the NCAA's failure to protect student athletes from sexual abuse by NCAA coaches); *Deppe v. NCAA,* No. 1:16-cv-00528-TWP-DKL (S.D. Ind.) (challenging certain NCAA bylaws as anticompetitive under the antitrust laws); *Pugh v. NCAA*, No. 1:15-cv-01747-TWP-DKL (S.D. Ind.) (challenging certain NCAA bylaws as anticompetitive under the antitrust laws); *Rock v. NCAA*, No. 1:12-cv-1019-JMS-DKL (S.D. Ind.) (challenging certain NCAA bylaws as anticompetitive under the antitrust laws); *In re NCAA Student-Athlete Concussion Injury Litig.,* MDL No. 2492, No. 13-cv- 9116 (N.D. Ill.) (challenging the NCAA's failure to protect student-athletes through an appropriate concussion management protocol); *Arrington v. NCAA,* No. 11-cv-6356 (N.D. Ill) (challenging the

NCAA's failure to protect student-athletes through an appropriate concussion management protocol).

5.     The NCAA has never contacted me or Fegan Scott to discuss potential representation.

6.     Neither I nor Fegan Scott has ever represented the NCAA.

7.     The NCAA has never signed a retainer agreement with Fegan Scott.

### B.  Fegan Scott LLC's Structure and Processes

8.     When Timothy Scott and I founded the Firm, we decided to invest in people, rather than build out office space. Accordingly, we began one of the first fully-remote law firms in the United States. The Firm maintains addresses in several cities where mail is received, but all attorneys in the class action practice work fully remotely from their homes.

9.     As a limited liability company, the Firm has two Managing Members who are equivalent to the traditional equity partner role in law firms; two attorneys in "Of Counsel" roles, which is equivalent to a non-equity partner; and several Associates. The Firm also created a role for document review attorneys called "Staff Attorneys."

10.     The Firm maintains its case files in a cloud-based law practice and document management system called Clio Manage. The Firm also maintains and tracks inquiries from prospective clients in a cloud-based system that integrates with Clio Manage called Clio Grow (collectively, "Clio").

11.     Clio tracks all of the Firm's prospective clients, as well as all clients, opposing parties, related parties, co-counsel, and opposing counsel for each case. When the Firm opens a file, it runs a conflict check through Clio.

12.     The Firm's employees use Clio Manage to contemporaneously record their time.

13.     Clio Manage also automatically records all activities within a file, including, *inter alia,* when anyone accesses a file, dockets a due date, or records time.

### C.  Ravi Sakthivel's Hiring as a Staff Attorney

14.     The Firm hired Ravi Sakthivel as a Staff Attorney to start on September 7, 2020.

15.     I never met Mr. Sakthivel in person.

16.     Mr. Sakthivel was hired to work fully remotely from his home in California on document review.  Accordingly, the Firm provided Mr. Sakthivel with a laptop to perform his work.

17.     At the time he was hired, Mr. Sakthivel signed an offer letter. A true and correct copy of the Offer Letter is attached as Ex. A.

18.     The signed offer letter provides in pertinent part: "You will start in a full-time position of Staff Attorney with responsibility for document review. You will report directly to Elizabeth Fegan. You agree to devote your full business time, attention, and best efforts to the performance of your duties for the Firm." *Id.*

19.     Mr. Sakthivel also signed a Confidentiality Policy at the time he was hired. A true and correct copy of the original Confidentiality Policy is attached as Ex. B.

20.     In November 2021, the Firm introduced an Employee Handbook and Confidentiality Agreement. A true and correct copy of the relevant portions of the Employee Handbook are attached as Ex. C and the Confidentiality Agreement is attached as Ex. D.

21.     The Employee Handbook provides in pertinent part:

> Situations that involve an actual or potential conflict of interest between an employee's interests and the interests of the Firm must be discussed with management in order to protect the interests of both parties. It is the policy of the Firm that all employees disclose any situation, which does or may involve a conflict of interest between their personal interests and the interests of the Firm. While it is impossible to list every circumstance that may create possible conflicts

of interest, the following should serve as a guide to the types of activities, which may cause conflicts: * * * Outside employment anywhere, directly or through an intermediary, which can or will adversely affect the employee's productivity or availability, including employment by competitor.

Ex. C, at 35.

22.     The Confidentiality Agreement provides in pertinent part:

During Employee's employment, Employee will not engage in any business activities, which are competitive with [the] Firm or otherwise in conflict with Employee's duties on behalf of the Firm, unless the Firm has provided its consent in writing. These obligations include after hours, on weekends, and during vacation time, even if only organizational assistance or limited consultation is involved, whether or not Employee receives compensation from the competing or conflicting entity or person.

Ex. D, at 3.

23.     The Firm listed Mr. Sakthivel as a staff attorney on its website. A true and correct copy of Mr. Sakthivel's bio on the Firm's website (www.feganscott.com) as of February 20, 2022 is attached as Ex. E.

24.     Mr. Sakthivel listed Fegan Scott as his employer on his LinkedIn profile. A true and correct copy of Mr. Sakthivel's LinkedIn profile is attached as Ex. F.

25.     The Firm lists the class cases it is prosecuting on its website, including this litigation. A true and correct copy of the profile page for this litigation is attached as Ex. G.

26.     Mr. Sakthivel was hired to work full time as a document reviewer assigned to the *Zantac* litigation.

27.     The documents that are the subject of the document review in *Zantac* are hosted by a third party e-discovery vendor retained by Lead Counsel in the *Zantac* litigation.

28.     The *Zantac* document review is led by another member of the Plaintiffs' Steering Committee who is not associated with the Firm.

5

29.     From the time he was hired, Mr. Sakthivel worked nearly exclusively reviewing documents in the Zantac litigation for Fegan Scott.

30.     I monitored Mr. Sakthivel's work through (i) periodic internal Zantac-specific meetings, (ii) Sakthivel's contemporaneously billed time which reflects exactly how many documents he coded per day (and the bates range thereof), (iii) the periodic comparison of his time against the Zantac e-discovery vendor's reports reflecting Sakthivel's time in the document review software (as circulated periodically by *Zantac* MDL lead counsel), (iv) feedback from the Plaintiffs' attorneys in the *Zantac* MDL as to the quantity and quality of his work, and (v) feedback from the Fegan Scott *Zantac* team.

31.     Mr. Sakthivel never disclosed to the Firm that he was employed by anyone other than Fegan Scott.

32.     Mr. Sakthivel never disclosed to the Firm that he was conducting document review outside of the firm or working on any cases other than as assigned by Fegan Scott.

33.     No e-discovery or document review vendor ever contacted the Firm regarding Mr. Sakthivel or to run a conflict check relating to his work or the Firm's cases.

### D.  The Firm's litigation files for *Manassa*

34.     Fegan Scott uses a document management and billing system called Clio.

35.     Within Clio, the firm can track every employee's activity and access to each client file.

36.     The firm's file for the *Manassa v. NCAA* litigation is Clio matter number 2025. All documents are maintained electronically within the file in Clio.

37.     On April 27, 2022, I downloaded a report from Clio reflecting all activity in matter number 2025. The report reflects that Mr. Sakthivel never accessed the files in matter number 2025. Because this report otherwise contains information that is protected by the attorney-client

privilege and/or work product doctrine, I have preserved the report and will provide it to the Court *in camera* upon request.

38.     Fegan Scott does not maintain any physical class action case files.

39.     Fegan Scott does not maintain a physical case file for the *Manassa* litigation.

40.     All employees are required to record their billable time contemporaneously with their work.

41.     On May 17, 2022, I downloaded three reports (one for each calendar year) reflecting all time recorded by Mr. Sakthivel in Clio from 2020-2022. Except for four (4) hours, all of the time recorded by Mr. Sakthivel relates to the Zantac litigation. The four hours that were not billed to Zantac were billed to a potential sexual abuse case (2 hours) and to a pending property damage case (2 hours), neither of which relate to the NCAA or this litigation. Because this report otherwise contains information that is protected by the attorney-client privilege and/or work product doctrine, I have preserved the report and will provide it to the Court *in camera* upon request.

### E.  Mr. Sakthivel did not have any substantive communications with anyone at Fegan Scott regarding the NCAA or this litigation.

42.     It is the Firm's regular practice to hold firm meetings via Zoom every Friday.

43.     One Friday per month is an all-firm meeting. The focus of the firm meeting is administrative in nature.

44.     The other Friday meetings are case specific.

45.     Staff attorneys are only invited to and attend the all-firm meeting and the meetings in which the cases they are working on are scheduled for discussion.

46.     Mr. Sakthivel did not attend case-specific firm meetings unless the Zantac matter was on the agenda.

47.     Mr. Sakthivel never participated in any discussion at Firm meetings other than those related to Zantac.

48.     Mr. Sakthivel never offered any information at a Firm meeting unless specifically asked a question.

49.     I never spoke with Mr. Sakthivel at a Firm meeting regarding this litigation or the NCAA.

50.     Mr. Sakthivel never spoke at a Firm meeting regarding this litigation or the NCAA.

51.     I never communicated with Mr. Sakthivel orally or in writing regarding this litigation or the NCAA.

52.     Mr. Sakthivel never communicated with me orally or in writing regarding this litigation or the NCAA.

53.     I never shared any information with Mr. Sakthivel in any format regarding this litigation or the NCAA.

54.     Mr. Sakthivel never shared any information with me in any format regarding this litigation or the NCAA.

55.     I understand that Melissa Clark invited Mr. Sakthivel to a meeting regarding document review in this litigation but the meeting never occurred.

### F. Fegan Scott immediately put Mr. Sakthivel on administrative leave, and terminated him, upon notification of a conflict.

56.     On April 26, 2022, at 12:12 p.m. central, I received a letter via email from Brian Casey, a lawyer for the NCAA. A true and correct copy of this email and attachment is attached as Ex. H.

57.     I read the letter at 12:32 p.m. central on April 26, 2022.

58.     I immediately instructed Mr. Scott to coordinate with the Firm's IT support to remove Mr. Sakthivel's access to all Fegan Scott systems (including Clio).

59.     I instructed Melissa Clark to ensure that Mr. Sakthivel did not have access to the firm's third party document hosting site for *Manassa.* I also instructed Ms. Clark to cancel the document review call for this litigation.

60.     I instructed Lynn Ellenberger to cause Mr. Sakthivel's access to the *Zantac* document hosting site to be terminated.

61.     At 12:34 p.m. central, I sent an email response to Mr. Casey as follows:

> Brian,
>
> We have no knowledge of any of this but are working to immediately cut Ravi's access to all Fegan Scott systems.
>
> We will be back in touch with a full response once our investigation is complete.
>
> Thank you for bringing this to our attention.
>
> Sincerely,
> Beth

A true and correct copy of this email is attached as Ex. I.

62.     I then directed Melissa Clark and Brooke Achua to preserve and send to me any communications that they had with Mr. Sakthivel concerning this litigation.

63.     The Firm terminated Mr. Sakthivel's employment on April 27, 2022.

64.     On April 27, 2022, Mr. Sakthivel provided the Firm with the document review vendors with which he may have worked while employed by Fegan Scott.

65.     On April 27, 2022, I filed an Attorney Misconduct Complaint regarding Mr. Sakthivel's actions with the State Bar of California where Mr. Sakthivel is licensed.

66.     On April 29, 2022, I sent a letter to each of the vendors via email and certified mail,

stating in pertinent part:

> Ravi Sakthivel was a full-time employee of Fegan Scott LLC from
> September 7, 2020, to April 27, 2022. He was listed on the Firm's
> website. His LinkedIn profile also reflects his role as a Staff
> Attorney at Fegan Scott. A quick Google search would verify his
> employment at our Firm.
>
> It has come to our attention that Mr. Sakthivel performed
> document review services on projects through your agency during
> this same time period. Not only were these activities a violation of
> multiple Firm policies, neither you nor Mr. Sakthivel ran any
> conflict checks through our Firm.

A true and correct copy of the letter sent to Proteus is attached as Ex. J.

67.     On May 2, 2022, I sent a letter to Brian Casey outlining the facts demonstrating

that "no attorneys at Fegan Scott LLC (the Firm) have received or had access to any information

regarding the NCAA from Ravi, nor did Ravi access, or have access to, the Firm's files relating to

the NCAA in this or any other litigation." A true and correct copy of the May 2, 2022 letter is

attached as Ex. K.

