UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| TROYCE MANASSA, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>   v.<br><br>NATIONAL COLLEGIATE ATHLETIC ASSOCIATION,<br><br>        Defendant. | Case No. 1:20-cv-03172-RLY-MJD |

## THE NCAA'S REPLY IN SUPPORT OF ITS MOTION TO DISQUALIFY FEGAN SCOTT LLC AS COUNSEL FOR PLAINTIFF

The National Collegiate Athletic Association ("NCAA") respectfully files this Reply brief supporting its Motion requesting the disqualification of Fegan Scott LLC, ("Fegan Scott") as counsel for Plaintiff Troyce Manassa ("Manassa" or "Plaintiff") and the proposed class in this lawsuit.

## I.        Introduction

Fegan Scott concedes that its "duplicitous" full time employee, Ravi Sakthivel, labored under a concurrent conflict of interest when he reviewed documents on behalf of the NCAA while working "full time" for Fegan Scott, one of Plaintiff's law firms. However, rather than acknowledge the consequences of its employee's conduct, Fegan Scott posits an alternate reality whereby it is the victim, others are responsible, and it should not bear any consequences for its employee's misconduct. Fegan Scott disregards the applicable Indiana Rules of Professional Conduct ("RPC") for this concurrent unwaivable conflict of interest, Rules 1.7 and 1.10(a), and instead offers a narrow and extra-textual construction of the Rules that essentially removes imputation from the Rules. The Opposition to Motion to Disqualify Fegan Scott LLC as Plaintiff's

Counsel, Dkt No. 104 ("Opp'n")[1] does not change that the Motion to Disqualify (Dkt. Nos. 100, 101, 101-1 and 101-2) should be granted.

## II.      Reply Argument

### A.      The Sakthivel and Robinson Declarations should be disregarded.

#### 1.      Mr. Sakthivel's Declaration lacks credibility.

To borrow Fegan Scott's description of its own "full time" "staff attorney" who reported directly to the head of the firm, Dkt. No. 101-1, Ex. A-4, Sakthivel is a "duplicitous lawyer." Opp'n at 5, 21. According to his former employer, Mr. Sakthivel committed a serious breach of the rules of professional conduct," Opp'n at 1, purportedly violated Fegan Scott's employee rules, and failed to disclose his activities to his employer. *Id.* at 3-4. However, while excoriating Mr. Sakthivel for his lack of credibility, Fegan Scott simultaneously proceeds to rely extensively (and sometimes exclusively) on Mr. Sakthivel's veracity to argue that his activities should not be imputed to Fegan Scott.

Sakthivel has demonstrated a long pattern of integrity issues which render his declaration completely unreliable – along with Fegan Scott's arguments that simultaneously rely on him and demonstrate his lack of credibility. (Dkt. No. 104-2). *United States v. Amerson,* 185 F.3d 676, 683 (7th Cir. 1999) (citations omitted) ("trial judge did not err in exercising his 'considerable discretion,' when he refused to receive the affidavit into evidence" that was described as "ambiguous and untruthful.").

According to Fegan Scott, after starting work "full time" as a "staff attorney" for that firm, Mr. Sakthivel agreed to adhere to the firm's Employee Handbook and Confidentiality Agreement.

---

[1] Citations to page numbers in the Opposition Brief page refer to the ECF page number listed at the top of the page, and not the page number listed in the document footer.

Among other things, these required Sakthivel to "not engage in any business activities which are competitive with the Firm or otherwise in conflict with [his] duties on behalf of the Firm." Opp'n at 7. Sakthivel totally disregarded these commitments and instead, performed legal work for the NCAA and for several other entities, all while a full time Fegan Scott employee. *See e.g.*, Dkt No. 101-1 p. 98, Ms. Fegan's May, 2, 2022 letter ("On April 27, 2022, Tim Scott and I …. asked Ravi whether he had been engaged in any work outside the firm. **He stated that he had worked with multiple agencies and recruiters on document review projects**.")  (emphasis added).

He was even more deceitful to Proteus, the NCAA's e-discovery vendor.  Twice, Sakthivel certified on employment applications he submitted to Proteus for work as a document review attorney that the employment history he disclosed was true and correct—and each time that disclosed employment history omitted Fegan Scott, even though he was then working "full time" as an attorney for that firm. **Exhibit A**, which is incorporated by reference as if set forth fully herein (Supplemental Biederman Decl.), at ¶¶ 5-6. Mr. Sakthivel's contention, that he mistakenly submitted an older resume to Proteus that omitted his current Fegan Scott employment is not remotely plausible. Dkt. No. 104-2, ¶ 9.

Then, after learning that the NCAA was the client for whom he would be reviewing documents, Sakthivel again certified that he knew of no conflict of interest because of that engagement, and that he would inform Proteus if he learned of one – even though shortly thereafter he received materials, identifying Fegan Scott and his supervisor as being the counsel suing the NCAA. Ex. A, Supplemental Biederman Decl., ¶¶7-11; Dkt. No. 101-2, Ex. B, Biederman Decl., at ¶¶16-21. He never informed Proteus of the conflict.

