UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| TROYCE MANASSA, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> NATIONAL COLLEGIATE ATHLETIC ASSOCIATION, <br><br> Defendant. | Case No.: 1:20-cv-03172-RLY-MJD |

**PLAINTIFF'S REPLY MEMORANDUM TO DEFENDANT'S OPPOSITION MOTION TO PLAINTIFF'S MOTION TO COMPEL DISCOVERY**

Now comes Plaintiff, Troyce Manassa, by and through is attorneys, and in support of his Reply to Defendant's Response to Plaintiff's Motion to Compel, states as follows:

On May 19, 2022, Plaintiff, Troyce Manassa, filed his Motion to Compel (Dkt. 98) Defendant to produce all responsive documents related to Plaintiff's discovery requests for Defendant's academic program requirements, including, but not limited to the APP. To date, Plaintiff's specific Requests for Production ("RFPs") applicable to this category of documents are RFPs: 2, 3, 46, 49, and 51. Defendant filed its Opposition to Plaintiff's Motion to Compel on June 2, 2022 ("Def. Opp."). In further support of Plaintiff's Motion and in response to Defendant's Opposition, Plaintiff replies as follows:

1) Plaintiff complied with Local Rule 37.1;

2) Defendant erroneously claims that precedential caselaw is inapplicable to this matter; and

    3) Defendant's boilerplate objections to Plaintiff's discovery requests at issue in this Motion do not satisfy its burden to show "with specificity" the basis for categorical refusal to produce documents.

Based on the reasons and support set forth in Plaintiff's Memorandum filed on May 19, 2022, (Dkt. 98) and Reply herein, Plaintiff respectfully requests that his Motion to Compel be granted.

## I.    Plaintiff Complied with Local Rule 37.1

Local Rule 37.1(b) states:

> (b) Requirements of Motion to Compel. In the event that the discovery dispute is not resolved at the conference, counsel may file a motion to compel or other motion raising the dispute. Any motion raising a discovery dispute must contain a statement setting forth the efforts taken to resolve the dispute, including the date, time, and place of any discovery conference and the names of all participating parties. The court may deny any motion raising a discovery dispute that does not contain such a statement.

As set forth in Section II, pages 7-9 of Plaintiff's Motion to Compel (Dkt. 98), Plaintiff included extensive details regarding the "efforts taken to resolve the dispute, including the date, time, and place of any discovery conference and the names of all participating parties." For example, beginning on page 7 of Plaintiff's Motion (Dkt. 98), Plaintiff provided details regarding the January 19, 2022,[1] meet and confer with Ms. Ezie-Boncoeur; the Plaintiff's January 28, 2022, memorialization of the meet and confer (Dkt. 98-2) as Exhibit A); Defendant's counsel, Brian Casey's letter of March 31, 2022 (Dkt. 98-3); the parties meet and confer meeting on April 8, 2022 (Dkt. 106-1, p. 31); the parties' informal hearing with Magistrate Judge Dinsmore on April 22, 2022, (Dkt. 93) including dispute outline submissions to the Magistrate and all parties (Dkt. 106-1 pp. 35-40); and the parties' additional and final meet and confer meeting on April 26, 2022 (Jung Decl. or Exh. 1).

---

[1] There was a typo in Plaintiff's January 28, 2022, letter to Defendant, (Exhibit A to Plaintiff's Motion (Dkt. 98)), as the meet and confer occurred on January 19, 2022, not January 20, 2022. However, the substantive representations of the meet and confer are accurate.

Given Defendant's claim in its opposition that Plaintiff's specific discovery requests at issue in this motion to compel (i.e., RFPs 2, 3, 46, and 51) were not subject to meet and confer discussions, it is important to provide further context to the parties' meet and confer discussions leading up to the January 28, 2022, meet and confer memorialization letter from Plaintiffs to Defendants and all subsequent discovery dispute discussions. Specifically, in an email on January 24, 2022, from undersigned counsel to Ms. Ezie-Boncoeur, Plaintiff's counsel stated that the parties "have had two meet and confers (on January 12 and 19) to discuss outstanding discovery issues." (Jung Decl. Ex. 1 and Exhibit 2). Moreover, the email stated: "As we raised in both meetings, Plaintiffs' primary concern is the absence of meaningful and substantive responses to Plaintiffs' discovery requests, which were due on December 24, 2021. Contrary to Federal Rule 34 requirements, Defendant provided boilerplate responses and objections; failed to provide a privilege log of withheld documents; and failed to provide a beginning date and ending date when responsive documents and responses would be provided." *Id.* Thus, it is indisputable that the parties' meet and confer meetings throughout January related to all of Defendant's boilerplate objections to the Plaintiff's discovery requests, including, but not limited to, RFPs 2, 3, 46, and 51.

