**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| TROYCE MANASSA and<br>AUSTIN DASENT<br><br>        Plaintiffs,<br><br>        v.<br><br>NATIONAL COLLEGIATE ATHLETIC<br>ASSOCIATION,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)  No. 1:20-cv-03172-RLY-MJD<br>)<br>)<br>)<br>)<br>)<br>) |

**[PROPOSED] STIPULATION AND ORDER REGARDING DISCOVERY OF**
**ELECTRONICALLY STORED INFORMATION ("ESI") AND HARD COPY**
**DOCUMENTS**

## I.    GENERAL GUIDELINES

1.    **General.** The purpose of this Order is to facilitate the exchange of ESI and hard copy documents in accordance with the Federal Rules.

2.    **Scope.** Except as specifically set forth herein, this Order does not: (a) alter or affect the applicability of the Federal Rules of Civil Procedure ("Federal Rules") or any Local Rules of the Southern District of Indiana ("Local Rules"), as applicable; (b) address, limit, determine, or affect the relevance, discoverability, or admissibility as evidence of any document or ESI, regardless of whether the document or ESI is to be preserved, is preserved, or is produced; or (c) alter or affect the objections to discovery available under the Federal Rules.

3.    **Limitations and Non-Waiver.** By stipulating to this Order and agreeing to produce documents, generally, in a particular form or forms, no party waives any objections to producing any particular document or category of documents on any grounds whatsoever.

1

4.      **Variations.** If any Party[1] identifies a circumstance where application of this Order is not reasonably feasible, the Party will disclose to the Party requesting the ESI or hard copy documents ("Requesting Party") the reason(s) for, and circumstances surrounding, the need to vary from this Order, and the Parties will meet and confer in an effort to reach agreement on an appropriate deviation from this Order. In the event the Parties cannot reach agreement, the matter may be submitted to the Court for determination.

5.      **Cooperation.** The Parties are aware of the importance the Court places on cooperation, and commit to cooperate in good faith throughout the matter consistent with their obligations under the Federal Rules, in particular Rule 1.

## II.      IDENTIFICATION AND COLLECTION OF DOCUMENTS AND ESI

6.      **Custodians and Sources.** Within 14 days of the date of this order, the Parties will meet and confer and exchange information regarding the following: (a) the identity and role (including dates of employment) of custodians from which documents and ESI may be or has been obtained for production; (b) the identity, scope, and format of custodial and non-custodial sources from which documents and ESI may be obtained for production; (c) the identity and scope of sources of documents and ESI that may be produced without the use of technology assisted review or search terms; (d) applicable timeframe(s) for collection and review of documents and ESI; and (e) prioritization of categories of documents and ESI that may be collected, reviewed, and produced, if applicable. Where applicable, sources of Documents, on which the parties will meet and confer, include, but are not limited to, computers, laptops, local hard drives, file servers, databases, SANs, NASs, email servers, web servers, network home or

---

[1] "Party" is defined as Plaintiffs and Defendant.  The Party requesting the ESI or hard copy documents is the "Requesting Party."  The Party or Non-Party producing the requested materials is the "Producing Party."

personal file shares, any shared drives, document management systems (DMS), record

management systems (RMS), content management systems (CMS),

departmental/project/collaborative/shared storage spaces, removable storage, on-line data storage

(e.g., Dropbox or Google Drive), messaging applications and programs, phones, tablets, social

media, and physical or hard copy files and documents.

7.      **Known Responsive ESI Must Be Produced.** Reasonably accessible documents

or ESI known to be responsive to a discovery request  shall be produced without regard to

whether it was responsive to any search methodology described herein or developed in

accordance with this Order.  The parties understand their obligation to diligently investigate and

search for responsive ESI independent of this Protocol.  Pursuant to Federal Rule of Civil

Procedure 34(b)(2)(C), an objection must state whether any responsive materials are being

withheld on the basis of that objection. An objection to part of a request must specify the part

and permit inspection of the rest. If a Producing Party is aware of inaccessible data that is likely

to contain unique, discoverable ESI, it will identify the source from which it claims the data is

not reasonably accessible.

