UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| TROYCE MANASSA and J'TA FREEMAN, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>NATIONAL COLLEGIATE ATHLETIC ASSOCIATION,<br><br>Defendant. | Case No.: 1:20-cv-03172-RLY-MJD |

**PLAINTIFF'S MOTION FOR JUDICIAL NOTICE OF EXHIBITS FILED IN SUPPORT OF HIS MOTION FOR CLASS CERTIFICATION**

**I.    INTRODUCTION**

This is a case involving thousands of student-athletes' civil rights. Plaintiff claims that the NCAA discriminated against Black student-athletes at historically black colleges and universities ("HBCUs") on the basis of race, and is seeking certification of a Liability Class and an Injunctive Relief Class in connection with his Section 1981 and Section 1985(3) claims as set forth in his Memorandum in Support of Plaintiff's Motion for Class Certification. ("Class Br."), at Sec. II. Plaintiff's brief describes in detail how he intends to prove his case at trial on a class-wide basis, including a list of documents and facts shared by the classes to prove his claims.

Among these are documents and facts that Plaintiff, pursuant to Fed. R. Evid. 201, requests that the Court take judicial notice of. These documents include two Presidential Executive Orders and a pamphlet published by the Office of Civil Rights with facts on HBCU background and history; two documents published by the National Center for Educational Statistics with HBCU-related statistics; and a report summarizing a briefing before the U.S. Commission on Civil Rights with HBCU-related findings:

- Exec. Order No. 14041, White House Initiative on Advancing Educational Equity, Excellence, and Economic Opportunity Through Historically Black Colleges and Universities (Sept. 3, 2021) ("2021 Executive Order")[1], Ex. 2.[2]

- Exec. Order No. 13532, Promoting Excellence, Innovation, and Sustainability at Historically Black Colleges and Universities (Feb. 26, 2010) ("2010 Executive Order")[3], Ex. 6.

- U.S. Dep't of Educ., Nat'l Center for Edu. Statistics, Fast Facts: Historically Black Colleges and Universities" ("Fast Facts on HBCUs")[4], Ex. 5.

- U.S. Dep't of Educ., Nat'l Center for Educ. Statistics, *Who Can Play? An Examination of NCAA's Proposition 16*, Aug. 1995 ("NCES Brief")[5], Ex. 25.

- A website copy of a pamphlet from the U.S. Department of Education, Office for Civil Rights, Historically Black Colleges and Universities and Higher Education Desegregation (Mar. 1991), ("Pamphlet")[6], Ex. 1.

- A Briefing Report, The Educational Effectiveness of Historically Black Colleges and Universities, before the U.S. Commission on Civil Rights (Nov. 2010), ("Briefing Report")[7], Ex. 4.

These are reliable and not subject to reasonable dispute as they can be accurately and readily determined from government sources whose accuracy cannot reasonably be questioned. As such, the Court should take appropriate judicial notice thereof.

**II.   SUMMARY OF FACTS**

Plaintiff cites to, and asks that the Court take judicial notice of, two Executive Orders. Class Br., pp. 3-5; *see* 2021 Executive Order[8], Ex. 2 and 2010 Executive Order[9], Ex. 6.

---

[1] Also available at https://www.govinfo.gov/content/pkg/DCPD-202100714/pdf/DCPD-202100714.pdf (last accessed Mar. 20, 2023).
[2] All citations to "Ex." refer to exhibits to the Memorandum in Support of Plaintiff's Motion for Class Certification.
[3] Also available at https://www.govinfo.gov/content/pkg/DCPD-201000131/pdf/DCPD-201000131.pdf (last accessed Mar. 20, 2023).
[4] Also available at https://nces.ed.gov/fastfacts/display.asp?id=667 (last accessed Mar. 20, 2022).
[5] Also available at https://nces.ed.gov/pubs95/95763.pdf (last accessed Mar. 20, 2022).
[6] Also available at https://tinyurl.com/a5cktv85 (last accessed Mar. 20, 2022).
[7] Also available at https://files.eric.ed.gov/fulltext/ED513988.pdf (last accessed Mar. 20, 2022).
[8] Also available at https://www.govinfo.gov/content/pkg/DCPD-202100714/pdf/DCPD-202100714.pdf (last accessed Mar. 20, 2023).
[9] Also available at https://www.govinfo.gov/content/pkg/DCPD-201000131/pdf/DCPD-201000131.pdf (last accessed Mar. 20, 2023).