68.     On May 6, 2022, I received a response from Proteus, which was the document

review vendor used by the NCAA. A true and correct copy of the letter I received Proteus is

attached as Ex. L.

69.     In the May 6, 2022 letter, Proteus disclosed as follows: (i) Fegan Scott is not nor

had ever been a client of Proteus; (ii) Sakthivel had applied to Proteus with a resume that "did not

mention any association with Fegan"; and (iii) Sakthivel never disclosed any conflict to Proteus.

*Id.*

70.     Proteus did not respond to my contentions that (i) Sakthivel was listed on the Firm's

website; (ii) his LinkedIn profile reflected his role as a Staff Attorney at Fegan Scott; (iii) a Google

search would have verified his employment at our Firm; and (iv) neither Sakthivel or Proteus ran any conflict checks through the firm.

### G. The Firm's work in this lawsuit.

71.     I began investigating this matter in May 2020 upon reading "NCAA must stop perpetuating academic and financial disparities for HBCUs: Penalties highlight patterns of inequities that cannot be ignored," ANDSCAPE (f/k/a The Undefeated) (May 27, 2020), available at https://andscape.com/features/ncaa-must-stop-perpetuating-academic-and-financial-disparities-for-hbcus/ (last accessed May 26, 2022).

72.     I opened the 2025 matter for this litigation in Clio on May 31, 2020. At that time, the Firm did not have any conflicts with the NCAA as the potential opposing party.

73.     Before filing the Class Action Complaint in December 2020, the Firm invested hundreds of hours in consulting with experts, researching the history of NCAA academic programs and their discriminatory impact on Black student-athletes, the potential causes of action and complex issues of law, working with their clients, and establishing a litigation team.

74.     Since filing the case, the Firm has continued to work, successfully opposing the NCAA's motion to dismiss; working with consulting experts; engaging in discovery with the NCAA, including significant meet and confers on e-discovery, the NCAA's proposed document review protocol, and the NCAA's delay in productions; meeting and conferring with third party HBCUs with respect to subpoena *duces tecum*; and strategizing for class certification, summary judgment, and trial.

75.     As part of the discovery meet and confers, the NCAA voluntarily disclosed its strategy for document review.

76.     On February 18, 2022, Brian Casey sent me and my co-counsel a Document Review Proposal, in which the NCAA disclosed the information to be shared with its review teams and project managers. A true and correct copy of the Document Review Proposal is attached as Ex. M.

77.     The Document Review Proposal contained an explanation of the NCAA's "Review Protocol and Criteria," including the subject matter that should be deemed responsive, key terms that reviewers should look for in the documents, and categories of documents that would be responsive. The protocol explained which documents should be coded as privileged or as needing further review. The protocol further discussed how technology-assisted review would be used. *Id.*

78.     To date, Fegan Scott has invested hundreds of hours in this litigation and tens of thousands of dollars in expert consultants and e-discovery related fees on a wholly-contingent basis on behalf of Plaintiff and the putative class.

I declare that the foregoing is true and correct.

Dated: May 30, 2022

_____
Elizabeth A. Fegan

# EXHIBIT A

August 24, 2020

Dear Ravi Sakthivel,

Fegan Scott LLC (the  Firm"), is p eased to offer you emp oyment with the  irm on the terms described be ow. Your employment is subject to the terms and conditions set forth in this  etter

 **Pos tio**    You will start in a fu   time posit on of Staff Attorney w th responsib  ty for document review. You will report directly to  Elizabeth Fegan  You agree to devote yo  r fu  bus ness t   e, attention, and best efforts to the performance of your duties for the Firm.

 **Compensat on and Employee Benefits.** In consideration of your serv ces, you w   be paid $70,000 00 per Year, subject to the  irm's standard payro  practices and withholdings and deductions as requ red by law. As a Firm employee, you w   be eligible to participate in Fir   sponsored benefits  ncluding
         **\*Health Insurance.** The standard medica  benefits offered by the Firm, which may be s  bject to change from t   e to time  with 100% of emp oyee premiums and 50% of dependent premiums paid by the Firm   f you so elect.
         **\*Vacatio**    Two weeks paid vacation each calendar year  reduced pro rata for 2019.
         **\*401k**   You will beco   e eligible for the F rms 401k Plan after a period of employment of s x months, in accordance w th the terms of the Plan.

 • **Employment Relationship.** Employment w th the Firm  s for no specific period of time  Yo  r emp oyment with the  irm w   be "at will,  mean ng that e ther you or the Firm may terminate your employment at any t me and for any reason, with or without ca  se  Altho  gh your job duties, title, compensation and benef ts, as well as the F rms personnel po  c es and procedures, may change from t me to time  the "at will" nature of yo  r emp oyment    ay only be changed  n an express written agreement signed by you and the Firm.

 • **Contingent Offer.** The Firm reserves the r ght to conduct background and reference checks on a   prospective emp oyees  Your job offer is contingent upon clearance of

any such check as well as proof that you are licensed and in good stand ng with a state bar

• **Firm Po c es and Additiona  Agreements.** As an employee of the Firm  you will be expected to abide by and adhere to the F rms rules and standards  As a condit on of your emp oyment  you will agree to execute a confident ality agreement requ red by the F rm at the start of your employment

• **Continuing Obligations**   By sign ng this  etter, yo   conf rm with the Fir    that you are under no contractual or other  ega  obligations that would prohibit you from performing your d  t es with the Fir     You further confirm that you will not re   ove or bring any documents or propr etary data of any k nd from your current or former employer witho  t wr tten authorization fro    your current or for   er employer

• **Entire Agree   ent**  This  etter and other accompanying documents s  persede and rep ace any pr or understand ngs or agreements  whether oral, written or implied between you and the F rm

If you wish to accept this offer, please sign and date below  As requ red, by law, your employment is also contingent upon your provid ng legal proof of your ident ty and a  thorization to work in the Un ted States    his offer, if not accepted, w   expire at the close of bus ness on August 28, 2020.
We look forward to having you  oin   s no later than September 7, 2020

Very tr  ly yours,

By  *Elizabeth A  Fegan*

   (Signature)

Name  Elizabeth A  Fegan

Tit e: Managing Member

ACCEPTED AND AGREED

Ravi Sakth vel

(PRIN   EMP OYE   NAME)

*Ravi Sakthive*

(Signature)

A  gust 25, 2020

Date

Ant c pated Start Date  Septe    ber 7, 2020

# EXHIBIT B



## FIRM CONFIDENTIALITY POLICY

It is the policy of Fegan Scott LLC ("Firm") that matters related to the Firm and its practice are not to be discussed in the presence of any unauthorized persons. It is understood that some of the matters in the Firm are sufficiently interesting to tempt personnel to engage in conversation that may breach the rule of confidentiality. Therefore, it is extremely important that everyone exercise extreme care in this area. The information received in the Firm is the private property of the client and aside from the embarrassment that would result from any unauthorized disclosure, there is the likelihood of creating legal liability and prejudice to the client's case.

Additionally, attorneys keep sensitive material that may be of a confidential nature, either as to the Firm, its personnel, to themselves, or to their clients. To avoid any violations of that confidentiality in the attorney's absence, under no circumstances should an attorney's office be offered for use to a client, vendor, or other unauthorized person without the consent of the attorney or a Managing Member of the Firm.

In addition to the client matters, some personnel must routinely handle pay and personnel information as a result of their normal duties. This information must be treated with the utmost sensitivity and confidentiality, A breach of confidentiality with respect to any client matter or internal matters, including pay or personnel, will be considered reason for immediate dismissal.

This will confirm that I, the undersigned, have read and agree to abide by the provisions of the foregoing stated policy as it relates to the confidentiality and the law firm.

Dated: _8/25/2020_____

_Ravi Sakthivel_____
Signature

Ravi Sakthivel
_____
Printed Name

# EXHIBIT C



# Employee Handbook

## Firm Property

Employees may be issued cell phones, desktop phones, laptops, tablets, printers, monitors, Wi-Fi devices, or other Firm-owned property, which the Firm considers essential for the satisfactory performance of the job. Employees are expected to treat Firm equipment carefully in order to preserve its usefulness. Employees may be required to pay for Firm equipment, which is lost or damaged through employee's gross negligence, willfulness, or dishonesty, subject to applicable law. Improper treatment of Firm property may result in disciplinary action up to and including termination.

## Conflicts of Interest

Situations that involve an actual or potential conflict of interest between an employee's interests and the interests of the Firm must be discussed with management in order to protect the interests of both parties. It is the policy of the Firm that all employees disclose any situation, which does or may involve a conflict of interest between their personal interests and the interests of the Firm.

While it is impossible to list every circumstance that may create possible conflicts of interest, the following should serve as a guide to the types of activities, which may cause conflicts:

1. Disclosure or use of privileged, confidential, proprietary, or financial Firm or Firm's client information, including information regarding legal strategy, projects, client costs, or systems, to anyone not connected with the Firm and not authorized to receive the information in connection with providing legal services, whether or not for personal profit.

2. A financial interest in an outside entity, which does business with, or is a competitor of the Firm (except where such ownership consists of securities of a publicly owned corporation regularly traded on the public stock market).

3. Rendering of directive, managerial, or consultant services to any outside entity, which does business with, or is a competitor of, the Firm, except with the Firm's knowledge and consent.

4. Unless such items or actions are readily available to the general public, acceptance of gifts of more than $25.00 value, loans, excessive entertainment, or other substantial favors from any outside entity which does, or is seeking to do business with, or is a competitor of, the Firm, without full disclosure to and approval from management.

5. Representation of the Firm in any transaction in which a personal interest exists.

6. Outside employment anywhere, directly or through an intermediary, which can or will adversely affect the employee's productivity or availability, including employment by competitor.

7. Removal of Firm property, including but not limited to forms, books, records and systems from Firm premises for use by anyone not connected with the Firm.

This list is not intended to be exhaustive or serve as a substitute for good judgment. If an employee finds themselves in a situation which is believed may give rise to a conflict of interest or which may in any way detract from the performance of their duties at the Firm, disclosure should be made to the Firm in order to protect the interest of the employee and the Firm.

## Confidentiality

Being employer by a law firm places on each Associate and employee a responsibility not usually associated with other types of organizations. This responsibility is confidentiality.



# Employee Acknowledgment

I, the undersigned employee, understand and acknowledge the following:

**That I have received a copy of this Employee Handbook and that it is my responsibility to read and be aware of, and comply with, ALL policies contained in it and any official notices that supersede it, including, but not limited to, policies on confidentiality, health, safety, anti-harassment, discrimination, and drugs and alcohol.** This Employee Handbook contains important Firm policies that directly affect many aspects of my employment. It is essential that I have a full understanding of these policies, and I will consult with the Firm's Managing Members if I do not have a full understanding of any policy herein or if I have any questions or concerns related to these policies.

That, unless expressly stated to the contrary in a written employment agreement between me and the Managing Members of the Firm, **this is an at-will employment relationship, and as such, both myself and Firm may terminate this agreement at any time, with or without cause or notice, as permitted by law.** Nothing in this Employee Handbook is intended to modify my at-will employment relationship with the Firm.

That **this is not a contract of employment or a guarantee of a continued employment relationship for any period**. That this Employee Handbook and the policies contained herein modifies, supersedes, and revokes any and all prior policies, procedures, practices, and oral or written representations to the contrary or that are otherwise inconsistent with its terms.

The Firm reserves the right to change, remove, or add to the policies herein at any time by providing official notices to me or posted in a conspicuous place in my work setting designated for such purposes. Any such official notices will modify, supersede, and revoke any existing notices that are inconsistent with them. Furthermore, the Firm reserves the right to change its implementation, interpretation, or application of the policies and procedures herein at any time.

That in the event that any of the terms or provisions of this Employee Handbook, including this Employee Acknowledgment, are declared invalid or unenforceable by any court of competent jurisdiction or any federal or state entity having proper jurisdiction over the subject matter herein, the remaining terms and provisions that are not affected thereby shall remain in full force and effect and employees will be afforded all rights required by law. Furthermore, in such event, the Firm will provide employees with substitute terms and provisions for those declared invalid once it becomes aware of their invalidity.