In addition, contrary to his declaration which Fegan Scott cites repeatedly, Opp'n at 12 (citing Sakthivel Decl., ¶10); Opp'n at 13-14 (citing Sakthivel Decl., ¶¶7, 9, 10), Proteus has no

record of Sakthivel ever providing Proteus a copy of his LinkedIn profile. *See* Ex. A Supplemental Biederman Decl., ¶4; Dkt. No. 101-2, Ex. B, Biederman Decl., at ¶¶ 7-8, 10. And, neither Fegan Scott nor Sakthivel provide proof that he actually did, leaving one to question whether Sakthivel's representations in his sworn declaration are yet another example of his dishonesty.   If so, Sakthivel's submission of false statements in a sworn declaration would be a further RPC violation. *See e.g., In re Usher*, 987 N.E.2d 1080, 1088 (Ind. 2013) ("Respondent violated Professional Conduct Rule 3.3(a)(1) by knowingly submitting false responses to RFAs in Jane Doe's civil action."); *see also* RPC 3.3(a)(3) (prohibiting a lawyer from knowingly offering "evidence that the lawyer knows to be false.").

Sakthivel's assertion that, during the "entire time of [his] employment with Fegan Scott, [he] had no knowledge as to any other cases the firm was handling" is also not credible. Dkt. No. 104-2, ¶ 4. Neither is Sakthivel's statement that he "was never aware that Fegan Scott was involved in any capacity with the Manessa [*sic*] v. NCAA litigation." *Id*. at ¶ 5. Each of these statements is belied by: (1) Fegan Scott's admission that it "has openly listed its representation of NCAA student-athletes in this litigation on the Firm's website" since December 2020 (Opp'n at p. 5); and (2) Sakthivel's receipt of the NCAA's document review protocol which included Plaintiff's Complaint and requests for production that Fegan Scott (including his supervisor, Beth Fegan) served on the NCAA in this lawsuit. *See*, Ex. A Supplemental Biederman Decl., ¶¶6-10; Dkt. No. 101-2, Ex. B, Biederman Decl., at ¶¶ 18-19.

Even now, his sworn statement about his work for Fegan Scott contradicts Ms. Fegan's declaration.  According to Mr. Sakthivel, he "did [not] perform any work on any other matter other than the Zantac litigation." Dkt. No. 104-2, ¶4. Ms. Fegan, on the other hand, swore that he billed time to at least two other matters in addition to the Zantac litigation. Dkt. No. 104-1, ¶41.

Like Sakthivel, his declaration cannot be trusted. The Court should disregard it. More importantly though, it should discount Fegan Scott's arguments which repeatedly rely on his credibility while simultaneously calling it into question.

> 2.   Robinson's legal opinions on the Indiana Rules of Profession Conduct should be disregarded.

The declaration of Fegan Scott's intended professional responsibility expert, Mary Robinson ("Robinson"), also is unpersuasive and should be disregarded for several reasons. Dkt. No. 104-7 ("Robinson Decl.").

**First,** since the ultimate issue here is whether Fegan Scott should be disqualified as counsel, Robinson's opinion on this purely legal question is neither necessary nor appropriate. This Circuit's precedent "prohibit[s] experts from offering opinions about legal issues that will determine the outcome of a case." *King v. Kramer*, 763 F.3d 635, 646 (7th Cir. 2014); *Roundy's Inc. v. N.L.R.B.*, 674 F.3d 638, 648 (7th Cir.2012); *United States v. Caputo*, 517 F.3d 935, 942 (7th Cir. 2008). Robinson's declaration is more like a supplemental brief in support of Fegan Scott's position, and not an appropriate aid for the Court's disqualification legal analysis.

**Second**, even if Robinson was opining on a permissible topic, the Robinson Declaration fails to satisfy multiple aspects of a traditional *Daubert* analysis. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993); *see also* Fed. R. Evid. 702. First, she lacks the necessary qualifications to opine about the Indiana Rules of Professional Conduct. While Robinson may be an established professional responsibility lawyer in Illinois and California, she admits that she is not licensed to practice law in Indiana. Dkt. No. 104-7, ¶ 1. Her experience as an Illinois or California-licensed attorney does not credential her to opine about disqualification in this Indiana specific matter because, "[w]hether disqualification is appropriate in this case is governed by the Indiana Rules of Professional Conduct." *Watkins v. Trans Union, LLC*, 869 F.3d 514, 519 (7th Cir.

2017). The respective rules and comments in the Indiana and Illinois Rules of Professional Conduct are not identical. Additionally, Robinson's self-described professional background does not include any experience with Indiana law, practice, or attorney disqualification matters. Moreover, Robinson has almost exclusively provided expert testimony in Illinois state or federal matters. *See* Dkt. No. 104-7 ¶¶ 1-7 and p. 1001. And tellingly, Robinson was **not** retained to give a specific opinion that analyzes Fegan Scott's conflict of interest under Indiana law. *Id*. ¶ 8. (*see* quoted opinion "issue").

Moreover, to be admissible under Rule 702, "[e]xpert opinions must be reliable and helpful." *Smith v. Nexus RVs, LLC*, 472 F. Supp. 3d 470, 475 (N.D. Ind. 2020); *Burnett v. CNO Fin'l Group, Inc.*, No. 1:18-cv-00200, 2022 WL 896871, *7 (S.D. Ind. March 25, 2022). The Robinson Declaration is neither. A reliable opinion requires a rigorous, usually scientific, methodology. "Even if eminently qualified, experts cannot offer opinions based solely on their say-so (what lawyers call *ipse dixit*)". *Smith*, 472 F. Supp. 3d at 476 (citations omitted). "Expert reports are to be 'detailed and complete,' and to offer an explanation of the expert's analysis. Fed. R. Civ. P. 26 Advisory Committee's note. They 'must include 'how' and 'why' the expert reached a particular result, not merely the expert's conclusory opinions.'" *Days Corp. v. Lippert Components, Inc*., No. 3:17CV208-PPS/MGG, 2022 WL 1237433, at *3 (N.D. Ind. Apr. 27, 2022).