After the parties' meeting on January 19, 2022, which is the subject of the Plaintiff's January 28, 2022, letter to Defendant's counsel, Plaintiff specifically and clearly indicated that Plaintiff agreed to a date limitation from 2010 "subject to the following exception and caveat: historical documents that predate 2010 would be disclosed per Defendant's agreement and Plaintiffs reserve the right to seek additional documents and/or expand the range beyond 2010 should there be documents in the productions or facts and events that are disclosed during the course of the litigation that support supplemental documents and disclosure that extend beyond the date

3

limitation." (Dkt. 98-2 and Jung Decl.). Moreover, in accordance with Plaintiff's agreement to review all of its RFPs for date limitations during the meet and confer, Plaintiff agreed to date range limitations for RFPs 9, 14, 15, 20, 23, 28, 29, and 39. *Id.* Conversely, any RFPs not so limited would necessarily be subject to the historical documents caveat. *Id.* Finally, Plaintiff further provided a modification to RFP 49 to limit the request to "'the APP, its predecessors and components' instead of 'including, but not limited to, the APP,' but without date limitation." *Id.*

Importantly, Defendant's March 31, 2022, letter--the first response back to Plaintiff over two months later--makes it abundantly clear that Defendant's position related to conducting a search for all responsive documents and that it was "not identifying as responsive documents which related to what [Plaintiffs] characterize as predecessors to the APP." (Dkt. 98-3 and Jung Decl.). There was no specific RFP limitation and it was a categorical exclusion by Defendant. *Id.* Accordingly, even the meeting on April 8, 2022, discussed Defendant's categorical position that no predecessor programs would be subject to disclosure. (Jung Decl.). In fact, the Defendant's submission to the Magistrate Judge on April 21, 2022, regarding this discovery dispute also made the categorical objection to producing documents "concerning NCAA academic programs" other than the APP. (*See* Dkt. 106-1, pp. 37-40). Similarly, Plaintiff's submission to the Court on April 21, 2022, included RFPs 3, 46 (a)-(c), 49, and 51 as examples of applicable requests subject to Defendant's objections. (*See* Dkt. 106-1, pp. 34-35). Thus, it is clear that this discovery dispute has always been related to Defendant's repeated categorical objections regarding predecessor academic programs and were concurrently related to all meet and confer discussions to date. Defendant's disingenuous claims that Plaintiff should have engaged in futile and unnecessary discussions with Defendant about specific RFPs (i.e., RFPs 2, 3, 46, 49, and 51) that contained the topics for which it categorically refused to produce responsive documents,

should be summarily rejected. Nevertheless, there is also ample evidence that Plaintiff identified one or more of these additional RFPs as examples of discovery requests that would be implicated in Defendant's categorical objections. Plaintiff has complied with its obligations to meet and confer with Defendant to resolve this matter prior to filing a Motion to Compel. To the extent that Defendant's objection is related to a form over substance objection, relating to the format of its statement in accordance with Local Rule 37.1, Plaintiff hereby attaches a Declaration by undersigned counsel outlining the details of the parties' meet and confer efforts related to this dispute. (Jung Decl., Exh. 1).

## II. Defendant erroneously claims that precedential caselaw is inapplicable to this matter.

Defendant claims that *Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252 (1977) is inapplicable to this case. (Def's Opp. pp. 15-19). Further, Defendant argues, that even if *Vill. of Arlington Heights* is applicable, it weighs against Plaintiff's requested discovery. Defendant is mistaken on both arguments.

Specifically, Defendant erroneously argues that Plaintiff's 42 U.S.C. § 1981 and § 1985 claims are subject to a different analysis than claims brough under the Equal Protection Clause of the Fourteenth Amendment. This is patently incorrect and has no basis in the caselaw cited by Defendant. First, none of the cases cited by Defendant supports its proposition that *Vill. of Arlington Heights* is inapplicable to this case or its facts.

Second, under Equal Protection and §§ 1981 and 1985 cases, the analysis for both involves intentional discrimination. *See e.g., Egonmwan v. Cook Cty. Sheriff's Dep't,* No. 06 C 4764, 2009 U.S. Dist. LEXIS 35296, at *9 (N.D. Ill. Apr. 27, 2009) (finding that intentional race discrimination under the equal protection clause also applies to Section 1981 race discrimination claims) (citing to *Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 403-04 (7th Cir. 2007) (same

5

standards apply to Title VII and Section 1981 discrimination claims); *Davis v. Wisconsin Dep't of Corr.,* 445 F.3d 971, 976 (7th Cir. 2006) (same standards used for equal protection and Title VII actions)).