8.      **Search Methodology.** If the Producing Party is filtering documents to eliminate

collected documents from review, the Parties will meet and confer about search and filtering

methodologies and parameters and will use their reasonable best efforts to reach agreement. That

discussion will also include methods for search validation and testing. The Producing Party will

propose a list of search terms and/or date filters it proposes to use to eliminate collected

documents for review, and the Receiving Party may propose additional parameters. The Parties

shall participate in a cooperative approach and agree to meet and confer regarding the search

protocol and to raise any disputes regarding the search protocol and/or search terms for resolution by the Court.

9.      **Use of Predictive Coding or Other Search Technologies.** If a party intends to use predictive coding (including technology-assisted review or "TAR"[2]) in connection with its document collection or review for production, the party will disclose such intent to the Receiving Party in connection with the discussion about Search Methodology and the Parties will meet and confer regarding an appropriate protocol.

10.     **Unsearchable Documents.** Documents which are reasonably believed to be responsive to discovery requests and not subject to objections and for which text-based search technologies are fundamentally ineffective must be reviewed without culling by search terms, predictive coding, or other technologies that rely primarily on text.

11.     **Continuing Obligations.** The Parties recognize that discovery shall be an iterative and cooperative process. The Parties will continue to meet and confer regarding any issues as necessary and appropriate. This Order does not address or resolve any objections to the scope of the Parties' respective discovery requests.

12.     **Reservation of Rights.** Upon reviewing any production made by another Party in this action or conducting other investigation and discovery, any Receiving Party may request that documents from additional non-custodial data sources and custodians be produced, or request to reassess or confer regarding the parameters used for document collection, search, review and validation process, and any Producing Party may object to such requests.

---

[2] "Technology-assisted review" is defined as "A process for prioritizing or coding a collection of electronically stored information using a computerized system that harnesses human judgments of subject-matter experts on a smaller set of documents and then extrapolates those judgments to the remaining documents in the collection." *The Sedona Conference Glossary: eDiscovery and Digital Information Management, Fifth Edition*, 21 SEDONA CONFERENCE J. 263 (2020).

### III.   FORM OF PRODUCTIONS

13.     **ESI File Types and Formats.** All unredacted spreadsheet (e.g., Microsoft Excel,

Corel Quattro, etc.) files; files with all media files, such as audio and video files (e.g., .wav,

.mpeg, and .avi) files, shall be produced as native files with TIFF placeholder images. The

parties agree to make reasonable best efforts to produce documents containing tracked changes

and/or comments as native files with TIFF placeholder images. A party may seek other

document types in native format on a showing of good cause. Emails and all other documents

shall be produced as TIFFs. If documents cannot be produced in a readable format in TIFF, the

Producing Party will produce them in a reasonably useable format.

14.     **Metadata.** The metadata fields detailed in Appendix A should be produced for

each document to the extent that such information is available at the time of collection and

processing, except that if a field contains privileged information, attorney work product, or

information otherwise protected from disclosure, that information may be redacted and any

redacted information must be noted in a corresponding privilege/redaction log, as described in

Section V below. The producing party must populate, where possible, the (a) BegBates,

(b) EndBates, (c) BegAttach, (d) EndAttach, (e) Custodian, (f) NativeFileLink, (g) TextPath,

(h) Redaction status, and (i) Confidentiality designation fields. These fields should be populated

for all produced ESI, as well as paper Documents converted to electronic form, regardless of

whether the fields can be populated pursuant to an automated process. Other than paper

Documents converted to electronic form, ESI shall be processed in a manner that preserves the

source native file and relevant metadata without modification, including their existing time and

date metadata consistent with the requirements provided in this Order.

15.     **Native Files.** Native files shall be given a file name consisting of a unique Bates number and, if applicable, a confidentiality designation; for example, "NCAA00000002_Confidential." For each native file produced for which a TIFF rendering of the document is not produced, the production will include a *.tiff image slipsheet indicating the production number of the native file and the confidentiality designation, and stating "File Provided Natively." To the extent that it is available, the original document text shall be provided in a document-level UTF-8 text file with a text path provided in the *.dat file; otherwise the text contained on the slipsheet language shall be provided in the *.txt file with the text path provided in the *.dat file. Native files will be produced in a separate folder on the production media.