Both Executive Orders reflect the public policy of the United States in recognizing the mission of HBCUs and, in support thereof, set forth the generally-accepted historical background of HBCUs. *See, e.g.*, 2010 Executive Order, § 1; 2021 Executive Order, § 1. Specifically, the 2010 Executive Order provides that HBCUs are recognized as "proven ladders of intergenerational advancement for men and women of all ethnic, racial, and economic backgrounds, especially African Americans." Class Br., p. 5; 2010 Executive Order at p. 1); and the 2021 Executive Order acknowledges that HBCUs are "engines of opportunity", that they "created pathways to opportunity and educational excellence for Black students" in the face of discrimination, and plays an ongoing and "vital role" in education:

> HBCU graduates are barrier-breaking public servants, scientists, artists, lawyers, engineers, educators, business owners, and leaders. For generations, HBCUs have been advancing intergenerational economic mobility for Black families and communities, developing vital academic research, and making our country more prosperous and equitable. HBCUs are proven means of advancement for people of all ethnic, racial, and economic backgrounds, especially Black Americans. HBCUs produce nearly 20 percent of all Black college graduates and 25 percent of Black graduates who earn degrees in the disciplines of science, technology, engineering, and math.
>
> HBCUs' successes have come despite many systemic barriers to accessing resources and opportunities. For example, compared to other higher education institutions, on average, HBCUs educate a greater percentage of lower-income, Pell-grant eligible students, while receiving less revenue from tuition and possessing much smaller endowments.

*Id.* at 1.

Plaintiff also cites to, and asks that the Court take judicial notice of, certain statistics collected and published by the NCES and DOE. The relevant statistics from Fast Facts on HBCUs include the number of HBCUs and the composition of HBCU students over time, including that "non-Black students made up 25% of enrollment at HBCUs" in 2021. Class Br., pp. 4-5; Fast Facts

3

on HBCUs at 1. The relevant statistics from the NCES Brief include that in 1992, only half of Black college-bound seniors met Proposition 16 requirements, compared to more than two-thirds of white students—an even greater disparity than under Proposition 48. Class Br., p. 7; NCES Brief, p. 1.

Plaintiff further cites to, and seeks judicial notice of, the DOE Office for Civil Rights Pamphlet. The relevant facts in the Pamphlet include the history and background of HBCUs. Class Br., p. 3; Pamphlet (Ex. 1), pp. 2-3.

Finally, Plaintiff cites to, and seeks judicial notice of, the Briefing Report. The relevant findings from the Briefing Report include number 5—that "HBCUs have an average graduation rate of 55 percent, which is lower than the 63 percent average graduation rate for non-HBCUs. This may occur, in part, because of HBCUs' generally liberal admission policies and their average student's weaker academic profile. However, for similarly situated students, attendance at an HBCU versus a non-HBCU has no differential effect on an individual African-American student's chances of obtaining a bachelor's degree." Class Br., n.8; Briefing Report (Ex. 4), p. 8.

Judicial notice of the documents and facts contained in the above exhibits is appropriate because it is all public information from the Presidents of the United States or government agencies dedicated to education data and civil rights, and thus not subject to reasonable dispute.

**III.   ARGUMENT**

Rule 201 of the Federal Rules of Evidence provides that a court, at any stage of the proceeding, "may judicially notice a fact that is not subject to reasonable dispute" because it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2), (d); *see also* Fed. R. Evid. 901(b)(7) (public records are appropriate subjects of judicial notice). The same rule states that a court "must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid.