I sign in acknowledgment of, and agreement with, the above provisions.

<u>11/9/21</u>
Date

*Ravi Sakthivel*
_____
Employee Signature

Ravi Sakthivel
_____
Printed Name

**TO BE PLACED IN EMPLOYEE FILE**

EXHIBIT D

# Confidentiality Agreement

This Confidentiality and Proprietary Rights Agreement (this "Agreement") is made and entered into as of ___11/9/21___ between ___Ravi Sakthivel___, an individual ("Employee" or "you"), and Fegan Scott LLC ("the Firm") (collectively, the "Parties").

In consideration of Employee's employment with the Firm and the compensation being paid to Employee, the adequacy and sufficiency of which is acknowledge, and other valuable consideration, including but not limited to training and the receipt of confidential information, I, the Employee, agree as follows:

**1.     Preserving Privilege.**  One of the most important principals between an attorney and client is the "attorney-client privilege." Generally, this means that the information provided to an attorney by his client is "privileged communication" and the attorney cannot be compelled to testify about it. Our Firm's clients are the most important people with whom we interact. Without them, our law practice cannot exist. In the course of your work with the Firm, you, as an employee of the Firm, will undoubtedly have access to confidential client information. It is one of your most imperative responsibilities to ensure that you do not reveal client information and you only use and access it in connection with performance of your duties in connection with your employment with the Firm. Should you have any doubts or concerns about what might be considered confidential or privileged information, you should reach out to the Firm's Managing Partners immediately.

As an employee of the Firm, I acknowledge that I have been instructed regarding the confidentiality of all firm business, client disclosures, activity and records and, except as required by law in the course of my duties, or where instructed in writing by my supervisor, I am aware that all client disclosures, firm books, records, files and memoranda are to be treated in strict confidence. I pledge that I will not disclose information relating to the firm, its business or its clients during my employment or after termination thereof, whether such termination be voluntary or involuntary. I understand that any breach of confidentiality will be grounds for my immediate dismissal as a firm employee.

Signature:  *Ravi Sakthivel*          Print Name: Ravi Sakthivel

**2.     Duty to Clients.**   Employee shall conduct their personal affairs in such a way that their duties and responsibilities to the Firm and its clients and are not jeopardized and/or legal questions do not arise with respect to their association or work with the Firm. Employee who has access to client's records, or has access to file that contain sensitive records or information, and discusses any such material with another person, except in connection with carrying out their duties while working for the Firm to advance the interests of the client, may be subject to immediate termination.

Employee must never use their position at the Firm or utilize information learned about any of the Firm's clients for private gain, to advance personal interest, or to obtain favors or benefits for themselves, their families, or any other individuals or business entities.

Protecting the Firm's information is the responsibility of every employee and we all share a common interest in ensuring the information is not improperly or accidentally disclosed. Employee agrees not to discuss the Firm's confidential business with anyone who does not work for the Firm and does not need access to the information to perform their duties as an employee of the Firm or at the direction of counsel working for the Firm.

**3.     Confidential Information.** For purposes of this Agreement, "Confidential Information" means any and all information, ideas and materials, in whatever form, tangible or intangible, pertaining in any manner to the business of or used by the Firm (including, without limitation, any person or entity owned by, controlled by or affiliated with the Firm) or to any other person or entity to whom or to which the Firm owes a duty of confidentiality. Confidential Information includes, but is not limited to, any trade secret, data, know-how, knowledge, idea, information and materials relating to the past, present, planned or foreseeable business, products, services, developments, technology or activities of the Firm.  The following list is intended as a list of examples of Confidential Information only and not an exhaustive list:  (1) any work of authorship, invention, improvement or discovery; (2) any composition, design, formula, method, technique, process, program, specification or system; (3) any financial or investor information; (4) any personal or personnel information, compensation and other terms of employment of the Firm's employees, officers and directors (except Employee's own); (5) any names, history, preferences and practices of any customers or potential customers, partners, vendors, suppliers, or distributors; (6) any costs, fees, or prices at which the Firm obtains or has obtained, or at which it sells or has sold, its services and/or products; (7) any plans for research, development, marketing and sales; (8) any tangible or electronic document, log, record, file, book, notebook, paper, photograph, printout, drawing, diagram, flow-chart, sketch or other visual representation embodying, reflecting, summarizing, compiling, representing or containing any of the foregoing; and (9) any other information that is not known to the public.  Confidential Information does not include any information, idea or material (i) that is disclosed to Employee without confidential or proprietary restriction by a third party who rightfully possesses the information, ideas or materials (without confidential or proprietary restriction) prior to or independent of Employee's employment, (ii) that was rightfully in Employee's possession or part of Employee's general knowledge prior to or independent of Employee's employment, or (iii) that is or becomes publicly known or is legitimately in the public domain through lawful means and without breach of this Agreement by Employee or others.

**4.     Non-Disclosure and Use of Confidential Information.**  Employee understands that all Confidential Information shall remain the sole and exclusive property of the Firm. Employee will not at any time, while employed by the Firm or at any time thereafter, use, divulge, disclose and/or communicated, any confidential information that the Employee receives or has access to unless the information is required for Employee to perform the essential functions of Employee's position during his/her employment with the Firm. Confidential information is defined broadly and is not limited only to information and records related to a client. Confidential information includes the Firm's confidential and proprietary information that relate to the services it offers, including, but not limited to the Firm's clients/customers and vendors, customer and vendor agreements, pricing

information and terms of service and representation, business plans, sales and marketing information and strategies, and any other similar trade secrets, proprietary an confidential information of any kind in whatever form.

      **5.**      **Firm-Owned Material.**  Employee further acknowledges that all information and documents generated or maintained by Employee in connection with their employment with the Firm (including, without limitation, forms, pleadings, motions, briefs, letters, documents) is the sole property of the Firm, and Employee waives any property right they may have with respect to such documentation. Upon separation of Employee's employment with the Firm, Employee agrees to immediately return and deliver to the Firm all Firm equipment and all copies of any tangible or electronic records or files of any work product, emails, email attachments, contacts, calendars, call logs, voicemail, documents, presentations, correspondence, notes, memoranda, manuals, lists, data, notebooks, and other information in my possession or under Employee's control, whether prepared by Employee or by others, than contain, constitute or relate in any way to Confidential Information.

      **6.**      **Security of Computer Equipment and Confidential Information.**  I will use my best efforts to maintain the integrity and security of the Firm's computer systems.  I further agree to: (a) not access any of the Firm's systems without prior authorization; (b) not obtain other user's login names and/or passwords (including coworkers or others); (c) not provide my user login name and password to others; (d) not attempt to breach or defeat computer, PDA, or network security measures; (e) not intercept, access, or monitor electronic files or communications of other users or third parties without approval from such users or third parties; and (f) lock or shutdown my computer whenever it is left unattended.

      **7.**      **Conflicting Employment.**  During Employee's employment, Employee will not engage in any business activities, which are competitive with eh Firm or otherwise in conflict with Employee's duties on behalf of the Firm, unless the Firm has provided its consent in writing. These obligations include after hours, on weekends, and during vacation time, even if only organizational assistance or limited consultation is involved, whether or not Employee receives compensation from the competing or conflicting entity or person. It would be unfair for an employee of the Firm to be recruiting personnel from the ranks of the Firm's own employees while still employed and being paid by the Firm. The time, effort, and capital invested by the Firm in its workforce should not be diverted by someone operating on an inside track. Furthermore, it would be an unfair business practice for an individual still employed by the Firm to be involved in preparation or activities to form and pursue a competitive business while receiving wages and other benefits from the Firm.

      **8.**      **Non-Solicitation of Employees.** Employee acknowledges that the Firm's relationship with its employees are valuable business assets. Employee will not, directly or indirectly, for themselves or for any third party, during their employment and for twelve (12) months thereafter, recruit, solicit for hire or divert from the Firm any employee of the Firm.

      **9.**      **Non-Solicitation of Clients, Service Providers and Vendors.** Employee also acknowledges that the Firm's relationship with its clients, service providers and vendors are valuable business assets, and that Employment's employment may result in Employee being

provided with Firm trade secrets (as defined by the Uniform Trade Secrets Act and/or state laws) relating to such relationships. During Employee's employment and at any time thereafter, Employee will not use any of the Firm's trade secrets to solicit or encourage any client, service provider or vendor to case doing business with the Firm and/or to commence doing business with any other person or entity.

      **10.**   **Remedies.**  Nothing in this Agreement is intended to limit any remedy of the Firm under any applicable laws, and I understand that I could face possible criminal and civil actions resulting in imprisonment and substantial monetary liability if I misappropriate the Firm's Confidential Information.  In addition, I acknowledge that it may be extremely difficult to measure in money the damage to the Firm of any failure by me to comply with this Agreement, that the restrictions and obligations under this Agreement are material, and that, in the event of any failure by me to comply with this Agreement, the Firm could suffer irreparable harm and significant injury and may not have an adequate remedy at law or in damages.  Therefore, if I breach any provision of this Agreement, the Firm will be entitled to the issuance of an injunction or other restraining order or to the enforcement of other equitable remedies against me to compel performance of the terms of this Agreement without the necessity of showing or proving it has sustained any actual damage or posting any bond.  This will be in addition to any other remedies available to the Firm in law or equity.

      **11.**   **General Provisions.**  This Agreement constitutes the entire agreement between the Firm and Employee relating to the same subject matter, replaces any existing agreement entered into by Employee and the Firm relating to the same subject matter, and may not be changed or modified, in whole or in part, except by written supplemental agreement signed by Employee and the Firm.  A party's delay, failure or waiver of any right or remedy under this Agreement will not impair, preclude, cancel, waive or otherwise affect such right or remedy or any subsequent rights or remedies that may arise.  This Agreement does not alter my at-will employment status; my employment is for an unspecified term and may be terminated by either the Firm or me at will at any time, with or without cause or advance notice.  No subsequent change in my duties or compensation will modify the validity or scope of this Agreement.  If any provision of this Agreement is held invalid or unenforceable, the remainder of this Agreement will not fail on account thereof but will otherwise remain in full force and effect.  If any obligation in this Agreement is held to be too broad to be enforced, the Firm and I agree that it will be construed to be enforceable to the full extent permitted by law.  The obligations of this Agreement will continue beyond the termination of my Engagement and will be binding upon my heirs, executors, assigns, administrators, legal representatives and other successors in interest.  This Agreement will inure to the benefit of the Firm, its successors, assigns and affiliates.  This Agreement will be governed by and construed in accordance with the laws of the state in which I am engaged, without giving effect to its conflict of law rules.

<u>Acknowledgement of Confidentiality and Proprietary Rights Agreement</u>

I acknowledge that I have read and that I understand all the provisions of this Agreement, a copy of which has been delivered to me. By signing below, I agree to be bound by all of its terms.

Employee Name Printed:      Ravi Sakthivel

Employee Signature:     _Ravi Sakthivel_

Date:      11/9/21

# EXHIBIT E

**feganscott**

Our Firm    Current Cases    Successes    Investigations    Who We Serve

Contact Us

# Ravi Sakthivel

With over a decade of experience in both the private and public sector, Ravi brings a wealth of experience in case management, research, and document review.

In 2020, California licensed attorney Ravi Sakthivel joined the FeganScott team as a Staff Attorney in its San Diego office. With over a decade of experience in both the private and public sector, Ravi brings a wealth of experience in case management, research, and document review.

Most recently, Ravi worked as a staff attorney at Robbins Geller Rudman & Dowd and a document review attorney at TCDI. His work has guided the decisions of many legal teams and improved document production quality for advanced document review and discovery.

Ravi earned his Doctor of Law from the University of the Pacific – McGeorge School of Law and his Bachelor of Arts at University of California, Santa Cruz.



View vCard

# EXHIBIT F



**in**    Ravi Sakthivel





### Ravi Sakthivel

Experienced California Attorney

San Diego County, California, United States · 500+ connections

**Sign in to connect**

FeganScott

University of the Pacific - McGeorge School of Law

## About

California Licensed Attorney with 12+ years of experience practicing law in both the public and private sectors. Motivated self-starter focused on case management, research, and document review.