Robinson's ultimate conclusion that Sakthivel's document review work for the NCAA does not allegedly constitute a Fegan Scott representation is nothing more than an *ipse dixit* opinion that ignores the imputation rules under RPC 1.10(a) and its commentary. Among other things, Robinson reaches this conclusion based on her naked assumption that the NCAA was allegedly "not misled to believe that it was accepting representation from Fegan Scott." (Dkt. No. 104-7, ¶¶ 23 and 39). While Robinson treats this as "an additional factor" to consider, she points to no

6

authority in the Indiana Rules of Professional Conduct or elsewhere that require an analysis of whether or not a party misled another in the context of a conflict of interest.

Robinson's contention that no consensual attorney-client relationship existed with the NCAA is also unfounded and ignores that: (1) the NCAA consented to its vendor Proteus retaining contract review attorneys to perform legal work for the NCAA, (2) Sakthivel was a full time employee of Fegan Scott when he consented to perform legal work for the NCAA, and (3) Sakthivel's status as a full time Fegan Scott employee during the entire concurrent conflict (even if not disclosed), imputes his conduct to Fegan Scott under RPC 1.10(a). *See*, Ex. A Supplemental Biederman Decl., at ¶ 2; Dkt. No. 101 at 4-8; *see also* RPC 1.10(a) Comment No. 2 and 7.

***Third****,* related to her lack of reliable methodology under *Daubert*, Robinson's legal analysis is flawed. Her declaration cherry picks certain comments to the Indiana Rules of Professional Conduct (*see* Dkt. No. 104-7, ¶ 35), while ignoring the most applicable comments to this case:

RPC 1.7, Comment 4 (emphasis added):

> **If a conflict arises after representation has been undertaken, the lawyer ordinarily must withdraw from the representation**, unless the lawyer has obtained the informed consent of the client under the conditions of paragraph (b). See Rule 1.16. Where more than one client is involved, whether the lawyer may continue to represent any of the clients is determined both by the lawyer's ability to comply with duties owed to the former client and by the lawyer's ability to represent adequately the remaining client or clients, given the lawyer's duties to the former client. See Rule 1.9. See also Comments [5] and [29].

RPC 1.10, Comment 2 (emphasis added):

> **The rule of imputed disqualification** stated in paragraph (a) gives effect to the principle of loyalty to the client as it applies to lawyers who practice in a law firm. Such situations **can be considered from the premise that a firm of lawyers is essentially one lawyer for purposes of the rules governing loyalty to the client, or from the premise that each lawyer is vicariously bound by the obligation of loyalty owed by each lawyer with whom the lawyer is associated**. Paragraph (a) operates only among the lawyers currently associated in a firm. When a lawyer moves from one firm to another, the situation is governed by Rules 1.9(b), and 1.10(b) and 1.10(c).

The comments are particularly important because the Court may rely on "the specific guidance offered in the commentary" as it assesses counsel disqualification. *Watkins*, 869 F.3d at 519.

Robinson bases her conclusions in large part on inapplicable law and/or on conclusory statements. Despite the Indiana specific legal standard for disqualification, and the 2005 amendments made to the current version of the Indiana Rules of Professional Conduct, Robinson bases her opinion on non-binding legal authority. *See* Dkt. No. 104-7, ¶ 17 (citing a 1988 ABA Formal Opinion); (*Id. at* ¶ 19) (applying Northern District of Illinois case that puts "assumption of shared conferences upon the firm rather than the client"); (*see* Dkt. No. 104-7, 19) (citing *Cromley v. Bd. of Educ. of Lockport Twp. High Sch. Dist*. 205, 17 F.3d 1059 (7th Cir. 1994)).

In sum, the Court should disregard Robinson's Declaration. Her legal opinions on Indiana law, when she is not an Indiana lawyer, lack a reliable methodology, overlook or give insufficient attention to the relevant Indiana Rules, and should not be relied upon.

## B.   RPC 1.7 and 1.10 apply, and these rules mandate Fegan Scott's disqualification.

Fegan Scott's analysis begins in the wrong place and then constructs its argument based on multiple faulty premises.  It is necessary therefore to reorient the inquiry here.  This dispute is governed by Rule 1.7 and 1.10(a), and its commentary, with which Fegan Scott scarcely engages. When viewed through the lens of those rules, it is clear that Fegan Scott must be disqualified.

The Opposition begins by asking whether Fegan Scott—separate and apart from Mr. Sakthivel, its "full time" "staff attorney,"—ever represented the NCAA.  Dkt. No. 101-1, Ex. A-4. It asserts that "the NCAA was never Fegan Scott's client and thus Fegan Scott has never owed a duty of loyalty to the NCAA."  Opp'n at 6; *id.* at 13 ("Fegan Scott has never represented the NCAA."); *id.* at 13-14 (same).  It then simply asserts that because Fegan Scott hired Mr. Sakthivel as a staff attorney to review documents from his house on behalf of one client, "he was not acting

within the scope of his employment or as an agent for the Firm," when he performed precisely the same tasks with respect to a different client.  Opp'n at 6, 13 (citing *Barnett v. Clark*, 889 N.E.2d 281, 284 (Ind. 2008)).  Under its analysis then, because "the NCAA was never [Fegan Scott's] client, Rule 1.7 does not apply."  Opp'n at 19.