Next, notwithstanding the valid application of *Vill. of Arlington Heights* factors, Defendant misapprehends the evidentiary role that the *Vill. of Arlington Heights* factors serve in an intentional discrimination case without direct evidence of discrimination. 429 U.S. 252, 267 (1977). Absent overt or direct evidence of discrimination, Plaintiff is entitled to discovery of circumstantial evidence of Defendant's intentional discrimination. *See e.g., City of Joliet v. Mid-City Nat'l Bank of Chi.*, No. 05 C 6746, 2012 WL 2514936, at *29 (N.D. Ill., June 28, 2012) (Parties are entitled to broad discovery on their discrimination claims and defenses). Circumstantial evidence may be established through the *Vill. of Arlington Heights* factors, such as the historical background of the decision is one evidentiary source, particularly if it reveals a series of official actions taken for invidious purposes. 429 U.S. at 267. Thus, in this case for example, Defendant made serial changes to its academic programs throughout the years from metrics involving an individual athlete's performance to metrics aggregating an entire team's individualized measurements; coupled with knowledge of the significant discriminatory impact prior metrics had on individual black-student athletes. This compounded discrimination was particularly significant on HBCUs, given the large individual Black-student athletes attending HBCUs. Moreover, the specific sequence of events leading up to the challenged decision provides circumstantial evidence of the decisionmaker's purpose and knowledge (or willful disregard); and departures from normal procedures, in substance and sequence, also provide circumstantial evidence that improper and discriminatory purposes are at play. *Id.* 429 U.S. at 267 (1977) (internal citations omitted). Under applicable caselaw and the relevant evidentiary

framework in this case, Plaintiff is entitled to discovery of this highly probative evidence of discrimination.

> III. **Defendant's boilerplate objections to Plaintiff's discovery requests at issue in this Motion do not satisfy its burden to show "with specificity" the basis for categorical refusal to produce documents.**

The gravamen of Defendant's position is that there are no predecessor academic requirement programs to the APP. Indeed, Defendant concedes that its academic requirements historically involved individual student-athletes and it was not until the APP was created in 2003 that the metric shifted to evaluation of aggregated team and university data in lieu of the individual student-athlete's data. (Def.'s Opp. p. 10). Arguably, aggregating the data and penalizing teams instead of individual students drifted even further away from Defendant's purported concern over student-athletes academic health and success. Indeed, this is exactly why information related to the predecessor APP programs are highly relevant to the Plaintiff's claims of discrimination and the discovery of which Plaintiff is entitled.

As outlined in Plaintiff's Complaint and prior to any discovery from Defendant, Plaintiff established that HBCU teams are 43 times more likely to receive a postseason ban under the NCAA's APP structure than teams from a Predominantly White Institution (PWI). (Compl. ¶ 176); *see e.g. EEOC v. O & G Spring & Wire Forms Specialty Co.*, 38 F.3d 872, 876 (7th Cir. 1994) (internal citations omitted) (substantial statistical data alone may provide convincing and determinative evidence of intentional discrimination). Only 6.5% of Division I schools are HBCUs (23 out of 350); yet 72% of the 159 teams that have been subject to the Defendant's APP postseason ban penalty since 2010 are from HBCUs. (Compl. ¶174). Importantly, Defendant's various efforts throughout the years are expansive (and discovery of which Plaintiff should be entitled) *because* of Defendant's various changes and actions to address their purported concerns

with individual student athlete's academic success over several decades. At the same time that Defendant was making changes in 1983, for example, to "bolster sagging student-athlete academic performance" (Compl. ¶ 113), with its implementation of Proposition 48, Defendant knew about the significant disparate impact on Black student athletes, including allegations that the change was "patently racist." (Compl. ¶¶ 116-117). In 1997 and 1998, the Defendant made yet another change in its academic requirements and implemented Proposition 16, notwithstanding its acknowledgement of the disproportionate impact Proposition 16 had against Black student athletes. (Compl. ¶¶ 125 -127). Given the backdrop of the Defendant's knowledge that its individualized academic requirements had on Black-student athletes throughout its historical changes over the years, Defendant created the APP and shifted its policies related to academic requirements from an individualized basis to one that is aggregated based on an athletic team (i.e., aggregated individual student-athlete data). Not surprisingly, HBCUs with largely exclusive Black student athlete data subject to team aggregation resulted in being banned from postseason play, at a rate of 73% to 95% of the total teams banned from 2011-2021. (Compl. ¶ 178). The reasons for the NCAA's changes to its academic requirements from serial individual student-athlete requirements to an aggregated team metric, with substantial impact on HBCUs, are highly relevant to the circumstantial evidentiary framework related to intentional discrimination.