16.     **Production Format for Hard Copy Documents.** Documents that exist in hardcopy will be scanned to *.tiff image format and produced with a load file, single page TIFF images in the same format as electronic files, except the metadata fields provided will be limited to in accordance with the specifications set forth on <u>Appendix A</u>. Also, instead of extracted text, OCR text will be provided, if reasonably available, for scanned hard copy documents. In scanning paper documents, the parties will take reasonable efforts to identify and logically unitize[3] obviously distinct documents. If OCR is not reasonably available, the parties shall meet and confer about the method of production.  If documents were scanned previous to this case, however, and are not logically unitized, they may be produced in the format in which they were maintained. In the case of an organized compilation of separate documents (for example, a

---

[3] Logical Unitization is the process of human review of each individual page in an image collection using logical cues to determine pages that belong together as documents. Such cues can be consecutive page numbering, staples, clips, binders, report titles, similar headers and footers, and other logical indicators.

binder containing several separate documents behind numbered tabs), the document behind each tab should be scanned separately.  Where a Document or group of Documents has an identification spine, "post-it note," or any other label, the information on the label shall be scanned and, to the extent not privileged, produced.

17.     **TIFF Images.** Documents produced with TIFF images shall be named according to the Bates number of the corresponding TIFF image. Each *.tiff file should be assigned a unique name matching the Bates number of the corresponding image. All TIFF images should be provided in single-page, Group IV TIFF with a resolution of 300 DPI. Bates numbers and confidentiality designations should be electronically branded on each produced *.tiff image. These *.tiff images should be provided in a separate folder and the number of TIFF files per folder should be limited to 1,000 files.  Original document orientation as displayed in the native file should be maintained in the TIFF image (i.e., portrait to portrait and landscape to landscape).

18.     **Databases, Structured, Aggregated, or Application Data.** The Parties will produce documents collected from databases or other structured databases in a reasonably useable format. The Parties will meet and confer to address the production and production format of any responsive data contained in a database or other structured or aggregated data source if the Producing Party cannot produce the data in a reasonably useable format.

19.     **Non-English Documents.** To the extent that documents are produced that contain languages other than English, in whole or in part, the Producing Party shall produce each such document in the original language or languages in which it was written when collected. The Producing Party has no obligation to create a translation of the documents or any portion thereof for the purposes of production in this litigation, but if one already exists, it must also be produced along with the original, with a notation identifying it as such.

20.   **Mobile and Handheld Device Documents and Data.** If non-duplicative responsive data contained on a mobile or handheld device that can reasonably be extracted is identified throughout the discovery process, that data shall be produced in accordance with this Order. To the extent that non-duplicative, responsive data identified on a mobile or handheld cannot be produced in a reasonably useable format, the Parties will meet and confer to address the identification, production, and production format of any non-duplicative, responsive documents and data contained on any mobile or handheld device.

21.   **Compressed and Encrypted Files.** Compressed file types (i.e., .CAB, .GZ, .TAR .Z, .ZIP) shall be decompressed in a reiterative manner to ensure that a compressed files are decompressed into the lowest possible compression resulting in individual files. The Producing Party will take reasonable steps, prior to production, to unencrypt any discoverable electronically stored information that exists in encrypted format (e.g., password-protected) and that can be reasonably unencrypted.

22.   **Printing Specifications for Excel PowerPoint and Adobe PDF Files**. For Excel PowerPoint and Adobe PDF type files that are printed to TIFF for redaction and redacted, the following printing options shall be enabled:

| **Excel Print to TIFF Options** |
| --- |
| • Unhide columns and rows |
| • Unhide worksheets |
| • Autofit columns and rows, settings to be over by columns first and, then down by rows |
| • Wrap text |
| • Print gridlines |
| • Do not apply Autofilter |
| • Display headings |
| • Display comments |
| • Header and Footer filename field handling: Show field code |

8

| **PowerPoint Print to TIFF Options** |
| --- |
| • Print notes pages<br>• Print hidden slides<br>• Print comments |
| **Adobe Print to TIFF Options** |
| • Print all sticky notes<br>• Print all comments |

23. **De-NISTing.** The producing party shall take reasonable efforts to de-NIST ESI productions using the industry standard list of such files maintained in the National Software Reference Library by the National Institute of Standards & Technology. De-NISTED files need not be produced.