201(c)(2). The information for which Plaintiff seeks judicial notice is relevant here—and is not unique to any individual class member.

### A. Presidential Executive Orders are subject to judicial notice.

This court may take judicial notice of executive orders. "Indeed, it is a well-settled principle that the decision of another court or agency. . . is a proper subject of judicial notice." *Opoka v. I.N.S.*, 94 F.3d 392, 394 (7th Cir. 1996); *see also Hill v. Serv. Emps. Int'l Union*, No. 15 CV 10175, 2016 WL 2755472, at *1 (N.D. Ill. May 12, 2016), *aff'd*, 850 F.3d 861 (7th Cir. 2017) ("Matters of public record—for example . . . executive orders—are subject to judicial notice….") (citation omitted). The 2010 and 2021 Executive Orders are from the Executive Office of the President of the United States and available online from the Federal Register. *See Goico v. United States Gov't*, No. 20-1025, 2020 U.S. Dist. LEXIS 178749, *8-9, 2020 WL 5761438 (D. Kan. Sept. 28, 2020) ("Executive orders are published in the Federal Register. *See* National Archives, Office of the Federal Register, Executive Orders ('After the President signs an Executive order, the White House sends it to the Office of the Federal Register (OFR). The OFR numbers each order consecutively as part of a series and publishes it in the daily Federal Register shortly after receipt.'), at https://www.federalregister.gov/presidential-documents/executive-orders."). Thus, the Court should take judicial notice of 2010 and 2021 Executive Orders and the facts within them, including the generally accepted background of HBCUs.

### B. NCES documents and facts are subject to judicial notice.

Likewise, this Court may take judicial notice of documents and facts published by the NCES. Courts routinely take judicial notice of government sources of information including publicly reported data from the NCES. *See, e.g.*, *Murphy v. Capella Educ. Co.*, 589 Fed. App'x 646, 654, n.7 (4th Cir. 2014) (unpublished) (taking judicial notice of statistics available on the NCES website *without* a request pursuant to Fed. R. Evid. 201(c)(1)); *Cowan v. Bolivar Cnty. Bd.*

*of Educ.*, 186 F. Supp. 3d 564, 581 (N.D. Miss. 2016) (taking judicial notice of population and racial composition data from the NCES).

NCES, who published both Fast Facts on HBCUs and the NCES Brief, is the primary federal entity for collecting and analyzing data related to education.[10] Fast Facts on HBCUs includes summaries of and links to statistics from the Integrated Postsecondary Education Data System (IPEDS), a system of surveys conducted by the U.S. Department of Education. Ex. 5, PLFS-TM-002072 ("Data come from the Integrated Postsecondary Education Data System (IPEDS)"). IPEDS collects data from all schools participating in federal student aid programs, as mandated by the Higher Education Act of 1965.[11] Furthermore, the NCAA's Office of Legislative Services has reviewed the NCES Brief "for accuracy of NCES's interpretation of the NCAA guidelines." *Id.* at 12. Thus, Plaintiff's request for judicial notice of the Fast Facts on HBCUs and the NCES Brief are more than appropriate here.

  **C. Documents published by the DOE's Office of Civil Rights are subject to judicial notice.**

This Court may similarly take judicial notice of the Pamphlet from the DOE's Office of Civil Rights as it is a government agency whose mission is "to ensure equal access to education and to promote educational excellence throughout the nation…."[12] *See, e.g.*, *Moore v. Regents of the Univ. of California*, No. 15-CV-05779-RS, 2016 WL 2961984, at *1 (N.D. Cal. May 23, 2016) (taking judicial notice of a letter from the Office of Civil Rights at the DOE, noting that "it is a record from a government website whose authenticity cannot be reasonably questioned."); *Ollier*

---

[10] National Center for Education Statistics, ABOUT US, https://nces.ed.gov/about/ (last visited Mar. 15, 2023).
[11] https://nces.ed.gov/ipeds/about-ipeds.
[12] OCR, Office for Civil Rights, ABOUT OCR, https://www2.ed.gov/about/offices/list/ocr/aboutocr.html (last visited March 15, 2023).