## Articles by Ravi

**Busting the Myth of Metadata**

By Ravi Sakthivel

Aug 7, 2018







Ravi Sakthivel

How will California navigate the pitfalls of a newly created recreational cannabis industry without a central state regulatory agency?

By Ravi Sakthivel

Jan 2, 2018



Los Angeles County Draft Rules & Regulations: A Glimpse of What's to Come

By Ravi Sakthivel

Dec 22, 2017

## Activity



Our founder Beth Fegan is an expert at fighting for victims of sexual abuse, discrimination, consumer fraud, antitrust violations and other offenses....

Liked by Ravi Sakthivel

Case 1:20-cv-03372-RLY-MJD Document 104-1 Filed 05/31/22 Page 35 of 94 PageID #: 892



LinkedIn    | Ravi Sakthivel                                                          |    

**We are excited to announce that Beacon Hill has recently been named to Forbes "America's Best Staffing Firms" List!**

Liked by Ravi Sakthivel



**Lawyers from Jones Day on Friday apologized to a Virginia federal judge for exposing secret grand jury information in a court filing, an error the...**

Shared by Ravi Sakthivel

[ Sign in to see all activity ]

---

## Experience



**Staff Attorney**
FeganScott
2020 - 2022 · 2 years

-Reviewed documents that were to be produced in response to the production request.
-Advised the trial attorney whether the document should be protected under privilege doctrines.
-Analyzed the documents that might be the key for the case and made redactions whenever necessary.
-Performed 1st and 2nd Level Review, Redactions, QC for Privilege, Privilege logging, and generated custom searches.



**Staff Attorney**
Robbins Geller Rudman & Dowd LLP
2019 - 2020 · 1 year
San Diego, CA, United States

- Reviewed documents and analyzed content for responsiveness to requests for production, advancing to the QC team and the privilege review
- Guided legal team and examined team members' document analysis for accuracy, providing feedback on improving production quality
- Prepared privilege log, preserving attorney-client and work product privilege
- Reviewed opposing party document productions and identified hot documents

 

| Ravi Sakthivel | |

2017 - 2020 · 3 years

Greater San Diego Area

-Conducted search queries of multi-million page databases to perform fact investigations, prepare for witness depositions, and to respond to discovery requests from opponents.
-Reviewed documents for relevance, content, and privilege before production.
-Performed Quality Control of document review teams.
-Created and maintained privilege logs.

### Managing Director
Imagine Reporting

2018 - 2019 · 1 year

San Diego, California

- Manage all contract drafts, reviews, and negotiations with customers, suppliers, and vendors.
- Provide legal advice and recommendations on applicable laws and risk mitigation strategies.
- Interpret and analyze contract documents to review, evaluate, and accept or reject customer requests.
- Prepare affidavits for attorneys for court records and legal action placement.
- Conduct investigations and statistical and documentary research.
- Organize and track case documentation to...

Show more

### Document Review Attorney
Catalyst Repository Systems

2017 - 2018 · 1 year

Greater Denver Area

- Analyzed complex legal documents including emails, contracts, spreadsheets and other financial documents
- Determined which issues applied to each document and coded the documents accordingly
- Reviewed and determined if the document was responsive to the issues in the case and determined if any type of attorney-client privilege applied
- Performed quality control on other reviewers work to ensure the client was receiving a top quality product

### Document Review Attorney
Epiq

2017 - 2018 · 1 year

Greater Denver Area

- Conducted advanced and last pass privilege review.
- Utilized Relativity to scan documents for statements against interest.
- Assisted in preparing documents for production.
- Reviewed documents produced by opposing counsel for content, relevance and importance.

### Legal Compliance Officer
Arcana Inc.

2016 - 2017 · 1 year

Greater Denver Area

5/12/22, 3:58 PM
Case 1:20-cv-03372-RLY-MJD Document 104-1 Filed 05/31/22 Page 37 of 94 PageID #: 984
Ravi Sakthivel - University of the Pacific - McGeorge School of Law - San Diego County, California, United States | LinkedIn





Ravi Sakthivel

- Reviewed and negotiated master service, professional services, and software licensing agreements.
- Researched and updated the company privacy policy to comply with recent regulatory changes.
- Increased document review efficiency by developing and implementing a new E-Signature procedure.

### Senior Legal Director
TransLegal

2014 - 2016 · 2 years

Shanghai City, China

- Designed & implemented legal strategies to meet goals & support business objectives at the executive-level.
- Analyzed legal processes and procedures to identify areas of improvement and develop updates to increase operational efficiency, productivity, and quality.
- Drafted and negotiated complex and high-risk contracts as a hands-on leader.
- Managed and oversaw the contracts team to ensure accuracy and timely delivery to each client.
- Created and facilitated company-wide...

Show more

### Senior Managing Attorney
Camacho & Associates

2012 - 2014 · 2 years

San Jose, California

- Managed land acquisition and cellular tower leases for Verizon Wireless, T Mobile & AT&T.

### Staff Attorney
Choe, Jackson & Weitz

2009 - 2012 · 3 years

Los Angeles, California

- Litigated foreclosure defense, unlawful detainer, & bankruptcy cases in CA and Federal jurisdictions.

### Associate Attorney
Hastings & Grewal

2007 - 2009 · 2 years

Sacramento, California

- Led Federal Immigration Law case management. Drafted legal memoranda, performed legal & case research, and represented petitioners in Asylum Hearings and Citizenship Interviews.

## Education

### University of the Pacific - McGeorge School of Law
Doctor of Law (J.D.) · Law

5/12/22, 2:22 PM                    Ravi Sakthivel - University of the Pacific - McGeorge School of Law - San Diego County, California, United States | LinkedIn

Case 3:20-cv-03372-RLY-MJD Document 104-1 Filed 05/31/22 Page 38 of 94 PageID #: 995



Ravi Sakthivel



## Licenses & Certifications

### License to Practice Law
State Bar of California
Issued Jun 2008
Credential ID 256327
See credential

### Registered Process Server
County of San Diego
Issued Jun 2018 · Expires Jun 2020
Credential ID 3306

### Relativity Certified User
Relativity

## Organizations

### McGeorge Alumni Board of Directors
Board Member
Nov 2018 - Present

### San Diego South Asian Bar Association
Treasurer
Nov 2018 - Present

### Lawyers Club of San Diego
-

### San Diego County Bar Association
-

## Groups

### Business Divorce and Private Company Disputes
-

### Attorney Referral Network USA
-

### San Diego Link Referral and Networking Group
-

5/12/22, 2:48 PM                    Ravi Sakthivel - University of San Diego School of Law - San Diego County, California, United States | LinkedIn

Case 1:20-cv-03373-RLY-MJD Document 104-1 Filed 05/31/22 Page 39 of 94 PageID #: 896





Ravi Sakthivel



Grand Opening Today! 3-7 pm at our office. Ribbon Cutting at 4 pm! Young Law Group 6910 S. Cimarron Rd. Suite 230 Las Vegas, NV 89113

Liked by Ravi Sakthivel

As the busy summer travel season approaches, consumers should be aware of what's going on with the Boeing 737 Max planes. Currently, they remain...

Liked by Ravi Sakthivel

Looking forward to the Lawyers Club Of San Diego with keynote speaker Dahlia Lithwick on Thursday. Will be a great evening!

Liked by Ravi Sakthivel

Proud to be quoted in PRWeek along with rockstar Rosie Mattio! Hoban Law Group

Liked by Ravi Sakthivel

I'm here at the US Grant with the Tom Homann LGBT Law Association getting ready for tomorrow's Annual Dinner. There's so much work that goes into...

Liked by Ravi Sakthivel



Ravi Sakthivel



Did you know that you can acquire shared mailboxes in Exchange / O365 with Forensic Email Collector? It's as simple as entering the shared mailbox as...

Liked by Ravi Sakthivel

Meet 'Black Girl Magic,' The 19 African-American Women Elected As Judges In Texas

Liked by Ravi Sakthivel

Lack of communication is one of the biggest reasons for divorce.

Liked by Ravi Sakthivel

---

## View Ravi's full profile

See who you know in common

Get introduced

Contact Ravi directly

[ Sign in to view full profile ]

## People also viewed



**Carol Drolette**
Mortgage Loan Originator NMLS #164730 at Curran Mortgage Inc
Austin, Texas Metropolitan Area



**Vickie Madison-Husband**
Beauty Specialist at Different Strokes Hair and Beauty Specialist
Lemon Grove, CA



**Patrick Inkmann**

 

Ravi Sakthivel


**Sharon M.**
I make your business dreams come true
Greater Alexandria, Louisiana


**Tage Aaker**
Sr. Project Manager at FCS Group
Seattle, WA


**Ommar Chavez**
Associate Attorney at Wirtz Law APC
San Diego, CA


**Katherine Collins**
Associate Attorney at Gibbs Houston Pauw
San Diego, CA


**Christine Scheall**
--
United States


**Nickolay (Nicka) Ishkhneli**
Agronomist and Student of Plant Sciences
Holon


**James Ochoa**
Client Account Specialist at Morrison Foerster
Diablo, CA

Show more profiles ⌄

## Others named **Ravi Sakthivel**


**Ravi Kiran Sakthivel**
Graduated at Centennial College
Toronto, ON


**Ravi sakthivel**
Sr Manager E&I Awarpur Cement Works
Washim


**Ravi Sakthivel**
--
Thrissur


**Ravi sakthivel**
Master of Arts - MA at IUBH University of Applied Sciences
Berlin

8 others named Ravi Sakthivel are on LinkedIn

See others named **Ravi Sakthivel**

## Add new skills with these courses


**Understanding Patents: A Deeper Dive**



Ravi Sakthivel




Music Law: Copyrighting a Song

See all courses

## Ravi's public profile badge

Include this LinkedIn profile on other websites



**Ravi Sakthivel**
Experienced California Attorney

University of the Pacific - McGeorge School of Law

View profile

LinkedIn

View profile badges

© 2022

Accessibility

Privacy Policy

Copyright Policy

Guest Controls

Language

About

User Agreement

Cookie Policy

Brand Policy

Community Guidelines

# EXHIBIT G


(https://www.feganscott.com/)

≡

< Current Cases (https://www.feganscott.com/cases/?type=current)

# Case Statistics

---

**Defendant Name:**  National Collegiate Athletic Association; The Board of Governors of the National Collegiate Athletic Association; and The Division I Board of Directors of the National Collegiate Athletic Association

---

**Case Number:** 1:20-cv-03172-JRS-MJD

**Court:** United States District Court for the Southern District of Indiana, Indianapolis Division

**Practice Area:** Civil Rights, Sports Litigation

**Status:** Active

**Date Filed:** 12/10/2020

# Case Files

---



Complaint
(https://www.feganscott.com/wp-content/uploads/2020/12/HBCU-FINAL-COMPLAINT.pdf)



Defendants' MTD
(https://www.feganscott.com/wp-content/uploads/2020/12/42-Entry-on-Defendants-MTD-Granted-in-Part-
Dismissed-in-Part-Manassa-Dasent-Stay.pdf)



# Case Overview

Beth Fegan and Jessica Meeder filed a class action lawsuit on behalf of a group of Black student-athletes at HBCUs against the National Collegiate Athletic Association (NCAA), alleging the organization's Academic Performance Program (APP) is intentionally discriminatory toward and punishes Black student-athletes at HBCUs.

The complaint alleges that the NCAA knew when it adopted the APP, a program ostensibly designed to improve student-athlete academic performance, that it would in fact undermine HBCUs' efforts to meet their mission to serve a historically underserved Black community, including Black student-athletes.

The APP is based on two metrics: Academic Progress Rate (APR) and Graduation Success Rate (GSR) of student-athletes. According to the complaint, each athlete who receives athletically related financial aid earns one point for continuing enrollment as a full-time student, and one point for remaining academically eligible pursuant to NCAA guidelines. The team's total points are divided by points possible, and multiplied by 1,000, resulting in the APR. The NCAA maintains that a 930 APR is a "proxy" for eventual graduation success, representing a projected 50% GSR.

Despite promises by the NCAA that this formula was "designed to improve graduation performance without having a disparate impact on ethnic minorities," the complaint notes that the NCAA knew that the APP's metrics continued to reinforce racial disparities, and that the GSRs for Black athletes were 20-30 percentage points lower than for white athletes.