This logic turns Rule 1.7 and 1.10(a) on its head.  The appropriate analysis focuses first on Mr. Sakthivel's conduct (using Rule 1.7) and then asks whether that conduct should be imputed to Mr. Sakthivel's firm, Fegan Scott (using Rule 1.10(a)). Here, Mr. Sakthivel, while associated with Fegan Scott, clearly acted as an attorney for the NCAA and that representation is imputed to Fegan Scott. No part of that analysis asks whether Fegan Scott, separate and apart from its employee Mr. Sakthivel, represented the NCAA.

1.      Mr. Sakthivel violated Rule 1.7.

An attorney's duty of "loyalty and independent judgment," RPC 1.7, Comment No. 1, is at the heart of the attorney-client relationship. Rule 1.7 protects and maintains that duty by preventing concurrent conflicts of interest. According to Rule 1.7, "[i]f a conflict arises after representation has been undertaken, *the lawyer ordinarily must withdraw from the representation*," absent consent.  RPC 1.7, Comment No. 4 (emphasis added).

Here, there is no question that Mr. Sakthivel violated Rule 1.7, which prohibits an attorney from representing a client "if the representation involves a concurrent conflict of interest."  RPC 1.7 (a). "A concurrent conflict of interest exists if: (1) the representation of one client will be directly adverse to another client." RPC 1.7 (a).  *See also* Dkt. No. 101 at 16-17.

Even Fegan Scott admits that "Sakthivel violated Rule 1.7", violating his "duty of loyalty" to the NCAA and to Plaintiff.  Opp'n at 19, n.5.  However, the Opposition does not then deal with the implications of that concession.  It simply ignores it except to set up a straw man about "Sakthivel migrat[ing] away," *id.*, which is legally and factually wrong (as discussed below).  It

does not argue there was consent because the NCAA never consented. In fact, the NCAA could not consent because the NCAA and Manassa were asserting claims against each other in the same litigation. Rule 1.7(b)(3) & Comment 23 ("Paragraph (b)(3) prohibits representation of opposing parties in the same litigation, regardless of the clients' consent.").

Nor does Fegan Scott attempt to argue that this analysis changes because Mr. Sakthivel was terminated first by Proteus, and then subsequently by Fegan Scott. This is undoubtedly because "conflicts may not be avoided by withdrawal." *Folsom v. Menard, Inc.*, No. 3:09-CV-94:RLY-WGH, 2011 WL 1404875, *2 (S.D. Ind. Apr. 13, 2011); *Reed v. Hoosier Health Sys., Inc.,* 825 N.E.2d 408, 412 (Ind. Ct. App. 2005) ("'It is ... established law that an attorney cannot avoid disqualification ... merely by 'firing' the disfavored client ... and transforming a continuing relationship to a former relationship by way of client abandonment'....") (citations omitted). Courts look to when the conflict arose to determine whether a concurrent conflict exists and what rules apply, so Rule 1.7 applies to this concurrent conflict.  Dkt. No. 101 at 20 (citing cases).

Mr. Sakthivel's conduct therefore unquestionably violated his duty of "loyalty and independent judgment" under Rule 1.7. RPC 1.7, Comment No. 1.

2.    Rule 1.10(a) requires imputation to Fegan Scott.

Once it has been conclusively established that Mr. Sakthivel violated Rule 1.7 (as even Fegan Scott admits), the next question is whether Mr. Sakthivel's misconduct must be imputed to Fegan Scott, the law firm which employed him "full time" during the time he was engaged in the concurrent conflict of interest.  Dkt. No. 101, Ex. A, Casey Decl., at Ex. 4 p.1 & 3.  Rule 1.10(a) requires that Mr. Sakthivel's misconduct be imputed to Fegan Scott and Fegan Scott be disqualified.

Rule 1.10(a) states:

**While lawyers are associated in a firm, none of them shall knowingly represent**

10

> **a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7**, 1.9, or 2.2 unless the prohibition is based on a personal interest of the prohibited lawyer and does not present a significant risk of materially limiting the representation of the client by the remaining lawyers in the firm.

RPC 1.10(a) (emphasis added). The Opposition scarcely addresses Rule 1.10(a), except to imply that it applies to his obligation to Manassa (without admitting that it therefore also applies to the NCAA). Opp'n at 11-12. Comment 2 to Rule 1.10 makes clear that Rule 1.10(a) applies here and imputes Mr. Sakthivel's breach of his duty of loyalty to Fegan Scott. According to Comment 2:

> The rule of imputed disqualification stated in paragraph (a) gives effect to the principle of loyalty to the client as it applies to lawyers who practice in a law firm. Such situations can be considered from the premise that **a firm of lawyers is essentially one lawyer for purposes of the rules governing loyalty to the client, or from the premise that each lawyer is vicariously bound by the obligation of loyalty owed by each lawyer with whom the lawyer is associated**. Paragraph (a) operates only among the lawyers currently associated in a firm. When a lawyer moves from one firm to another, the situation is governed by Rules 1.9(b), and 1.10(b) and 1.10(c).