 Defendant also argues that Plaintiff's requests are not proportional to the case's needs. In support of its argument against proportionality, Defendant presents a number of cases in the 7th Circuit for limiting the discovery time period to three to five years. (Def.'s Opp. pp. 12-14). However, none of those employment cases directly addressed the question at issue here. The cases cited by Defendant involve Title VII employment discrimination cases involve prima facie

8

case evidence of disparate impact under a burden shifting framework and are inapposite to this case. Plaintiff's intentional discrimination claims and burden of proof in this case mitigate strongly in favor of granting Plaintiff access to relevant evidence of Defendant's discrimination. Specifically, the "various iterations" of the APP, the formula used to develop the APP, and the knowledge of the negative impact on Black student athletes comprise the types of circumstantial evidence of Defendant's intentional discrimination under § 1981. *See* Judge Young's Order Denying in Part and Granting in Part Defendant's Motion to Dismiss (Dkt. 42, pp. 17-18). Unlike the employment discrimination cases cited by Defendant, Plaintiff in this case is not seeking historical predecessor program information for purposes of identifying comparator data. Plaintiff seeks the disputed discovery as circumstantial evidence of Defendant's intentional discrimination: Defendant's series of official actions taken for invidious purposes. *Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252 (1977); *see* discussion *supra* Section III.

Defendant maintained boilerplate objections throughout discovery and categorically refused to produce any documents related to the predecessor academic programs. To the extent Defendant awaited its Opposition to Plaintiff's Motion to Compel to provide details other than boilerplate and categorical refusal to produce responsive documents, Plaintiff is amenable to a substantive conversation regarding Defendant's responsive documents. However, Plaintiff objects to any categorical exclusion of discovery related to the NCAA's academic requirement programs preceding the APP. At a minimum, with respect to each of Defendant's various and serial changes to its academic requirements—whether individualized or team-based--Plaintiff is entitled to obtain discovery related to Defendant's intent, purpose, motive, and knowledge of discriminatory impact of its decisions.

9

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court order Defendant NCAA to produce the documents and information sought by Plaintiff's Requests for Production.

Dated: June 9, 2022

Respectfully submitted,

By: /s/ Je Yon Jung

Je Yon Jung (admitted pro hac vice)
MAY LIGHTFOOT PLLC
3200 Martin Luther King Jr. Ave. S.E.
Third Floor
Washington, DC  20032
Telephone:  (202) 918-1824
Facsimile:  (202) 918-1010
jjung@maylightfootlaw.com

LaRuby May (admitted pro hac vice)
MAY LIGHTFOOT PLLC
3200 Martin Luther King Jr. Ave. S.E.
Third Floor
Washington, DC  20032
Telephone:  (202) 918-1824
Facsimile:  (202) 918-1010
lmay@maylightfootlaw.com

William N. Riley, Bar No.:  14941-49
Russell B. Cate, Bar No.: 27596-29
RILEYCATE, LLC
11 Municipal Drive, Ste. 320
Fishers, IN  46038
Telephone:  (317) 588-2866
Facsimile:  (317) 458-1875
wriley@rileycate.com
rcate@rileycate.com

*Attorneys for Plaintiffs and the Proposed Class*

## CERTIFICATE OF SERVICE

    I hereby certify that on this 9th day of June 2022, a copy of the foregoing was electronically filed in the Court's ECF system to which the following counsel are registered:

    R. Anthony Prather (State Bar No. 6478-49)
    BARNES & THORNBURG LLP
    11 S. Meridian Street
    Indianapolis, IN  46204
    Telephone:  (317) 236-1313
    Facsimile:  (317) 231-7433

    Victor D. Vital (admitted pro hac vice)
    BARNES & THORNBURG LLP
    2121 N. Pearl Street, Ste. 700
    Dallas, TX  75201
    Telephone:  (214) 258-4200
    Facsimile:  (214) 258-4199

    V. Chisara Ezie-Boncoeur
    BARNES & THORNBURG LLP
    201 S. Main Street, Ste. 400
    South Bend, IN  46601
    Telephone:  (574) 237-1273
    Facsimile:  (574) 237-1125

    *Attorneys for Defendant*

    By:  /s/ Je Yon Jung
    Je Yon Jung