24. **Deduplication.** ESI produced by the Parties may be globally de-duplicated across all collected custodial and non-custodial sources using MD5 hash or SHA-1 hash. Documents are considered exact duplicates if a document family or stand-alone file has a matching MD5 or SHA-1 hash value as compared against the same document type (i.e., family or stand-alone file). Near-duplicate documents shall not be removed. De-duplication shall not break apart families and shall be performed at a family level. A document and all other documents in its attachment range, emails with attachments and files with extracted embedded OLE documents all constitute family groups.  If any member of a family group is produced, all members of that group must be also be produced (or logged for privilege) and no such member shall be withheld from production as a duplicate. The names of all custodians and non-custodial sources who were in possession of a document prior to deduplication will be populated in the ALL CUSTODIANS metadata field. The original folder paths of a document prior to deduplication will be populated in the ALL FOLDER PATHS metadata field. Should the ALL CUSTODIANS or ALL FOLDER PATHS metadata fields produced become outdated due to rolling productions, an overlay file

providing all the custodians and folder paths for the affected documents will be produced prior to substantial completion of the document production. The Producing Party agrees that the presence of a custodian's name contained in the "AllCustodian" field in the metadata for a particular document is evidence that the custodian possessed that document in his/her custodial file.

25. **Email Threading.** The parties will not produce email as threads and will instead produce each email within a thread.

26. **Embedded Files.** To the extent reasonably possible, embedded files are to be produced as family groups. Embedded files should be assigned Bates numbers that directly follow the Bates numbers on the documents within which they are embedded.

27. **Collaboration Tools**. The parties agree to produce the latest in time version of documents stored on a collaboration or document management tool. To the extent the receiving party desires to receive previous versions of documents, if any, the receiving party will identify the document(s) with specificity and the parties will engage in a meet and confer process relating to the same.

28. **Dynamic Fields.** If reasonably feasible, documents with dynamic fields for file names, dates, and times will be processed to show the field code (e.g., "[FILENAME]"), rather than the values for such fields existing at the time the file is processed.

29. **Parent-Child Relationships.** For email families, the parent-child relationships (e.g., the association between an attachment and its parent email, or a spreadsheet embedded within a word processing document) should be preserved. All nonprivileged email attachments should be, where reasonably possible, consecutively produced with the parent email record. For example, if a party is producing an email with embedded attachments or hyperlinked documents,

the attachments or hyperlinked documents must be processed and assigned Bates numbers in sequential order, following consecutively behind the parent email.

30.    **Bates Numbering.** Bates numbering should be consistent across the production, contain no special characters, and be numerically sequential within a given document. The producing party will identify the Bates number range of each production in a cover letter or production log accompanying the production. If a producing party skips a Bates number or set of Bates numbers in a production, the producing party will identify and note the gap in the cover letter or production log accompanying the production.  All attachments to documents will be assigned Bates numbers that directly follow the Bates numbers on the documents to which they were attached. In addition, wherever possible, each *.tiff image will have its assigned Bates number electronically "burned" onto the image.  If the Receiving Party believes that a Bates number obscures the content of a Document, then the Receiving Party may request that the Document be produced with the Bates number in a different position.

31.    **Excluded File Types.** Absent a particularized need and good cause showing, the Parties agree that there is no need to collect ESI from the following sources:

    a.    Deleted, slack, fragmented, or other data only accessible by forensics;

    b.    Random access memory (RAM), temporary files, or other data difficult to preserve without disabling the operating system;

    c.    On-line access data such as temporary internet files, history, cache, cookies, and the like;

    d.    Back-up data that is duplicative of data that can be collected elsewhere; and

    e.    Server, system, or network logs.