*v. Sweetwater Union High Sch. Dist.*, 858 F. Supp. 2d 1093, 1110 (S.D. Cal. 2012) (taking judicial notice of a manual published by the Office of Civil Rights, Department of Education).

        **D.**        **Reports by the U.S. Commission on Civil Rights are subject to judicial notice.**

Finally, the Civil Rights Briefing Report was prepared by the U.S. Commission on Civil Rights, "a legally constituted Presidential Citizens study agency ordained by Executive Order to consider race relations and make recommendations." *Oliver v. Kalamazoo Bd. of Educ.*, 368 F. Supp. 143, 201 (W.D. Mich. 1973). Like documents and information from other government agencies, courts have also taken judicial notice of publications from the U.S. Commission on Civil Rights. *See, e.g.*, *id.*; *United Steelworkers of Am., AFL-CIO-CLC v. Weber*, 443 U.S. 193, 199 n.1 (1979) ("Judicial findings of exclusion from crafts on racial grounds are so numerous as to make such exclusion a proper subject for judicial notice.") (citing several reports by the U.S. Commission on Civil Rights); *United States v. Texas Ed. Agency*, 467 F.2d 848, 879 (5th Cir. 1972) ("These authoritative and exhaustive reports [in reference to two reports published by the U.S. Commission on Civil Rights], of which we take judicial notice, detail the educational status of the Mexican-American student. We deem it appropriate to restate some of the findings of the Commission's studies because they set the context in which this Court must consider the instant appeal.").

The Civil Rights Briefing Report reflects a summary of a briefing by distinguished experts to members of the Commission on the educational effectiveness of HBCUs, as the title implies. As such, "[i]ts concluding remarks are a clear and direct statement[s]. . . . It is worthy of judicial notice and deliberate consideration." *Oliver*, 368 F. Supp. at 201 (referencing a report by the U.S. Commission on Civil Rights).

## IV. CONCLUSION

The accuracy of the facts in the exhibits are not subject to reasonable dispute because the facts can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. So, there can be no dispute that any of the aforementioned documents are subject to judicial notice. Plaintiff thus requests this Court take judicial notice of the exhibits submitted with Plaintiff's Motion for Class Certification.

Dated: March 24, 2023

Respectfully submitted,

By: /s/ *Elizabeth A. Fegan*

Elizabeth A. Fegan (admitted *pro hac vice*)
**FEGAN SCOTT LLC**
150 S. Wacker Dr., 24th Floor
Chicago, IL 60606
Telephone: (312) 741-1019
Facsimile: (312) 264-0100
beth@feganscott.com

Melissa R. Clark (admitted *pro hac vice*)
**FEGAN SCOTT LLC**
140 Broadway, 46th Fl.
New York, NY 10005
Telephone: (347) 353-1150
Facsimile: (312) 264-0100
melissa@feganscott.com

Ling S. Wang (admitted *pro hac vice*)
**FEGAN SCOTT LLC**
100 S. Fifth Street, Suite 1900
Minneapolis, MN 55402
Telephone: (651) 432-4468
Facsimile: (312) 264-0100
ling@feganscott.com

LaRuby May (admitted *pro hac vice*)
Je Yon Jung (admitted *pro hac vice*)
**MAY JUNG, LLP**
1100 W. Town & Country Road
Suite 1250
Orange, CA 92868
Telephone: (818) 869-6476
Facsimile: (202) 618-8282
jeyon@mayjung.com
laruby@mayjung.com

William N. Riley, Bar No.: 14941-49
Russell B. Cate, Bar No.: 27596-29
**RILEYCATE, LLC**
11 Municipal Drive, Suite 200
Fishers, IN  46038
Telephone: (317) 588-2866
Facsimile:  (317) 458-1875
wriley@rileycate.com
rcate@rileycate.com

*Attorneys for Plaintiffs and
the Proposed Class*