The suit also claims that the APP utilizes an aggressive penalty scheme to sanction schools that restricts access to postseason play. These sanctions include NCAA championships, national collegiate championships and March Madness, major competitions that ultimately influence the trajectories and revenue opportunities for institutions and players alike.

The suit seeks an injunction to prevent the ongoing discrimination, as well as compensation and punitive damages on behalf of all Black student-athletes who participated in Division I NCAA sports at HBCUs from 2010 to present and who were injured through the implementation of the APP program. On September 13, 2021, the Court entered an order denying the majority of the NCAA/Defendant's motion to dismiss Plaintiffs' complaint, and the case is now in active discovery.

share case ◂

If you would like a free, no obligation consultation with our firm, please call us at 630.273.2625 or complete the form below and we will get back to you

**First Name**

First Name

**Last Name**



Last Name

**Email Address**

Email Address

**Phone Number**

Phone Number

**Message**

Message

I'm not a robot

reCAPTCHA
Privacy - Terms

Submit

# Related News

18 Apr 2022 (https://www.feganscott.com/news/cbs-news-lawsuit-claims-ncaas-academic-policies-discriminate-against-hbcus-and-black-student-athletes/)

## CBS News: Lawsuit claims NCAA's academic policies discriminate against HBCUs and Black student-athletes (https://www.feganscott.com/news/cbs-news-lawsuit-claims-ncaas-academic-policies-discriminate-against-hbcus-and-black-student-athletes/)

On April 15, 2022, CBS News' Skyler Henry spoke with co-counsel at May Lightfoot Law and the former HBCU athlete leading the class action case. The NCAA's academic rules for student-athletes are the subject of a proposed class action civil…

16 Sep 2021 (https://www.feganscott.com/news/u-s-district-court-gives-hbcu-student-athletes-green-light-in-case-challenging-ncaas-academic-performance-program/)

## U.S. District Court Gives HBCU Student Athletes Green Light in Case Challenging NCAA's Academic Performance Program (https://www.feganscott.com/news/u-s-district-court-gives-hbcu-student-athletes-green-light-in-case-challenging-ncaas-academic-performance-program/)

Student athletes beat motion to dismiss in case seeking damages for discriminatory treatment, according to FeganScott and May Lightfoot Law.



# feganscott

(https://www.feganscott.com/)

© 2022 FeganScott

Disclaimer (https://www.feganscott.com/disclaimer/)

(https://www.facebook.com/feganscottlaw/)

(https://twitter.com/FeganScottLaw)

(https://www.linkedin.com/company/feganscottlaw/ab



（空白）





# EXHIBIT H



**BARNES &
THORNBURG LLP**

201 S. Main Street, Suite 400
South Bend, IN 46601-2130 U.S.A.
(574) 233-1171
Fax (574) 237-1125

www.btlaw.com

Brian E. Casey
Partner
(574) 237-1285
Brian.casey@btlaw.com

April 26, 2022

**VIA ELECTRONIC MAIL**

Beth Fegan, Esq.
FeganScott LLC
150 S. Wacker Dr., 24th Floor
Chicago, IL 60606

     RE:    Apparent Conflict of Interest
               _Manassa v. National Collegiate Athletic Ass'n_
               Case No. 1:20-cv-03172 (S.D. Ind.)

Dear Beth:

It has come to our attention that one of FeganScott's attorneys, Ravi Sakthivel, served as contract counsel to the NCAA and reviewed the NCAA's documents in this very case. Mr. Sakthivel was hired by the e-discovery vendor retained by the NCAA in this matter (which is the same vendor handling the NCAA's e-discovery needs in FeganScott's other lawsuits against the NCAA). This poses grave ethical concerns because this representation, which is imputed to FeganScott, at a minimum, violates Rules 1.7, 1.9, and 1.10 of the Indiana Rules of Professional Conduct. Though additional investigation needs to occur here, this direct adversity conflict of interest with an existing client is grounds for FeganScott's disqualification in this matter (and perhaps FeganScott's other litigations against the NCAA).

As we understand it, Mr. Sakthivel appears as of this morning on the FeganScott website which indicates that he "join[ed] FeganScott in 2020." _See_ Exhibit A (Sakthivel bio on FeganScott website). As of now, FeganScott continues to represent that Mr. Sakthivel is a FeganScott attorney. Mr. Sakthivel likewise represents on his LinkedIn page as of today that he continues to be a FeganScott attorney. _See_ Exhibit B.

However, Mr. Sakthivel failed to disclose that he was a FeganScott attorney when he applied for a position as a contract lawyer with the NCAA's e-discovery vendor in January 2022. The resume that he provided the vendor failed to disclose any relationship with FeganScott at all, instead indicating that he worked for Robbins Geller Rudman & Dowd LLP. _See_ Exhibit C (resume). Mr. Sakthivel was subsequently required to complete a conflict of interest form, which specifically disclosed that the client on whose behalf he would be working was the NCAA. He was asked specifically whether that work would create any conflict of interest. He stated that it would not and that, and represented that if he learned of any actual or potential conflict of interest,

Elizabeth Fegan, Esq.
April 26, 2022
Page 2

he would disclose it. Mr. Sakthivel did not. *See,* Exhibit D (Sakthivel Completed Conflict Questionnaire).

Thereafter, Mr. Sakthivel went through an onboarding process in approximately early March and was provided confidential attorney work product and mental impressions with respect to the *Manassa v. NCAA* matter that is currently pending in the Southern District of Indiana. Mr. Sakthivel reviewed the NCAA's documents for responsiveness, confidentiality, and privilege in this matter, and coded documents as being related to particular issues that the NCAA's counsel determined in their judgment to be important, including as relating to certain case themes and litigation strategies. Mr. Sakthivel, according to his time entries, represented that he spent approximately 183 hours reviewing and coding the NCAA's documents. During that time, he reviewed well over 6,000 documents and had access to a substantial amount of the NCAA's documents that are relevant to this case and other litigation. It is our understanding that he participated in a number of conference calls and/or video meetings in which attorney mental impressions were shared. Mr. Sakthivel ceased to be employed by the NCAA's e-discovery vendor on or about April 4, 2022 without ever disclosing that he was concurrently a FeganScott attorney.

This conduct is a clear violation of Rule 1.7(a) of the Indiana Rules of Professional Conduct which states that "a lawyer shall not represent a client if the representation involves a concurrent conflict of interest" which exists if "the representation of one client will be directly adverse to another client." Rule 1.10(a) imputes that prohibition to any lawyer in that lawyer's firm, here FeganScott. Specifically, "[w]hile lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7, [or] 1.9." (While the Indiana Rules apply here, the California Rules of Professional Conduct are substantively identical to these rules. *See* Cal. R. Prof. Conduct 1.7(a), 1.10). Even after Mr. Sakthivel was no longer reviewing the NCAA's documents, he (and thus FeganScott) remain bound by Rule 1.9(a) which states that "[a] lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interest are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing."

Mr. Sakthivel has violated Rule 1.7 and 1.9 of the Indiana Rules of Professional Conduct. *See, e.g.*, *Reed v. Hoosier Health Sys., Inc.*, 825 N.E.2d 408 (Ind. Ct. App. 2005). By imputation pursuant to Rule 1.10, FeganScott has violated those same rules. *Id.* Given the grave nature of the issues raised by this concurrent conflict of interest, FeganScott must withdraw from this matter. The NCAA also believes that your firm's disqualification could be warranted in other litigation in which FeganScott has filed claims against the NCAA.[1] That will likely need to be the basis of discovery.

---

[1] Those matters include FeganScott's active litigations against the NCAA, and to the extent there are any appeals. In addition to the *Manassa* case, FeganScott is actively litigating the case pending in the U.S. District Court for the Northern District of California San Francisco Division *John Doe v. the NCAA, the University of San Francisco et al.*, Case No. 22-1559. FeganScott also represented the Plaintiff in the formerly pending case *Erin Aldrich v. the NCAA*, Case No. 5:20-cv-01733-EJD.

**BARNES & THORNBURG** LLP

Elizabeth Fegan, Esq.
April 26, 2022
Page 3


      Therefore, we request that promptly: (1) FeganScott indicate whether it intends to withdraw from this matter; and (2) FeganScott initiate a litigation hold with respect to any and all documents, communications, correspondence or data of any kind with respect to the issues raised in this correspondence, including with respect to Mr. Sakthivel, and those regarding FeganScott's litigation of each case against the NCAA. In the event FeganScott does not agree to withdraw in this matter, we will raising this issue with Magistrate Judge Dinsmore at the earliest opportunity, to discuss a schedule for discovery and briefing on a motion to disqualify. Be advised that the NCAA intends to seek attorney's fees and costs associated with all measures taken to address this conflict of interest issue. Further, while the NCAA intended to make additional rolling document productions on Plaintiff beginning today, in protection of its interests, the NCAA will pause its rolling document productions until this significant conflict of interest issues is resolved.

      We can discuss this further in our scheduled telephone call today. However, we wanted to raise this with you as soon as we had sufficient information to do so. We look forward to speaking with you about this matter further.


                  Sincerely,

                  /s/ *Brian E. Casey*

                  Brian E. Casey


CC: Counsel of Record


**BARNES & THORNBURG** LLP

Exhibit A



(https://www.feganscott.com/)

# Ravi Sakthivel

With over a decade of experience in both traditional and nontraditional legal sectors, Ravi brings a wealth of experience in case management, research, and document review.



**View vCard (https://www.feganscott.com/wp-content/uploads/2020/09/Ravi-Sakthivel.vcf)**

Ravi Sakthivel is a California licensed attorney with over twelve years of experience practicing law. Ravi earned his Juris Doctor from the University of the Pacific McGeorge School of Law where he excelled at the university's renowned Parole Representation Clinic and Immigration Clinic.

After law school, Ravi was an associate at Hastings & Grewal where he provided debt relief solutions to hundreds of struggling Americans during the Great Recession. He earned his bachelor's degree in history from the University of California Santa Cruz.

Prior to joining FeganScott in 2020 Ravi worked as a staff attorney for Robbins Geller Rudman & Dowd, where he concentrated on large pharmaceutical class action lawsuits. Ravi also previously worked for several California law firms, where he practiced real estate, bankruptcy, consumer protection law and immigration law.

Ravi also has extensive experience in nontraditional legal roles. He has worked as a legal compliance officer for a cannabis brand company in Denver, Colorado and as a senior legal director for a China-based legal English production and services company.

## Licensed In:

- California
- United States District Courts for the Northern, Central and Eastern District of California

## Stats:

- Practicing law since 2008
- Lived and worked in Shanghai, China for three years as a lawyer-linguists training legal professionals
- Treasurer and board member of the South Asian Bar Association of San Diego ("SABA-SD")
- On the board of the McGeorge Alumni Board of Directors
- Member of both the Lawyers Club of San Diego and the San Diego County Bar Association
- Holds a Relativity Certified User Certificate

# feganscott

(https://www.feganscott.com/)

© 2022 FeganScott

Disclaimer (https://www.feganscott.com/disclaimer/)

(https://www.facebook.com/feganscottl

(https://twitter.com/FeganScottLaw)

(https://www.linkedin.com/company/feg

a
w
/).

a
ns
c
ot
tl
a
w
/a
b
o
ut
/).

Exhibit B

 Emails aren't getting through to one of your email addresses. Please **update or confirm** your email. **More info**    

                                                       Home     My Network     Jobs



# Ravi Sakthivel · 2nd
Staff Attorney at FeganScott

- FeganScott
-  University of the Pacific - McGeorge School of Law

San Diego County, California, United States · Contact info

**500+** connections

 **1 mutual connection:** Evan J. Law

Connect        More

## About

California Licensed Attorney with 12+ years of experience practicing law in both the public and private sectors. Motivated self starter focused on case management, research, and document review.