RPC 1.10, Comment 2 (emphasis added). Here, all the attorneys at Fegan Scott are treated as "essentially one lawyer for purposes of the rules governing loyalty to the client," like Rule 1.7. *Id.* Alternatively, "each lawyer is vicariously bound by the obligation of loyalty owed by each lawyer with whom the lawyer is associated." *Id.* Put together, that means that all the lawyers at Fegan Scott (including Mr. Sakthivel) are treated as "one lawyer" for purposes of applying Rule 1.7, and Mr. Sakthivel's duty of loyalty to the NCAA is shared by all the lawyers at Fegan Scott.

The Opposition only addresses the applicability of Rule 1.10(a) by arguing that it only prohibits "*knowingly* representing a client when another lawyer in the firm would be conflicted from doing so." Opp'n at 16 (citing Robinson Decl., ¶25). It contends that "no Fegan Scott lawyer other than Sakthivel knew that Sakthivel was doing work for the NCAA such that no Fegan Scott lawyer engaged in the representation of Manassa and the putative class with any knowledge of

Sakthivel's conflict." *Id.* (citing Robinson Decl., ¶25).[2]

This analysis is wrong and incomplete. Rule 1.10(a) states that "**[w]hile lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7**." Sakthivel, admittedly a "full time" staff attorney associated with Fegan Scott, certainly knowingly represented the NCAA while Fegan Scott represented Manassa. Dkt. No. 101-1, Ex. D (Conflict of Interest statement); *see also* RPC 1.0(f) (defining "knowingly" as including a person's knowledge "inferred from the circumstances"). And Fegan Scott knowingly represented Manassa, while at the same time its lawyer, Mr. Sakthivel, also represented the NCAA. That is sufficient. "[E]ach lawyer is vicariously bound by the obligation of loyalty owed by each lawyer with whom the lawyer is associated." RPC 1.10, Comment 2.

Moreover, as a Fegan Scott employee, Mr. Sakthivel's knowledge and actions are imputed to his employer, Fegan Scott. *See* Dkt. No. 101 at 23. This is so even if the principal does not actually know what the agent knows. *BGC Entertainment, Inc. v. Buchanan ex rel. Buchanan*, 41 N.E.3d 692, 701 (Ind. Ct. App. 2015); *Knauer v. Jonathon Roberts Financial Group, Inc.*, IP 01-1168, 2002 WL 31431484, at *8 (S.D. Ind. Sept. 30, 2002). The Opposition (and the Robinson Declaration), attempt to distance Fegan Scott from Mr. Sakthivel's conduct and knowledge by asserting that he was not acting within the scope of his employment or as an agent of Fegan Scott

---

[2] The Opposition also asserts that "Rule 1.7 and the duty of loyalty applies to the lawyer representing the client but does not involve imputation to a firm that never represented the client." Opp'n at 19 (citing *Exterior Sys. v. Noble Composites, Inc.*, 210 F.Supp.2d 1062, 1072 (N.D. Ind. 2002)). This is an inaccurate, *see* RPC 1.10(a) (extending imputation to any circumstance that prohibits an attorney associated with a firm from representation under "Rules 1.7, 1.9, or 2.2"). Rule 1.7 is not analyzed in *Exterior Systems*. That case deals with former representations and therefore construes Rule 1.9(a) (dealing with former clients). It also interprets Rule 1.10(b), which also governs former client relationships. In fact, it only mentions Rule 1.10(a) to say that it "imputes all conflicts of interest to all lawyers in the firm while they are associated with the firm," which is precisely the NCAA's position. *Id.* at 1070.

because he was prohibited from working on outside matters. Opp'n at 17-18 (citing *Barnett v. Clark*, 899 N.E.2d 281, 284 (Ind. 2008)); Robinson Decl., ¶¶22-24.

However, that analysis is again wrong. ***First***, Rule 1.10(a) is not limited to concurrent conflicts of interest in which associated attorneys in a firm were authorized to participate. Indeed, Rule 1.10(a) does not mention "authority" at all. Fegan Scott, and Ms. Robinson, are attempting to engraft a limitation on Rule 1.10(a) that does not exist in the Rule itself. As a result, the entire discussion about what Mr. Sakthivel did or did not have authority to do, and whether he can bind the firm, is off-point.

Rule 1.10(a) also does not limit its applications to engagements that are within the scope of an attorney's employment at the firm with which he is associated. Fegan Scott, and Ms. Robinson, are again trying to limit Rule 1.10(a)'s application using concepts not found in the text of Rule 1.10(a). An intellectual property attorney who represents a criminal defendant on the side does not thereby absolve his firm of responsibility for his actions in that representation simply because he was practicing outside his area.

However, assuming *arguendo* that Rule 1.10(a) applies only to representations within the scope of the various attorneys in the firm's employment, that does not absolve Fegan Scott of responsibility for Mr. Sakthivel's actions under Rule 1.10(a). An agent can take action without the principal's knowledge or consent that is nonetheless within the scope of his employment. In fact, the scope of employment "may include acts that the employer expressly forbids; that violate the employer's rules, orders, or instructions, that the employee commits for self-gratification or self-benefit; that breach a sacred professional duty; or that are egregious, malicious, or criminal." *Cox v. Evansville Police Dept.*, 107 N.E.3d 453, 461 (Ind. 2018); *Javier v. City of Milwaukee*, 670 F.3d 823, 830 (7th Cir. 2012) ("[W]ell established, if somewhat surprising on first encounter, is the

principle that an employee's willful, malicious and even criminal torts may fall within the scope of his or her employment … even though the employer has not authorized the employee to commit crimes or intentional torts.") (citation omitted). Therefore, the fact that Fegan Scott may have had an employee handbook which informed Mr. Sakthivel of his confidentiality obligations and his obligation not to create possible conflicts of interest does not mean his activities were not within the scope of his employment as a document reviewer. Dkt. No. 104-1, ¶¶18-22.