32. **Redactions.** No redactions for relevance may be made within a produced document or ESI item. Any redactions shall be clearly indicated on the face of the document, with each redacted portion of the document stating that it has been redacted and the basis for the redaction, and a metadata field shall indicate that the document contains redactions and the basis for the redaction (e.g., "Privileged"). All redactions must be logged in a Privilege/Redaction Log, as described in Section V below. Where a responsive family of documents contains both redacted and non-redacted content, or both produced and withheld documents, the Parties shall produce the remainder of the non-redacted portions of the family of documents as TIFFs rather than natives, except for Excel spreadsheets which may be redacted in native form, and with the text/OCR corresponding to the non-redacted portions. Documents that sometimes do not render in a readable format to TIFF, such as Excel spreadsheets, may be redacted in native form as long as the Producing Party keeps a pristine, unredacted copy of the native file and identifies the natively redacted documents to the receiving party in the production cover letter or by way of a native redaction field. A document's status as redacted does not relieve the producing party from providing all of the metadata required herein. If modification of a native file is required for redaction purposes, metadata information associated with that file should remain unchanged, unless it also requires redaction.

33. **Other Documents.** All TIFF images of redacted native files shall be processed to show and reveal all hidden text, including track changes, comments, and hidden content in Word documents and speaker notes and hidden content in PowerPoint files. Where reasonably possible, any occurrences of date/time auto field items, including in headers and footers, will be removed and replaced with the term AUTODATE to prevent the current date from being printed. Email header information (e.g. date, subject line, etc.) should not be redacted unless it is independently

privileged. The production of a document in a redacted form does not affect the Parties' obligation to timely assert and substantiate the assertion of privilege over the content in a privilege/redaction log.

34.   **Color.** The requesting party may request the reproduction of documents in color TIFF format, JPEG format, or in native format where color facilitates understanding of the document.

35.   **Load File Formats.** ESI will be produced with a standard Concordance (*.dat) load file format and an image load file that is in .OPT format. The Concordance (*.dat) load file shall contain a relative path to the corresponding Native file, and be provided with UTF-8 encoding.

The data load file should use standard Concordance delimiters:

- Comma - ¶ (ASCII 182);
- Quote - þ (ASCII 254);
- Newline - ® (ASCII174).
- The first line of the .DAT file should contain the field names arranged in the same order as the data is arranged in subsequent lines.
- All date fields should be produced in mm/dd/yyyy format, if possible. Date fields may be combined date/time fields
- All produced attachments should sequentially follow the parent Document/email.

The image load file must be in standard Option (.OPT) format and must reference each TIFF file in the corresponding production, and the total number of TIFF files referenced in the load file must match the total number of image files in the production. The total number of Documents referenced in a production's data load file should match the total number of

designated Document breaks in the corresponding image load file for that production. In any deliverable volume, documents should be organized in such a way that each folder in the volume contains 1000 files (each TIFF page or native file is a single file) as one file per folder.

- Every image in the delivery volume should be cross-referenced in the image load file.
- The imageID key should be named the same as the Bates number of the page.
- Load files should not span across media (e.g., CDs, DVDs, hard drives, etc.), i.e., a separate volume should be created for each piece of media delivered.

36.    **Extracted Text and OCR.** Each document, whether produced in Native or in TIFF format, and whether originally existing in electronic or in hard copy, shall be produced with extracted text or OCR (subject to the other provisions of this order), as described herein.

a.    Extracted Text (Emails, Unredacted Native ESI, and Natively Redacted Spreadsheets). All email, un-redacted ESI, and redacted spreadsheets produced as native files, should be provided with complete document-level extracted text files. Extracted text shall include all comments, track changes, and hidden content in Word documents and speaker's notes and hidden content in PowerPoint files. Text extracted from emails shall include all header information that would be visible if the email was viewed in Outlook including: (1) the individuals to whom the communication was directed ("To"), (2) the author of the email communication ("From"), (3) who was copied and blind copied on such email ("CC" and "BCC"), (4) the subject line of the email ("RE" or "Subject"), (5) the date and time of the email, and (6) the names of any attachments.