## Activity
15,447 followers

+ Follow

**Ravi hasn't posted lately**

🛑  Emails aren't getting through to one of your email addresses. Please **update or confirm** your email. **More info**                                                                                                    ✕

 🔍                                                                    Home    My Network    Jobs



### Staff Attorney
FeganScott
2020 - Present · 2 yrs 4 mos

---



### Staff Attorney
Robbins Geller Rudman & Dowd LLP · Full-time
2019 - 2020 · 1 yr
San Diego, CA, United States

- Reviewed documents and analyzed content for responsiveness to requests for production, advancing to the QC team and the privilege revie ...see more

---



### Document Review Attorney
CDI · Contract
2017  2020 · 3 yrs
Greater San Diego Area

Conducted search queries of multi million page databases to perform fact nvestigations, prepare for witness depositions, and to respond t ...see more

---



### Managing Director
magine Reporting · Full-time
2018 - 2019 · 1 yr
San Diego, California

- Manage all contract drafts, reviews, and negotiations with customers, suppliers, and vendors.

---



### Document Review Attorney
Catalyst Repository Systems · Contract
2017  2018 · 1 yr
Greater Denver Area

Analyzed comple  legal documents including emails, contracts, spreadsheets and other financial documents

---

Show all 11 experiences →

---

## Education



### University of the Pacific - McGeorge School of Law

 Emails aren't getting through to one of your email addresses. Please **update or confirm** your email. **More info**

 

Home   My Network   Jobs

## Licenses & certifications

 **i ense to Practice Law**
State Bar of California
ssued Jun 2008 · No Expiration Date
Credential ID 256327

> Show credential ⬈

 **Registered Process Server**
County of San Diego
ssued Jun 2018 · Expired Jun 2020
Credential ID 3306

 **Relativity Certified User**
Relativity

## Skills

**Legal Writing** · 23

 Endorsed by Jeremy M. Evans who is highly skilled at this

**Legal Advice** · 22

**Legal Research** · 19

 Endorsed by Jeremy M. Evans and 1 other who is highly skilled at this

Show all 27 skills →

## Organizations

**McGeorge Alumni Board of Directors**
Board Member · Nov 2018   Present

🚫 Emails aren't getting through to one of your email addresses. Please **update or confirm** your email. **More info**    ✕

                                 Home    My Network    Jobs

Show all 4 organizations →

## Interests

**nfluencers**        Companies        Groups        Schools

 **Betty Liu** 🔗 · 3rd
Chairman and CEO at D and Z Media Acquisition Corp.
744,527 followers

 **Marshall Goldsmith** 🔗 · 3rd
#1 Leadership Thinker, Exec Coach, NYT Bestselling Author. Dartmouth Tuck Professor Mgmt Practice
1,383,495 followers

Show all 20 influencers →

Promoted                                              ⋯

                        

Attorney Needed                    Energy Law Forum
ASAP                               Interested in energy law?
We need more attorneys             Join our forum on energy
in your area ASAP. Apply           law.
now for membership.

Learn more                         Learn more

## People also viewed

 **Carol Drolette**
• 3rd
Mortgage Loan Originator NMLS #164730 at Curran Mortgage Inc

( Message )

**Vickie Madison  Husband**
• 3rd+
Beauty Specialist at Different Strokes Hair and Beauty Specialist

Exhibit C

# Ravi Sakthivel

San Diego County, California    rksakthivellaw@gmail.com    925-390-9125

**Summary**

I am a California Licensed Attorney in good standing who is flexible, reliable, and self-motivated. I practiced over 5 years as a project-based document review attorney with extensive review experience in the insurance, healthcare, complex litigation, SEC, pharmaceutical class actions and criminal fields. I have successfully completed over 100 document review projects that have ranged in length from less than a week (requiring 10-12 hour a day to reach the deadline) to over a year and a half. Though I am based on the West Coast I have successfully completed document review projects based on Mountain, Midwest, and East Coast time with no issues.

**Experience**

 **Document Review Attorney (Project Based)**

Robbins Geller Rudman & Dowd LLP 2019 - Present

- Reviewed documents and analyzed content for responsiveness to requests for production, advancing to the QC team and the privilege review.
- Guided legal team and examined team members' document analysis for accuracy, providing feedback on improving production quality.
- Prepared privilege log, preserving attorney-client and work product privilege.

 **Document Review Attorney (Project Based)**

TCDI 2017 - Present

-Conducted search queries of multi-million-page databases to perform fact investigations, prepare for witness depositions, and to respond to discovery requests from opponents.
-Reviewed documents for relevance, content, and privilege before production.
-Performed Quality Control of document review teams.

 **Managing Director**

Imagine Reporting 2018 - 2019

- Manage all contract reviews and negotiations with customers, suppliers, and vendors.
- Provide legal advice and recommendations on applicable laws and risk mitigation strategies.
- Interpret and analyze contract documents to review, evaluate, and accept or reject customer requests.

 **Document Review Attorney (Project Based)**

Catalyst Repository Systems 2016 - 2019

- Analyzed complex legal documents including emails, contracts, spreadsheets and other financial documents.
- Determined which issues applied to each document and coded the documents accordingly.
- Reviewed and determined if the document was responsive to the issues in the case and determined if any type of attorney-client privilege applied.

 **Document Review Attorney (Project Based)**

Epiq 2016 - 2019

- Conducted advanced and last pass privilege review.

- Utilized Relativity to scan documents for statements against interest.

- Assisted in preparing documents for production.

- Reviewed documents produced by opposing counsel for content, relevance and importance.

 **Legal Compliance Officer**

Arcana Inc. 2016 - 2017

- Led the legal review of assignment provisions during a corporate restructure to mitigate legal risk.

- Reviewed and negotiated master service, professional services, and so ware licensing agreements.

- Researched and updated the company privacy policy to comply with recent regulatory changes.

- Increased document review efficiency by developing and implementing a new E-Signature procedure.

**Senior Legal Director**

TransLegal 2014 - 2016

- Designed & implemented legal strategies to meet goals & support business objectives at the executive-level.

- Analyzed legal processes and procedures to identify areas of improvement and develop updates to increase operational efficiency, productivity, and quality.

- Dra  ed and negotiated complex and high-risk contracts as a hands-on leader.

 **Senior Managing Attorney**

Camacho & Associates 2012 - 2014

- Managed land acquisition and cellular tower leases for Verizon Wireless, T Mobile & AT&T.

 **Staff Attorney**

Choe, Jackson & Weitz 2009 - 2012

- Litigated foreclosure defense, unlawful detainer, & bankruptcy cases in CA and Federal jurisdictions.

**Associate Attorney**

Hastings & Grewal 2007 - 2009

- Led Federal Immigration Law case management. Dra   legal memoranda, performed legal & case research, and represented petitioners in Asylum Hearings and Citizenship Interviews.

**Education**

 **University of the Pacific - McGeorge School of Law**

Doctor of Law (J.D.), Law

 **University of California, Santa Cruz**

Bachelor of Arts (B.A.), History

**Licenses & Certifications**

 **Registered Process Server** - County of San Diego
Issued Jun 2018 - Expires Jun 2020 3306

 **License to Practice Law** - State Bar of California
256327

 **Relativity Certified User** – Relativity

**Skills**

Litigation • Legal Research • Civil Litigation • Legal Writing • Legal Advice • Courts • Legal Assistance •
Personal Injury   •   Westlaw   • Arbitration

# Exhibit D

**EXHIBIT A**
**Description of Services/Compensation/Expenses/Conflict of Interest**

**Services to be provided by Contractor**:

Review, analysis, and coding of documents provided to Proteus by Proteus' Client, The National Collegiate Athletic Association ("NCAA")                    .

**Term of Agreement:** Approx. 2-3 weeks depending on volume of documents.

**Confidential Information (as defined in Section 2.l of the Independent Contractor Agreement) may be utilized:** (Check boxes as applicable, and set forth details as desired in space provided)

[ ]     Only at Proteus' business premises

[X]     At Contractor's premises provided that appropriate confidentiality procedures and arrangements are observed

[ ]     Other:  Given the investigation related concerns of this project, Proteus' Client requires confidentiality including downloading documents only to Proteus' Computers.  As such, this review should occur at Proteus.

**Compensation**

Proteus shall pay Contractor Twenty-Five Dollars per hour ($25.00/hour) for work performed by Contractor to complete Services (as that term is defined in the Independent Contractor Agreement), which shall be due and payable to Contractor bi-weekly on or before the 16th day and first day of each month.

**Expenses**

Contractor is responsible for his or her own expenses unless Contractor receives prior written approval from an officer of Proteus that an expense is reimbursable by Proteus.  Notwithstanding the foregoing provision, Proteus agrees to reimburse Contractor for the following expenses:

NONE

**Conflict of Interest**

After conducting an independent analysis of past and current clients, Contractor represents and warrants that Contractor has no business, professional, personal or other interest, including, but not limited to, the representation of other clients, that would conflict in any manner with the

performance of Contractor's obligations under this agreement.  If any actual or potential conflict of interest arises under this Agreement, Contractor shall immediately notify Proteus of such conflict in writing.

**CONTRACTOR**                                   **PROTEUS DISCOVERY GROUP, LLC**

_____        By: _____

CONTRACTOR (Print Name)

_____        Its: _____

CONTRACTOR SIGNATURE

_____

DATE

# EXHIBIT I

**Elizabeth Fegan**

| | |
|---|---|
| **From:** | Elizabeth Fegan |
| **Sent:** | Tuesday, April 26, 2022 12:34 PM |
| **To:** | Casey, Brian |
| **Cc:** | Je Yon Jung; LaRuby Z. May; Brooke Achua; Melissa Clark; Ezie-Boncoeur, Chisara; Tim Scott |
| **Subject:** | Re: Manassa v. NCAA - Correspondence |

Brian,

We have no knowledge of any of this but are working to immediately cut Ravi's access to all Fegan Scott systems.

We will be back in touch with a full response once our investigation is complete.

Thank you for bringing this to our attention.

Sincerely,
Beth
Elizabeth A. Fegan | Fegan Scott LLC | 312-741-1019

---

**From:** Casey, Brian <Brian.Casey@btlaw.com>
**Sent:** Tuesday, April 26, 2022 12:12 PM
**To:** Elizabeth Fegan <beth@feganscott.com>
**Cc:** Je Yon Jung <JJung@maylightfootlaw.com>; LaRuby Z. May <LMay@maylightfootlaw.com>; Brooke Achua <brooke@feganscott.com>; Melissa Clark <melissa@feganscott.com>; Ezie-Boncoeur, Chisara <cezie@btlaw.com>
**Subject:** Manassa v. NCAA - Correspondence

Beth –

Please see the attached correspondence.  Thank you.

Brian Casey

**Brian Casey** | Partner
Barnes & Thornburg LLP
201 S. Main St., Suite 400, South Bend, IN 46601
Direct: (574) 237-1285 | Mobile: (574) 210-4694

   

Atlanta | Boston | California | Chicago | Delaware | Indiana | Michigan
Minneapolis | New York | Ohio | Raleigh | Salt Lake City | Texas | Washington, D.C.

Visit our Subscription Center to sign up for legal insights and events.
CONFIDENTIALITY NOTICE: This email and any attachments are
for the exclusive and confidential use of the intended recipient. If
you are not the intended recipient, please do not read, distribute
or take action in reliance upon this message. If you have received
this in error, please notify us immediately by return email and
promptly delete this message and its attachments from your
computer system. We do not waive attorney-client or work product
privilege by the transmission of this message.

# EXHIBIT J



FeganScott LLC
ATTORNEYS AT LAW
150 S. Wacker Dr., 24th Floor
Chicago, IL 6060g

PHONE   312.741.1019
FAX     312.264.0100

beth@feganscott.com

April 29, 2022

**Via Email and Certified U.S Mail**

Ray Biederman, CEO & Co-Founder
Proteus Discovery Group
155 E. Market Street, Ste. 400
Indianapolis, Indiana 46204
ray.biederman@proteusdiscovery.com

   Re: Ravi Sakthivel

Dear Mr. Biederman,

   Ravi Sakthivel was a full-time employee of Fegan Scott LLC from September 7, 2020, to April 27, 2022. He was listed on the Firm's website. His LinkedIn profile also reflects his role as a Staff Attorney at Fegan Scott. A quick Google search would verify his employment at our Firm.

   It has come to our attention that Mr. Sakthivel performed document review services on projects through your agency during this same time period. Not only were these activities a violation of multiple Firm policies, neither you nor Mr. Sakthivel ran any conflict checks through our Firm.  As a result, our Firm has been contacted by a Defendant in an active case we are prosecuting seeking to have our Firm disqualified because Mr. Sakthivel performed a document review on a project for it through an agency. Our Firm has been accused of a serious breach of professional ethics due to Mr. Sakthivel's actions.