According to his Fegan Scott supervisor, Ms. Fegan, "Mr. Sakthivel was hired to work fully remotely from his home in California on document review." Dkt. No. 104-1 at ¶16. That is what he did – in violation of Rule 1.7 – on behalf of the NCAA. He was a lawyer reviewing and analyzing documents in a lawsuit, which is what he was hired by Fegan Scott and authorized to do for Fegan Scott. *Id.* He was "monitored" by the head of Fegan Scott, including via periodic meetings, feedback from other attorneys at Fegan Scott, and oversight of his document review work. *Id.*, ¶30. He was provided with an Employee Handbook that governed his conduct at Fegan Scott. *Id.*, ¶20. "An employee acts within the scope of employment when performing work assigned by the employer or *engaging in a course of conduct subject to the employer's control*." RESTATEMENT (THIRD) OF AGENCY, §7.07(2) (emphasis added). Therefore, in addition to the fact that Rule 1.10(a) does not assess whether an attorney was or was not acting within the scope of his employment, Fegan Scott's Rule 1.10(a) argument fails.

3.    This case has nothing to do with a "migrating lawyer."

The Opposition repeatedly posits that this case is about a "migrating lawyer" in which Sakthivel "migrated *to* the NCAA's team *away from* Fegan Scott." Opp'n at 5, 19, n.5, & 27. Perhaps this is to create the impression that this case is about a former client representation and therefore governed by Rule 1.9 and Rule 1.10(b). Whatever the reason, this is pure sophistry. Mr. Sakthivel never "migrated … *away from* Fegan Scott." As Fegan Scott acknowledged, Mr.

14

Sakthivel remained a "full time" "staff attorney" employee of Fegan Scott, purportedly under the supervision of the head of the firm, the entire time he was reviewing the NCAA's documents. Dkt. No. 101-1, Ex. A, Casey Decl., at Ex. 4 p.1 & 3. In fact, he remained employed by Fegan Scott until at least April 27, 2022. *Id.* This was weeks after he ceased to be an independent contractor for the NCAA's e-discovery vendor, Proteus. Dkt. No. 101-2 (Biederman Decl.), at ¶ 26.

This case is governed by Rule 1.7 and 1.10(a) because it involves a concurrent conflict of interest, not a former client representation in which an attorney switched firms and now is adverse to his prior firm's client.   This makes the Opposition's extended discussion about prior representations, based on the "substantial relationship" test, [3] and screening procedures to create "fire walls" between a new attorney joining a firm and the firm's current attorneys, irrelevant. *See* Opp'n at 19-26. In particular, its discussion of *Cromley*, 17 F.3d at 1064, deals exclusively with a prior representation, not a concurrent conflict of interest, and applies the now outdated Model Code of Professional Conduct rather than the currently operative Rules of Professional Conduct.

---

[3] In citing to *Analytica, Inc. v. NPD Rsch., Inc.*, 708 F.2d 1263, 1275 (7th Cir. 1983), Fegan Scott relies on authority that holds that whether or not actual confidences were disclosed is not a consideration "where a substantial relationship exists and either an entire firm or an individual attorney himself switches sides and represents a new client against a former client, the presumption that confidential information was passed during the first representation is irrebuttable and the attorney or firm **cannot avoid disqualification**." *Leathermon v. Grandview Memorial Gardens, Inc.*, No. 4:07–cv–137–SEB–WGH, 2010 WL 1381893 at *9 (S.D. Ind., Mar. 31, 2010) (citing *Analytica,* 708 F.2d at 1267) (emphasis added); *see also Emmis Operating Co. v. CBS Radio, Inc.*, 480 F. Supp. 2d 1111, 1118 (S.D. Ind. 2007) ("If the Court finds a substantial relationship, then 'it is unnecessary for the movant to prove that the attorney in question actually received during the course of his former employment confidential information relevant to matters involved in the subsequent representation.'"). Application of the substantial relationship test confirms the existence of a substantial relationship, and the need for disqualification regardless of what confidences Sakthivel did, or did not, share.  *See Leathermon*, 2010 WL 1381893, at *11 (disqualifying counsel and its co-counsel, in the context of a concurrent conflict of interest, and explaining that because the substantial relationship test was satisfied, "[t]hus, the presumption that confidential information was shared between Mr. Eckert and Mr. Mefford and between Mr. Eckert and Mr. Goebel **is irrebuttable**, and 'it is not appropriate for the court to inquire into whether actual confidences were disclosed.'" (Quoting *Analytica,* 708 F.2d at 1267).