   b. <u>OCR (Redacted Native ESI, Hard Copy Documents)</u>. In the event a

document, other than natively redacted spreadsheets, e.g., Excel files, contains text that is to be

redacted, Optical Character Recognition ("OCR") text files should be provided for any un-

redacted portions of the documents. Document-level OCR text files shall also be provided for all

hard copy scanned documents subject to the caveat in paragraph 17, above. OCR software must

be set to the highest quality setting for any previously unscanned paper documents, and

reasonable quality control measures shall be used to ensure that the integrity of scanned copies of

previously unscanned paper documents are preserved for OCR (e.g., pages are not angled or

skewed, text is not blurred or obscured, etc.). Documents containing foreign language text must

be OCR'd using the appropriate settings for that language, (e.g., OCR of German documents

must use settings that properly capture umlauts and OCR of Asian language documents must

properly capture the relevant Asian characters). Settings such as "auto-deskewing" and "auto-

rotation" must be turned on during the OCR process to maximize text recognition on any given

page.

   c. <u>Format of Extracted Text and OCR.</u> The extracted full text and/or OCR

text for all deliverables should be in separate document-level, UTF-8 TXT files provided in a

separate folder. The number of TXT files per folder should be limited to 1,000 files.

  37. **Exception Files.** The Parties will use reasonable efforts and standard industry

practices to address documents that present imaging or form production problems (including

encrypted and/or protected files identified during the processing of ESI where the document

appears to contain relevant content).

## IV.   PROCESSING OF NON-PARTY DOCUMENTS

38.    This ESI Protocol shall apply to any non-Party that produces documents in this action.

39.    A Party that issues a non-Party subpoena ("Issuing Party") must include a copy of this Order with the subpoena and request that the non-Party produce documents in accordance with the specifications set forth herein.

40.    The Issuing Party is responsible for producing to all other Parties any document(s) obtained pursuant to a subpoena to any non-Party in the form in which the document(s) was/were produced by the non-Party. To the extent practical given the data volume and load time, productions by a non-Party should be produced by the Issuing Party to all other Parties within fourteen (14) calendar days of the non-Party's production to the Issuing Party.

41.    For the avoidance of doubt, nothing in this Order is intended to or should be interpreted as narrowing, expanding, or otherwise affecting the rights of the Parties or non-Parties to object to a subpoena.

## V.   PRIVILEGE/REDACTION LOGS

42.    The Parties recognize that some documents may be redacted or withheld on the grounds of attorney-client privilege, work-product doctrine, or other similar protection (collectively, "privilege"). Absent further agreement by the parties, the Parties agree to produce a privilege/redaction log within 30 days of the first production, to the extent any documents were withheld/redacted on privilege grounds, and on a rolling basis 30 days after each production thereafter.

43.    The rolling privilege/redaction logs from the Producing Party shall be cumulative and in a searchable/sortable Excel format. For each responsive document withheld or redacted

because of privilege, the Parties' rolling privilege/ redaction logs shall provide the information required by Fed. R. Civ. P. 26, including the following non-exhaustive information:

      a.     Custodian and/or source of the document (the name of the person(s) or non-custodial source from which the document was collected);

      b.     Date of the document if available in the metadata or on the face of the document;

      c.     Document Type (file extension or msg or similar indication of file type for email);

      d.     Document Title (documents), so long as the disclosure would not reveal information itself privileged or protected; if the disclosure would reveal information itself privileged or protected, then the field shall indicate "Privileged;"

      e.     Subject Line (email), so long as the disclosure would not reveal information itself privileged or protected; if the disclosure would reveal information itself privileged or protected, then the field shall indicate "Privileged;"

      f.     For documents produced, but redacted on the ground of privilege, the starting and end Bates number and for other documents not produced, a numerical identifier;

      g.     Author(s);

      h.     All recipient(s), CC(s), BCC(s) (for e-mail and hard-copy communication such as letters and internal memoranda); and

      i.     General description of the nature (e.g., letter, memorandum, handwritten notes), including any person identified is an attorney or an employee of any Defendants' or Plaintiff's legal department or outside counsel firm,[4] and subject matter of the document

---

[4] Names of counsel or counsel's staff shall be designated with an asterisk.

sufficient to allow the receiving party to assess the claimed privilege and/or to allow the Court to rule upon the applicability of the claimed protection.

44.     If, due to the number of privileged documents involved, creating a privilege/redaction log with the information noted above would create an undue burden, the parties will meet in good faith and discuss whether a categorical log or other method may be appropriate.