   We ask that you provide the names of all companies for which Mr. Sakthivel performed document review and the names of any associated litigation so that we may determine whether any conflicts exist with our Firm's cases and the companies which we are suing.

   Given the potentially grave consequences to our Firm and its clients from Mr. Sakthivel's actions, we request that you provide this information by Wednesday, May 4, 2022. If you have any questions, please contact me right away.



Mark Firmani
April 29, 2022
Page 2

Sincerely,

Elizabeth A. Fegan
Managing Member

cc. Timothy Scott

# EXHIBIT K



**FeganScott LLC**
ATTORNEYS AT LAW
150 S. Wacker Dr., 24th Floor
Chicago, IL 6060g

PHONE  312.741.1019
FAX  312.264.0100

beth@feganscott.com

May 2, 2022

**VIA ELECTRONIC MAIL**
Brian Casey
BARNES & THORNBURG LLP
201 S. Main Street, Ste. 400
South Bend, IN  46601

       Re:    *Manassa, et al. v. National Collegiate Athletic Association*, Case No.
             1:20-cv-03172 (S.D. Ind.)

Dear Brian:

      I am writing in response to your letter of April 26, 2022.  I unequivocally condemn the actions of Ravi Sakthivel. To that end, I personally filed an Attorney Misconduct Complaint regarding Ravi's actions with the State Bar of California on April 27, 2022 and terminated his employment.

      However, because of the unique circumstances here, no attorneys at Fegan Scott LLC (the Firm) have received or had access to any information regarding the NCAA from Ravi, nor did Ravi access, or have access to, the Firm's files relating to the NCAA in this or any other litigation. Accordingly, any presumption otherwise is rebuttable and should not result in the Firm's disqualification as counsel for Plaintiff and the putative class.

      We would be willing to provide the following information via sworn declarations.

    **A.  Hiring of Ravi Sakthivel**

      The Firm hired Ravi Sakthivel as a staff attorney to start on September 7, 2020.  Ravi was hired to work full time and fully remotely from his home in California.  Since his hiring, he has worked exclusively reviewing documents in the Zantac litigation, which documents are maintained by an e-discovery vendor retained by lead counsel in that litigation.

      At the time he was hired, Ravi signed an offer letter.  The signed offer letter provides in pertinent part: "You will start in a full-time position of Staff Attorney with responsibility for document review. You will report directly to Elizabeth Fegan. You agree to devote your full business time, attention, and best efforts to the performance of your duties for the Firm."

      In November 2021, the Firm introduced an Employee Handbook and Confidentiality Agreement. The Confidentiality Agreement provides in pertinent part:



May 2, 2022
Page 2

> During Employee's employment, Employee will not engage in any business activities, which are competitive with [the] Firm or otherwise in conflict with Employee's duties on behalf of the Firm, unless the Firm has provided its consent in writing. These obligations include after hours, on weekends, and during vacation time, even if only organizational assistance or limited consultation is involved, whether or not Employee receives compensation from the competing or conflicting entity or person.

The Employee Handbook provides in pertinent part:

> Situations that involve an actual or potential conflict of interest between an employee's interests and the interests of the Firm must be discussed with management in order to protect the interests of both parties. It is the policy of the Firm that all employees disclose any situation, which does or may involve a conflict of interest between their personal interests and the interests of the Firm. While it is impossible to list every circumstance that may create possible conflicts of interest, the following should serve as a guide to the types of activities, which may cause conflicts: * * * Outside employment anywhere, directly or through an intermediary, which can or will adversely affect the employee's productivity or availability, including employment by competitor.

Ravi never disclosed to the Firm that he was employed by anyone other than Fegan Scott. Ravi never disclosed to the Firm that he was conducting document review outside of the firm or working on any cases other than as assigned by Fegan Scott.

Moreover, the Firm openly held out Ravi as a staff attorney on its website and on Ravi's LinkedIn profile. Similarly, the Firm openly lists its cases on its website. Notwithstanding, no e-discovery vendor ever contacted the Firm regarding Ravi or to run a conflict check relating to his work.

**B.  Firm Systems**

Our Firm uses a document management and billing system called Clio. Within Clio, we can track every employee's activity and access to each client file.  The firm's file for the Manassa v. NCAA litigation is matter number 2025. The Firm has pulled the report reflecting all activity in matter number 2025; the report reflects that Ravi never accessed the files in matter number 2025.

Further, all employees are required to record their billable time contemporaneously with their work. As mentioned above, Ravi worked full-time on the Zantac litigation; Ravi never worked on the Manassa litigation and thus never billed any time to this matter.



May 2, 2022
Page 3

### C.  Firm Communications

Since inception, the Firm's attorneys (other than myself and Tim Scott) have worked fully remotely. Since his hiring, Ravi has worked fully remotely from his home in California. In fact, due to COVID, no one from the Firm has met Ravi in person.

It is the Firm's regular practice to hold firm meetings via Zoom every Friday. One Friday per month is an all-firm meeting. The other Friday meetings are case specific. Staff attorneys are only invited to and attend the all-firm meeting and the meetings in which the cases they are working on are scheduled for discussion.

The focus of the firm meeting is administrative in nature. Ravi did not attend case-specific firm meetings unless the Zantac matter was on the agenda.  We have checked the agendas for the case-specific meetings; they reflect that the Manassa litigation was never discussed during the same meeting as Zantac. Accordingly, Ravi was never present at a Firm meeting for any discussion regarding the NCAA litigation.

I never communicated orally or in writing with Ravi regarding the Manassa litigation or the NCAA.  Moreover, no other attorney has ever discussed this matter with Ravi, other than to invite him to a telephonic meeting which never happened.

On April 22, 2022, Melissa Clark emailed Ravi to inquire whether he was available to temporarily move off of Zantac to work on document review in this litigation. She asked if he was available on August 26, 2022 for a call about the document review.  Ravi replied that he was interested in moving off Zantac and was available for the call.  Upon receipt of your letter on April 26, 2022, I immediately cancelled the document review call (which had not yet taken place).  During these administrative scheduling communications, no one discussed any substantive information concerning this case or the NCAA, nor did Ravi disclose that he had conducted document review for the NCAA or have any information or knowledge concerning the NCAA. Moreover, Ravi never had access to Plaintiff's e-discovery vendor for this litigation.

### D.  Termination

On April 26, 2022, I received your letter. I immediately placed Ravi on administrative leave and caused Ravi's access to all firm systems to be shut down.  I immediately directed Melissa Clark and Brooke Achua to preserve and send to me any communications that they had with Ravi concerning this litigation.

My Co-Managing Member, Tim Scott, instructed all Fegan Scott employees to refrain from any communications with Ravi while an investigation was conducted.



May 2, 2022
Page 4

On April 27, 2022, Tim Scott and I had a telephone call with Ravi.  We asked Ravi whether he had been engaged in any work outside the firm. He stated that he had worked with multiple agencies and recruiters on document review projects. We asked him to disclose which firms, and he agreed to send us a list.

Although we had not shared your letter with him, he stated that he saw the letter from the "NAACP"'s lawyers, which we understood him to be referring to your April 26, 2022, letter. He stated that he had not known that Fegan Scott had a case involving the "NAACP" and thought he had checked all of the conflicts. We advised him that his actions were a serious breach of professional ethics, a violation of firm policy, and we were terminating his employment.  We advised him that he had an obligation to preserve the firm's laptop, and not to destroy or delete any information on the laptop while we arranged for the laptop to be returned to a third-party IT firm.[1]  Ravi has since advised us in writing that he did not use the Firm laptop to conduct document review in this litigation.

*        *        *

We request that you share with us the identity of the NCAA's e-discovery vendor. We are gravely concerned with the vendor's failure to vet the document reviewers, run a conflicts check, or conduct a simple Google search. We intend to hold the vendor responsible if the NCAA pursues this matter to litigation, the Firm incurs costs, or is disqualified from this or any other litigation.

Please let us know if you have additional questions that we can answer to address the NCAA's concerns.

We reiterate our agreement that Ravi's actions were the most serious of ethical violations and will continue to pursue state bar action against him. However, given the facts here, we do not believe that withdrawal is required.

Sincerely,

Elizabeth A. Fegan
Managing Member

---

[1] We have instructed the IT firm to preserve and not access the laptop. We intend to destroy it once this issue is resolved, but of course will not do so until we reach agreement with you or pursuant to Court Order.



May 2, 2022
Page 5

cc.      Timothy A. Scott
         Melissa Clark

EXHIBIT L



**Hamish S. Cohen**
**General Counsel & Co-Founder**
155 E Market St. Suite 400
Indianapolis, IN 46204
Main: (317) 614-7340
www. ProteusDiscovery.com

May 6, 2022

**Via Electronic Mail**
(beth@feganscott.com)

Ms. Elizabeth Fegan, Esquire
Managing Member
FeganScott LLC
160 S. Wacker Drive, 24th Floor
Chicago, Illinois 60606

Re:   Response to Your April 29, 2022 Correspondence Regarding
      Attorney Ravi Sakthivel

Dear Ms. Fegan:

I am writing on behalf of Proteus Discovery Group, LLC ("Proteus") and in response to your correspondence of April 29, 2022, regarding Attorney Ravi Sakthivel.

As a preliminary matter, Proteus is not in privity with FeganScott LLC ("Fegan") and has no duty to respond or otherwise cooperate with Fegan's investigation. Fegan is not and has never been Proteus's client, directly or indirectly.

That said, Proteus is willing to provide the following information voluntarily:

*First*, Attorney Sakthivel submitted an application to Proteus to provide legal document review services on an independent contractor basis. In doing so, he submitted his curriculum vitae. Sakthivel did not mention any association with Fegan. Rather, his curriculum vitae states he is still employed by Robbins Geller Rudman & Dowd, LLP.

*Second*, Attorney Sakthivel executed an independent contractor agreement with Proteus on March 2, 2022. The terms of this Agreement provided as follows: "[a]fter conducting an independent analysis of past and current clients, [Sakthivel] represents and warrants that [he] has no business, professional or other interest, including, but limited to, the representation of other clients, that would conflict in any manner with the performance of Contractor's obligations under this Agreement. If any actual or potential conflict of interest arises under this Agreement, [Sakthivel] shall immediately notify Proteus of such conflict in writing." Sakthivel never disclosed any conflict during his application, onboarding or work at Proteus, despite the fact – as Proteus subsequently discovered – he was employed by Fegan at all times he performed work for Proteus

May 6, 2022
Page 2

and working not only adverse to the NCAA, but on the very matter on which he was purportedly
conducting document review.

      Please feel free to contact me directly if you would like to discuss this further.

                Very truly yours,

                Hamish S. Cohen

Cc:    Raymond Biederman, Esquire (CEO Proteus Discovery Group, LLC)
        Karoline Jackson, Esquire (General Counsel, Barnes & Thornburg LLP)

# EXHIBIT M

| | |
|---|---|
| **From:** | Casey, Brian |
| **To:** | Je Yon Jung; Elizabeth Fegan; LaRuby Z. May; Melissa Clark |
| **Cc:** | Ezie-Boncoeur, Chisara |
| **Subject:** | Manassa v. NCAA - Follow-up on meet and confer |
| **Date:** | Friday, February 18, 2022 7:56:29 PM |
| **Attachments:** | image001.png |
| | image002.png |
| | image004.png |
| | NCAA - Manassa Draft Protocol.pdf |

Hi Je Yon –

Following up on our 26(f) call on Monday and your follow-up e-mail summary of that call on Tuesday, attached please find a copy of our draft review protocol in this matter.

In response to your requests on Monday (as memorialized in your e-mail Tuesday), the protocol identifies or describes:

(1) the most relevant folders within the NCAA's Academics and Membership Affairs Sharepoint directory, i.e., the Committee on Academics and the Committee on Academic Performance, as well as a number of subfolders particularly within the CAP folder, that will be prioritized because they appear to have the documents that are most responsive to Plaintiff's discovery requests;
(2) the past or present document custodians that, based on our current analysis, may have documents responsive to Plaintiff's requests;
(3) what we believe are the most relevant search terms or concepts that will guide the document review.  (As we discussed Monday, the idea of search terms is less central to the review given that we hope to use Technology Assisted Review (TAR) [also described in the review protocol], but the concepts will still be used to facilitate the review and will also serve as a quality-control check later on in the process to try to confirm that our review is identifying responsive documents.).