*Watkins,* 869 F.3d at 520.[4]

Moreover, its extensive discussion of "screening procedures" that are "'timely employed' in the new law firm," Opp'n at 22, is inapposite since a firm (new or not) can only establish "screening procedures" if the law firm is aware of a possible conflict (which Fegan Scott simultaneously asserts it was not), and if Fegan Scott was the firm that Sakthivel "migrated" to (when Fegan Scott simultaneously asserts Sakthivel "migrated" "away from Fegan Scott."). Opp'n at 5. The Indiana RPC also makes abundantly clear that screening measures apply to "situations where screening of a personally disqualified lawyer **is permitted to remove imputation of a conflict of interest** under Rules 1.10, 1.11, 1.12 or 1.18." *See* RPC 1.0, Comment 8 (emphasis added); see *also* RPC 1.0 (k) and Comment No. 9. Thus, screening does not apply to RPC 1.7 or 1.9. Therefore, Fegan Scott's alleged ethical screening measures have zero impact on the applicable concurrent conflict of interest. Opp'n at 22. None of this discussion makes logical sense; therefore it can be ignored.

### C.   <u>Fegan Scott, not Proteus, is at fault for Sakthivel's moonlighting.</u>

Fegan Scott cannot escape that it bore the responsibility to adequately supervise its full time employee, and it failed to do so. Otherwise, its full time attorney Sakthivel would not been able to so easily "work[] with multiple agencies and recruiters on document review projects" or perform 183.7 hours of legal work for the NCAA in this lawsuit—all while under full time work responsibilities at Fegan Scott, and while under Ms. Fegan's direct supervision. Dkt. No. 101-1 p. 98; Dkt. No. 101-2, Ex. B Biederman Decl., ¶ 27. Fegan Scott's attempt to shift its burden and responsibility to supervise Sakthivel to Proteus fails.

---

[4] The Opposition's citation to Rule 1.10(c) (1) is the same. It discusses what to do "[w]hen a lawyer becomes associated with a firm." Rule 1.10(c). Comment 6, which discusses Rule 1.10(c) underscores this with its discussion of "the screened lawyer's prior representation." Rule 1.10(c), Comment 6.

Fegan Scott admits that Ms. Fegan had direct supervisory authority over Sakthivel. Dkt. No. 104-1, ¶ 5 and p. 15. Fegan Scott also concedes that Sakthivel was a full time employee of the firm. *Id*. at ¶ 17. These admissions bind Fegan Scott, not Proteus, to adhere to Indiana RPC 5.1 (a) and (b). *Id*. at § (a) ("A partner in a law firm, and a lawyer who individually or together with other lawyers possess comparable managerial authority in a law firm, shall make reasonable efforts to ensure that the firm has in effect measures giving reasonable assurance that all lawyers in the firm conform to the Rules of Professional Conduct."); *Id*. at § (b) ("A lawyer having direct supervisory authority over another lawyer shall make reasonable efforts to ensure that the other lawyer conforms to the Rules of Professional Conduct").

Further "given the status of [Sakthivel] as an independent contractor, the general rule is that [Proteus] bore no duty of care to [Sakthivel]." *Till v. Dolgencorp, LLC*, 801 F. App'x 428, 432 (7th Cir. 2020). While the law or the specific terms of a contract can at times charge a principal with a duty to an independent contractor, no law or contract imposes any duty on Proteus to have controlled Sakthivel's moonlighting misconduct and conflict of interest. *Id*. (citing *Marks v. Northern Indiana Public Service Co*., 954 N.E.2d at 952–53). To the contrary, the Independent Contractor Agreement that Sakthivel entered into with Proteus bound Sakthivel to a duty to disclose any actual or potential conflict of interest to Proteus. Dkt. No 101-2 at Ex. B-2. Sakthivel failed that duty when he performed work for the NCAA while a Fegan Scott employee, and also when he failed to disclose his status as a full time attorney working for an employer in general.

### D.      The Opposition also raises several red herrings which lack merit.

First, the Opposition asserts that "[g]iven that the NCAA has never been a client of Fegan Scott, the motion should be denied for lack of standing." Opp'n at 18. This argument makes no sense, and even the case law the Opposition cites does not support it. Even Fegan Scott conceded that Mr. Sakthivel was a "full time" Fegan Scott employee the entire time he worked as a contract

attorney for Proteus, the NCAA's e-discovery vendor. Dkt. No. 101, Ex. A, Casey Decl., at Ex. 4 p.1 & 3. This puts Fegan Scott attorneys squarely on both sides of this lawsuit, with Fegan Scott asserting claims against the NCAA, for whom a Fegan Scott attorney, Sakthivel, was providing legal services. Fegan Scott also does not dispute that Sakthivel "violated Rule 1.7" and his duty of loyalty to the NCAA. Opp'n at 19, n.5. There is simply no question that the NCAA has standing to bring a disqualification motion against Mr. Sakthivel's employer, Fegan Scott, based on the violation of Rule 1.7 that even Fegan Scott concedes occurred.