45.     The parties stipulate that their respective privilege logs do not need to list privileged communications sent to or received from in-house or outside counsel regarding this above-captioned litigation, i.e., dated December 10, 2020 or later, and which do not include third parties.

46.     The inadvertent or mistaken disclosure of any material in this action is not a waiver of the attorney-client privilege, work product doctrine or any other asserted privilege in any other federal or state proceeding, pursuant to Federal Rule of Evidence 502(d).

47.     If any disputes arise concerning any privilege/redaction log, the Parties shall meet and confer to try to reach a mutually agreeable solution.

## VI.     MISCELLANEOUS PROVISIONS

48.     **Document Storage.** During the pendency of this litigation, the Parties shall preserve the originals of all hard copy (to the extent it is available) and ESI documents produced to the opposing parties, and preserve the original native format version of any ESI produced in nonnative format. Each party reserves the right to request to inspect such documents of the opposing party or parties. If such request to inspect is denied, the party may seek relief from the Court.  If a Party contends this provision is unduly burdensome or not proportional, the parties

shall meet-and-confer in good faith and present the Court with any disputed issues requiring resolution.

49.     **Preservation.** The Parties shall have a continuing obligation pursuant to Fed. R. Civ. P. 26 to identify and preserve custodial and non-custodial data sources that may contain information that is relevant to the claims and defenses in this litigation.

50.     **Third Party Data.** The Parties will meet and confer before serving any subpoenas in this matter on commercial e-mail providers, such as Google™ or Yahoo™, or any social media companies such as Facebook™ or Twitter™.

51.     **Effect of Order.** The Parties' agreement to this Order is without prejudice to the right of any Party to seek an order from the Court to rescind or amend this Order for good cause shown. Nothing in this Order abridges the rights of any person to seek judicial review or to pursue other appropriate judicial action with respect to any discovery ruling made by the Court in this matter.

52.     **Good Faith Compliance and Conferral Obligation.** The Parties will make good faith efforts to comply with and resolve any differences concerning compliance with this Order. No Party may seek relief from the Court concerning compliance with this Order unless it has first conferred with the other Parties.

53.     **Encryption.** To maximize the security of information in transit, any media or file sharing electronic document repository on which documents are produced must be encrypted. Production deliverables provided via File Transfer Protocol ("FTP") shall be made available on a secured FTP connection. In such cases, the Parties shall transmit the encryption key or password to a requesting Party, under separate cover, contemporaneously with sending the encrypted media, or correspondence indicating the availability of the encrypted FTP deliverables.

54.     **Modifications.** This Order may be modified by a stipulation of the Parties or by the Court for good cause shown.

## VII.   ESI LIAISONS

55.     To promote transparency, communications, and cooperation between the Parties, the Parties shall designate e-discovery liaisons for purposes of meeting and conferring on ESI topics. As proposed by the Parties, the ESI liaison for Plaintiffs shall be Jessica Meeder of Fegan Scott, or her designee, and the ESI liaison for the NCAA shall be Chisara Ezie-Boncoeur at Barnes & Thornburg LLP, or her designees.

**IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.**

DATED:  December 1, 2021 _____

_____
Attorneys for Plaintiffs

DATED: December  13, 2021 _____

_____
Attorneys for Defendant the
National Collegiate Athletic Association

## Appendix A

## Fields to Exchange (where reasonably available)

| FIELD NAME | FIELD DESCRIPTION | APPLICABLE FILE TYPE(S) |
|---|---|---|
| BEGBATES | Beginning production number for a given file/document | Email, E-Doc and Other[5] |
| ENDBATES | Ending production number for a given file/document | Email, E-Doc and Other |
| BEGATTACH | Production number of first page of parent | Email, E-Doc and Other |
| ENDATTACH | Production number of last page of last attachment | Email, E-Doc and Other |
| CUSTODIAN | If the Producing Party's vendor maintains separate Custodian and Duplicate Custodian fields, this field will be populated with the person, shared file or other source from whom the original file was collected | Email, E-Doc and Other |
| All CUSTODIAN | If the Producing Party's vendor maintains separate Custodian and Duplicate Custodian fields, this field will be populated with the name of other custodians the Producing Party agreed to produce who had the file but where the file was eliminated through deduplication. If the Producing Party's vendor does not maintain separate Custodian and Duplicate Custodian fields, this field will be populated with the names of all custodians the Producing Party agreed to produce who had the file | Email and E-Doc |
| FILEEXT | File extension | Email and E-Doc |
| HASH | MD5 Hash Value | E-mail and E-Doc |
| SUBJECT | E-mail subject | E-mail |
| DOCTITLE | Title field for documents | E-doc |
| FROM | Sender | E-mail |
| TO | Recipient | E-mail |
| CC | Copyee | E-mail |
| BCC | Blind Copyee | E-mail |