The review protocol is still a work in progress, but this represents our current thinking.  There is also a very high-level discussion of the TAR process we anticipate employing to facilitate the document review.

We will also be making another document production on Monday.  They will be documents relevant to the litigation, including a number of NLI-related documents.  Document production will continue on a rolling basis as the review process continues.

And as mentioned in our discussion, we anticipate providing supplemented interrogatory responses to you on or about February 28th.  If that changes, we will follow up with you on that.

I will respond separately to your questions regarding the CCA subpoena.

Thank you.

Brian

**Brian Casey** | Partner

Barnes & Thornburg LLP

201 S. Main St., Suite 400, South Bend, IN 46601

Direct: (574) 237-1285 | Mobile: (574) 210-4694

   

Atlanta | Boston | California | Chicago | Delaware | Indiana | Michigan
Minneapolis | New York | Ohio | Raleigh | Salt Lake City | Texas | Washington, D.C.

Visit our Subscription Center to sign up for legal insights and events.

CONFIDENTIALITY NOTICE: This email and any attachments are
for the exclusive and confidential use of the intended recipient. If
you are not the intended recipient, please do not read, distribute
or take action in reliance upon this message. If you have received
this in error, please notify us immediately by return email and
promptly delete this message and its attachments from your
computer system. We do not waive attorney-client or work product
privilege by the transmission of this message.

**Document Review Proposal**
***Troyce Manassa v. National Collegiate Athletic Association,***
**Case No. 1:20-cv-03172 (S.D. Ind.)**

**I.     Introduction**

Review teams and project managers will review a set of the National Collegiate Athletic Association's (**NCAA**) documents that potentially relate to the claims alleged in the lawsuit captioned *Troyce Manassa v. National Collegiate Athletic Association*, currently pending before the United States District Court for the Southern District of Indiana, Case No. 1:20-cv-03172 (the **Lawsuit**). The NCAA will produce non-privileged documents responsive to certain requests for production (**RFPs**) served by Plaintiff in the Lawsuit.

**II.     Brief Background Description**

The Lawsuit alleges the NCAA's academic policies, including specifically the Academic Performance Program (**APP**) and its Academic Progress Rate (**APR**), intentionally racially discriminate against African-American Division I student-athletes who attend historically black colleges and universities (**HBCUs**), because sports teams at these schools allegedly experience more postseason "bans."

Troyce Manassa is the only current plaintiff, but this is a class action lawsuit yet to be certified. Manassa played men's basketball at Savannah State University (**SSU**) during the 2015/2016 and 2016/2017 seasons. In 2016/2017, SSU lost postseason play access because of academic performance issues.

The goal of the review is to produce non-privileged, responsive documents in the Lawsuit. The review will focus generally on the NCAA's development of the APP and APR, the alleged racially discriminatory effect of the APP and APR on African-American Division I student-athletes, and the resulting postseason "bans." The review will focus specifically on the document categories identified in Plaintiffs' RFPs in the Lawsuit. Documents will only be marked **Reponsive** if they meet the review criterial set forth in Section IV below.

Additional information relating to the Lawsuit is contained in the Complaint and RFPs. Copies of the Complaint and RFPs are attached hereto as Exhibits A and B, respectively.

**III.     Data Sources and Custodians**

    **A.     Shared Server Sources**

The NCAA has identified a number of shared server databases that contain documents and information relating to the Lawsuit and the RFPs. These shared server databases include the following:

| |
|---|
| Academic and Membership Affairs (AMA) SharePoint |
| National Letter of Intent (NLI) Portal |
| Governance SharePoint |
| Research SharePoint |
| Office of Inclusion SharePoint |

The majority of documents relating to the APP and APR reside in the AMA SharePoint and appear to be primarily contained within the "Committee on Academics" and "Committee on Academic Performance" subfolders.

This is consistent with the history of the APP and APR. The program was created to measure, assess, and encourage the academic success of NCAA member institutions and their student-athletes by creating incentive and disincentives for academic performance.

The APP and APR were initially formulated in 2002-2003 by an internal task force known as the Incentives and Disincentives Working Group. The Committee on Academic Performance (**CAP**) was established oversee the program, beginning in 2004. In or about 2017-2018, the Committee on Academic Performance was rebranded and consolidated as the Committee on Academics (**COA**).

The CAP and COA subfolders contain information regarding the following topics believed to be responsive in the Lawsuit:

CAP and COA Topics:

| |
|---|
| (1) APP History |
| (2) APR Improvement Plans |
| (3) APP Reviews |
| (4) Incentives and Disincentives Working Group |
| (5) Limited Resource Institutions |
| (6) Penalties |
| (7) APP Waivers |
| (8) HBCU and LRI Academic Advisory Group |
| (9) Research Requests |
| (10) Policy and Governance |
| (11) Educational Outreach |
| (12) Academic Assessment and Achievement |

Given the responsiveness of the above topics, the NCAA's review will initially prioritize the CAP and COA subfolders of the AMA, listed above. Positive results from the review of these folders will be used as a "seed set" to establish the Technology Assisted Review ("TAR")

algorithm, as discussed in greater detail in Section V below.  The algorithm will be used to identify additional priority folders from the above-referenced shared server databases.

**B.    Custodial Sources**

The NCAA has separately identified a number of current and former employees with potentially relevant information to the Lawsuit.  We have collected information from the following record custodians:

| | |
|---|---|
| Todd Petr | Managing Director of Research (former) |
| Lydia Bell | Associate Director of Research, Academic Performance |
| Katy Yurk | Associate Director of Academic and Membership Affairs |
| Binh Nguyen | Associate Director of Membership Services |
| Jennifer Henderson | Managing Director of Academic and Membership Affairs |
| Dave Schnase | Vice President of Academic and Membership Affairs |
| Susan Peal | Director of Law, Policy and Governance (manages the NLI Program) |
| Kevin Lennon | Vice President of Division I Governance |
| Tom Paskus | Principal Research Scientist |
| Reshauna Cobb | Director of Academic and Membership Affairs (former) |
| Amy Wilson | Managing Director of Inclusion |
| Libby Harmon | Associate Director of Enforcement |

The information collected from the above custodians includes all information contained in each custodian's Microsoft OneDrive and Exchange (including Outlook) databases.

## IV.    Review Protocol and Criteria

The NCAA is currently reviewing documents for responsiveness and privilege. Documents will be coded **Responsive** or **Not-Responsive** in accordance with this review protocol.  Responsive documents may be additionally tagged **Privileged**, **Confidential**, or **Needs Further Review**, as appropriate,  in accordance with the criteria set forth below.

### A.    Responsive – Subject Matter

Any document that relates to the Lawsuit or RFPs and meets the criteria set forth in this review protocol will be marked as responsive.

Responsive documents should include a combination of the following "Key Terms":

<u>Key Terms:</u>

- Troyce Manassa
- APP= Academic Performance Program
- APR = Academic Progress Rate
- SSU = Savannah State University
- HBCU = historically black colleges and universities
- LRI = Limited Resource Institution
- Committee on Academics
- NLI = National Letter of Intent
- Postseason ban (term used by Plaintiff)
    - The NCAA calls this term loss of postseason access
- Collegiate Commissioners Association = CCA
    - This is the entity that sponsors the National Letter of Intent program


Responsive documents will narrowly relate to one or more of the categories listed below:

(1) Plaintiff Troyce Manassa;
(2) race and/or HBCUs, and the applicable academic policies (the APP or the APR);
(3) race and/or HBCUs, and academic policies related to postseason play or postseason access;
(4) historical documents concerning:
    i.  the creation or purpose of the Academic Performance Program (APP);
    ii.  the creation or purpose of the Academic Progress Rate (APR);
    iii.  the creation or purpose of initiatives for Limited Resource Institutions (LRIs);
    iv.  the creation or purpose of the HBCU and Limited-Resource Institutions Academic Advisory Group (which we understand is no longer active);
    v.  the creation or purpose of the eight action items the NCAA identified to address racial justice and equity:
        - See here: Planning to Advance Racial Equity - NCAA.org
(5) documents related to SSU's academic performance and any enforcement activities associated with SSU;
(6) documents concerning any alleged disparate impact in African American student-athletes' performance under the applicable academic policies (the APP or the APR); and/or
(7) documents alleging racism against African American student-athletes in the context of academic performance within the class date range.

**B. Responsive – Date Range**

Because the Lawsuit's class action allegations are 2010-2020, the NCAA will be using a date range of January 2010 through December 2020 for responsiveness determinations, with the exception of specific relevant historical documents that predate 2010.

Responsive historical documents that predate 2010 should include institutional documents relating to either:

(1) the creation or purpose of the Academic Performance Program (APP);

(2) the creation or purpose of the Academic Progress Rate (APR);

(3) the creation or purpose of the HBCU and Limited-Resource Institutions Academic Advisory Group;

(4) institutional documents relating to the creation of academic policies related to postseason play or access; or

(5) institutional documents concerning academic policies related to HBCUs.

Documents that meet the above review criteria should be coded as "Responsive." Documents that do not meet the above review criteria should be coded as "Not-Responsive."

**C. Privilege**

1. **Attorney-Client Privilege**. Any attorney-client privileged document shall be coded as being **Privileged** and coded Attorney/Client. Generally speaking, the attorney-client privilege protects confidential communications by a client to an attorney (whether in-house or outside counsel) made in order to obtain legal assistance from the attorney in his or her capacity as a legal adviser and the advice given by the lawyer in the course of representing the client.

2. **Work Product Privilege**. Any work product documents shall be coded as being **Privileged** and coded Work-Product. Generally speaking, the work-product privilege protects against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation once litigation is ongoing or the threat of litigation is real and imminent.

**D. Needs Further Review.** Documents that cannot be accessed for technical reasons, such as .zip files or documents that require review by the Project Manager shall be coded "Needs Further Review."

**E. Confidentiality.** Any responsive document should also be tagged as "Confidential" if it meets the criteria in the parties' Stipulated Protective Order. A copy of the Stipulated Protective Order is attached hereto as Exhibit C.

F.  **Highlighted Search Terms.**  The following terms have been identified as indicative of a document's potential relevance to the Lawsuit.  These terms may be used to search data sources and will be highlighted in each document:

- Minority
- Minority Student!
- Adverse Impact
- Negative Impact
- Academic
- Academic Progress Rate
- African-American
- APP
- APR
- Black
- Diverse
- Diversity
- Educational Initiative
- Filter
- Filters
- GSR
- Historically Black Colleges and Universities
- HBCU
- Improvement Plan
- Inclusion
- Inclusive
- Limited-Resource
- Low-Resource
- LRI
- LRIs
- Post-season
- Postseason
- Waive!
- Appeal!

The above terms are not exhaustive.  There may be responsive documents that do not use these terms.

G.  **Family Coding Rules**

1.  If any document in a document family is coded **Responsive**, all other documents in the family should be coded **Responsive**;

2.  Production Tags and Confidentiality Tags must be marked exactly the same for every member of the same document family.

V.       **Technology Assisted Review**

The NCAA anticipates using Technology Assisted Review (**TAR**) to assist with the identification of potentially relevant data sources and documents.  TAR is a process of having computer software electronically classify documents based on input from reviewers, in an effort to expedite the organization and prioritization of the document collection. The computer classification may include topics pertaining to discovery responsiveness, privilege, and other designated issues.

The NCAA will identify a "seed set" of documents for review.  Documents marked **Responsive** from the seed set will be used to create a TAR algorithm.  The algorithm will be used to screen additional data sources that are likely to contain responsive materials.  As additional materials are marked **Responsive**, the algorithm will be updated to include the additional document examples.

Search terms will be used to test the algorithm.  Data sources that (1) indicate a high frequency of search terms but do not follow the algorithm, or alternatively, (2) a low frequency of search terms that follow the algorithm, will undergo a separate Quality Control (**QC**) review to determine the explanation for the incongruities.