The case law the Opposition cites is not to the contrary. *Mills v. Hausmann-McNally, S.C.*, 992 F.Supp.2d 885, 894 (S.D. Ind. 2014) concerns a situation where the defendant attempted "to justify a motion to disqualify primarily on the basis of *Plaintiff's* [not Defendant's] interests." Here, nothing of the sort is occurring. The NCAA seeks to disqualify Mr. Sakthivel's employer, Fegan Scott, because Sakthivel, a Fegan Scott attorney, also represented the NCAA, had access to and did review and analyze the NCAA's confidential documents, to the detriment of the NCAA's interests. *Rogers v. Indiana Supreme Court* involved a plaintiff who sought disqualification of opposing counsel even though opposing counsel and anyone connected with opposing counsel had never represented plaintiff. No. 1:16-cv-00364, 2017 WL 894477, *3 (N.D. Ind. March 7, 2017). *In re Sandahl*, 980 F.2d 1118, 1121 (7th Cir. 1992) was "not a case in which a law firm represents adversaries," certainly not concurrently. And *Closure Systems Int'l Inc. v. Novembal USA Inc.*, 2020 WL 472735,*3 (S.D. Ind. May 13, 2020) supports the NCAA, not Fegan Scott, because it underscores that "the interest Rule 1.7 is designed to protect is the client's interest in the loyalty of its counsel."

In short, no case Fegan Scott discusses involves a situation where an attorney unquestionably provided legal services to a client while simultaneously employed by the counsel

of the client's adversary. Certainly, none of them concluded that, in such a situation, the client lacked standing to address that undisputed violation of Rule 1.7.

The second red herring is the Opposition's passing assertion that Rule 1.10(a) somehow could result in Barnes & Thornburg's ("B&T") disqualification. Despite claiming the existence of "precedent" supporting for this contention, Fegan Scott and Robinson provided no legal authority to support their outlandish contention that B&T could somehow be impacted by the misconduct and conflict of interest of Fegan Scott's full time attorney. Dkt. No. 104, p. 6.[5] It is undisputed that Sakthivel was a full time attorney associated with the firm Fegan Scott, not B&T. Sakthivel's status as an attorney associated with the "firm" Fegan Scott unambiguously confines imputation to Fegan Scott as the RPC 1.10 (a) "applies to lawyers who practice in a law firm." *See* RPC 1.10 Comment No. 1.

> ### E.   Any alleged prejudice to Plaintiff is minimal, and outweighed by the prejudice suffered by the NCAA.

Fegan Scott asserts that it should not be disqualified because it would prejudice Plaintiff insofar as Fegan Scott has worked on this matter since May of 2020. Opp'n at 26-27. That argument ignores a number of factors and is ultimately beside the point. First, it ignores that, other than Fegan Scott, Plaintiff and the putative class are still represented by at least five other attorneys from two additional law firms (May Lightfoot, PLLC and RileyCate, LLC). *See* Docket. In fact, without Fegan Scott's attorneys, Plaintiff still has as many counsel who have entered appearances in this matter as the NCAA has. *Id.* There is no evidence from Plaintiff's other counsel that they could not continue forward in this litigation without Fegan Scott.

---

[5] Footnote one of Robinson's declaration again disregards that the Indiana Rules of Professional Conduct govern whether disqualification is warranted, and not the American Bar Association or its 1988 formal opinion—neither of which are binding authority before the Court. *Watkins*, 869 F.3d at 519; Dkt. No. 104-7, p. 11.

Nor is there evidence from Plaintiff himself (or anyone in the putative class) stating that he would be prejudiced if Fegan Scott was disqualified or expressing concern that Plaintiff's five other counsel cannot continue this litigation.

Even more importantly, the Rules of Professional Conduct exist, in large part, to protect clients. The Commentary to Rule 1.7 specifically states that "[l]oyalty and independent judgment are essential elements in the lawyer's relationship to a client." Rule 1.7, Comment 1. Concurrent conflicts of interest threaten those values and so must be prohibited. It is the NCAA who has been prejudiced here because of Fegan Scott and its attorneys. Every decision that Mr. Sakthivel made on behalf of the NCAA while he was concurrently a Fegan Scott attorney is infected by his own conflict and subject to question.

### III.  <u>Conclusion and Prayer for Relief</u>

For the reasons set forth above, and in the NCAA's opening Motion to Disqualify papers (*see* Dkt. Nos. 100 & 101, 101-1 and 101-2), the NCAA respectfully requests that the Court enter an Order disqualifying Fegan Scott LLC from representing Plaintiff and the proposed class members in this lawsuit. Additionally, the NCAA respectfully requests that the Court enter an Order requiring Fegan Scott to pay the attorneys' fees and costs the NCAA incurred in connection with investigating the conflict of interest discussed herein, and in filing this Motion and Reply.

DATED: June 3, 2022                    Respectfully submitted,

                                       */s/ Chisara Ezie-Boncoeur*
                                       Victor D. Vital (Admitted *Pro Hac Vice*)[6]
                                       victor.vital@btlaw.com
                                       V. Chisara Ezie-Boncoeur
                                       cezie@btlaw.com
                                       Brian E. Casey
                                       brian.casey@btlaw.com
                                       Alicia Raines Barrs
                                       Alicia.Rainesbarrs@btlaw.com
                                       Ilana Zelener
                                       Ilana.Zelener@btlaw.com
                                       (Admitted *Pro Hac Vice*)
                                       BARNES & THORNBURG LLP
                                       201 S. Main Street
                                       South Bend, IN  46204
                                       Telephone: 574-233-1171
                                       Facsimile: 574-237-1125
                                       *Attorneys for Defendant the NCAA*


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document

has been filed using this court's ECF system on all counsel of record .

                                       */s/ Chisara Ezie-Boncoeur*
                                       V. Chisara Ezie-Boncoeur

---

[6] Mr. Vital can be contacted at Barnes & Thornburg LLP's Dallas, Texas office.