---

[5] "Other" is defined as documents maintained in image file format or that were scanned from hard copy.

47918490.2

| FIELD NAME | FIELD DESCRIPTION | APPLICABLE FILE TYPE(S) |
|---|---|---|
| DATESENT | Date Sent & Time (MM/DD/YYYY HH:MM) | E-mail |
| DATERECEIVED | Date Received & Time (MM/DD/YYYY HH:MM) | E-mail |
| MESSAGE ID | Message ID field | E-mail |
| EMAIL CONVERSATION INDEX | Field identifies e-mails within the same thread | E-mail |
| AUTHOR | Author | E-Doc |
| DATELASTMOD | Date modified & Time (MM/DD/YYYY HH:MM) | E-Doc |
| DATECREATED | Date created & Time (MM/DD/YYYY HH:MM) | E-Doc |
| DATELASTPRINTED | Date last printed & Time (MM/DD/YYY HH:MM) | E-Doc |
| FILENAME | Original file name | E-Doc |
| PAGE COUNT | Number of pages in document | E-mail and E-doc |
| ATTACHMENT COUNT | Number of attachments to, or documents embedded in, an email or edoc | E-mail and E-doc |
| ATTACHMENT TITLE | Title of all attachments | |
| APPLICATION | Type of application used to generate the document | E-mail and E-doc |
| DOCUMENT CATEGORY | The category of document (Email, E-doc) | E-mail and E-doc |
| FILE SIZE | The category of document (Email, E-doc) | E-mail and E-doc |
| ORIGINAL FOLDER PATH | The folder path from which the document was collected if it is feasible to collect for a particular set of data | E-mail and E-doc |
| ALL FOLDER PATHS | The locations where copies of the item were located at the time of collection | E-mail and E-doc |
| DOC EXTENSION | The file extension of the document | E-mail and E-doc |
| REDACTED | Identifies whether the document is redacted | E-mail, E-doc and Other |
| NATIVEFILE | Path to native file as produced for Excel spreadsheets and any other native files produced | Native |
| TEXTPATH | Path to OCR or extracted text file | E-mail, E-Doc and Other[6] |

[6] A Producing Party may not OCR documents originally maintained in hard copy or in imaged file format if the expense is not justified and may produce them as they are kept in the ordinary course

| FIELD NAME | FIELD DESCRIPTION | APPLICABLE FILE TYPE(S) |
|---|---|---|
| TIMEZONE | The time zone in which the documents were processed | E-mail and E-Doc |
| CONFIDENTIALITY LEVEL | Level of confidentiality assigned pursuant to the Protective Order entered | E-mail, E-Doc and Other |
| PRODUCING PARTY | The name of the party producing the documents | E-mail, E-Doc and Other |
| LAST MODIFIED BY | Internal file property: the last person who modified the document | E-Doc |
| HASHIDDENTEXT | Identification of hidden fields in the documents | E-Doc |
| HASHIDDENSLIDES | Identification of hidden fields in the documents | E-Doc |
| HASSPEAKERNOTES | Identification of hidden fields in the documents | E-Doc |
| HASHIDDENROWS | Identification of hidden fields in the documents | E-Doc |
| HASHIDDENCOLUMNS | Identification of hidden fields in the documents | E-Doc |
| HASHIDDENWORKSHEETS | Identification of hidden fields in the documents | E-Doc |

---

of business. In that circumstance, the Producing Party will identify the Bates numbers of the documents that have not had OCR applied and for which extracted text is not available in the production cover letter.