UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| TROYCE MANASSA, individually and on behalf of all others similarly situated, | )<br>)<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) No. 1:20-cv-03172-RLY-MJD<br>) |
| NATIONAL COLLEGIATE ATHLETIC ASSOCIATION, | )<br>)<br>) |
| Defendants. | )<br>) |

**ENTRY ON PENDING MOTIONS**

In 2004, the National Collegiate Athletic Association ("NCAA") designed and implemented the Academic Performance Program ("APP") for academic eligibility, which requires Division I ("DI") sports teams to meet certain thresholds for academic performance. The failure to meet these standards results in penalties, including a team ban from postseason[1] play.

Plaintiff, Troyce Manassa, is a former DI Black basketball player at Savannah State University ("SSU"), one of many Historically Black Colleges and Universities ("HBCUs") subject to the NCAA's APP rules. Plaintiff alleges the NCAA knew the APP would have a disparate impact on HBCUs, resulting in postseason bans, and implemented

---

[1] "Postseason is defined as any competition not considered regular season competition per Bylaw 17 [e.g., NCAA championships, national collegiate championships, football bowl games]" and the like. (Filing No. 230-1, Nguyen Decl., Ex. B, 2014-16 NCAA Division I Committee on Academics Operating Manual at 3K-10).

it anyway. Plaintiff brings two claims against the NCAA. First, Plaintiff asserts the NCAA intentionally discriminates against Black student-athletes at HBCUs on DI athletic teams through the adoption and continued enforcement of the APP, in violation of 42 U.S.C. § 1981. Second, Plaintiff asserts the NCAA conspired to interfere with his civil rights in violation of § 1985(3). Plaintiff seeks compensatory, punitive, and other damages on behalf of himself and a putative liability class defined as:

> All Black student-athletes who participated in Division I HBCU athletic teams that were subject to a postseason access ban penalty due to the NCAA's Academic Performance Program from the 2010-11 school year through the date of class certification.

(Filing No. 206, First Am. Class Action Compl. ¶ 181). He also seeks a prospective injunctive relief class defined as "All Black student-athletes participating in Division I HBCU athletic teams since December 10, 2020." (*Id.* ¶ 182).

Plaintiff filed a motion for class certification on March 24, 2023. Less than three months later, the NCAA filed a motion for summary judgment on four grounds: (1) Plaintiff lacks standing to seek injunctive relief and, consequently, to represent an injunctive relief class; (2) Plaintiff's §§ 1981 and 1985 claims are time-barred; (3) Plaintiff's § 1981 individual class claims fail as a matter of law because Plaintiff has not raised a genuine issue of material fact as to the essential elements of discriminatory intent, impaired contractual rights, but-for causation, or damages; and (4) Plaintiff's § 1985 and class claims fail as a matter of law because they are wholly derivative of his § 1981 claims. Plaintiff cross moves for partial summary judgment, asking the court to find as a matter of law that a contractual relationship exists between Plaintiff and the

class members and the NCAA for purposes of the Plaintiff's individual and class § 1981 claims. Plaintiff also moves for leave to file a surreply to the NCAA's reply brief in support of its motion for summary judgment.

The court, having reviewed the parties' arguments, designated evidence, and relevant law, finds Plaintiff lacks standing to represent an injunctive relief class, and that Plaintiff's §§ 1981 and 1985 claims are time-barred. The NCAA's motion for summary judgment is **GRANTED**, Plaintiff's cross motion is **DENIED AS MOOT**, and Plaintiff's motion for leave to file a surreply is **DENIED AS MOOT**. Furthermore, because Plaintiff's §§ 1981 and 1985 claims are time-barred, he is not an adequate representative of the putative class. Plaintiff's motion for class certification is therefore **DENIED**.

**I.     Background**

    **A.     The NCAA and its Academic Performance Program**

The NCAA is a member association of more than 1,000 colleges and universities. (Filing No. 230-1, Nguyen Decl. ¶ 3). The NCAA's DI membership consists of approximately 350 member institutions, including 23 HBCUs, and the 32 conferences in which all DI sports teams compete. (*Id.*; Filing No. 231-2, Yurk Decl. ¶ 4). DI schools field more than 6,700 athletics teams and provide opportunities for more than 187,000 student-athletes to compete in intercollegiate sports each year. (Nguyen Decl. ¶ 3).

The NCAA's DI member institutions adopt and enforce the rules and regulate DI college sports. (*Id.* ¶ 4). Consistent with this responsibility, in 2004, the NCAA DI Board of Directors, based on recommendations from the DI Committee on Academic Performance, voted to establish the APP—an academic program designed to measure DI

3

student-athletes academic performance and progress towards graduation. (Yurk Decl. ¶ 10; Filing No. 230-4, Harrison Decl. ¶ 11; Nguyen Decl., Ex. A, 2015-16 NCAA Division I Manual at 182–185).

The APP employs a team-based metric called the Academic Progress Rate ("APR") to measure the academic performance of DI athletic teams. (Nguyen Decl. ¶ 9 & Ex. B, 2014-16 NCAA Division I Committee on Academics Operating Manual at 3K-9). For each academic term, each student-athlete that receives athletics-based financial aid is eligible to earn one "retention" point for returning to school as a full-time student, and one "eligibility" point if that student is academically eligible to compete according to institution, conference, and NCAA requirements. (Nguyen Decl. ¶ 10). At the start of each academic year, each team's APR is calculated by adding the total points earned by the student athletes in the team's APR cohort, dividing that number by the total points possible, then multiplying by 1000 to achieve the final APR (i.e., points earned/points possible x 1000). (*Id.*).

A team's final APR score is comprised of four years of APR data, resulting in a multiyear rate. (*Id.*). Subject to postseason access filters, adjustments, and waivers that may allow a team to avoid losing postseason access, teams with a multiyear APR below 930 may lose postseason eligibility. (*Id.* ¶¶ 11, 29 & Ex. B at 4-10). An APR below 930 approximates that a team will ultimately have a 50% graduation success rate. (Filing No. 231-3, Paskus Decl. ¶ 13). All DI teams, including HBCUs, are "subject to the use of the APR benchmark as an access point for postseason competition." (Nguyen Decl., Ex. B at 4-36).

4

The APP negatively impacts more HBCU DI sports teams than non-HBCU DI sports teams. For example, in the 2013-2014 academic year, 10 HBCU teams and 3 non-HBCU teams were banned from postseason play; in the 2016-2017 academic year, 21 HBCU teams and 1 non-HBCU team were banned from postseason play; and in the 2020-2021 academic year, 11 HBCU teams and 4 non-HBCU teams were banned from postseason play. (Filing No. 244-5, Siskin Report at 17). For those academic years, the percentage of teams with postseason penalties that were from an HBCU were 76.92%, 95.45%, and 73.33%, respectively. (*Id.*).

The NCAA was aware that the APP and its APR have had a differential impact on HBCUs. (Filing No. 243-4, Paskus Dep. at 46 (stating the APR benchmark shows "what [he] would consider differential impacts for HBCUs, for LRIs, limited-resource institutions"); *id.* at 181 (stating "there hasn't been any point in time that I've looked at the data that the HBCUs weren't lower than non-HBCUs on APR in aggregate"); Filing No. 243-5, Petr Dep. at 184 (stating "there was a differential impact among those sets of institutions, at least in the percent below 930, that had been evident for some time"); *id.* at 193 ("We've discussed ad nauseam that there was a differential impact observed prior to COVID, and I guess our thought was it might get worse if – in the COVID era.").

B.   **Plaintiff**

Plaintiff was a Black student-athlete who played basketball for SSU in Georgia during the 2015-16 and 2016-17 seasons—his junior and senior years. (Filing No. 230-2, Manassa Dep. at 40–41; Yurk Decl. ¶ 29). Before transferring to SSU as a junior, Plaintiff signed a National Letter of Intent, whereby SSU awarded him a full athletic

5

scholarship for just the 2015-16 academic year.  (Manassa Dep. at 57–58, 78 & Ex. 7, Pl.'s National Letter of Intent).

After the 2014-15 academic year, SSU men's basketball team posted a multiyear APR of 892, which rendered it ineligible for postseason competition during the 2016-17 season.  (Yurk Decl. ¶ 31; Siskin Report ¶ 13 (explaining that the ban is applied in the academic year two years after the team fails the APR test, i.e., the year the ban was earned.)).  According to SSU personnel, Plaintiff's team was notified at least three times in 2015 that his basketball team would likely not be able to play in the 2016-17 postseason.  (Filing No. 231-8, Thompson Dep. at 112–14, 116–21; Filing No. 231-5, Still Decl. ¶ 20).  Plaintiff was notified his team could not play in the 2016-17 postseason on April 26, 2016, after his junior year season ended.  (Manassa Dep. at 106; Filing No. 230-3, Pl.'s Resp. to Def.'s Second Set of Interrogs., Answer No. 10; Filing No. 244-6, Manassa Decl. ¶ 8).

Plaintiff graduated from SSU in December 2017.  (Manassa Dep. at 187–88).  Plaintiff went on to play for the Khangarid basketball team in Mongolia in 2018, the Southern Peninsula Basketball Association in Australia in 2019, and the Western Port Basketball Association in Australia in 2022.  (*Id.* at 218–20, 242–55, 267, 292–93).

Plaintiff filed this action on December 10, 2020.  (Filing No. 1, Compl.).

## II.     Preliminary Issue

Federal Rule of Civil Procedure 23(c) requires courts to rule on the issue of class certification "at an early practicable time," which is typically before deciding any merits questions.  Fed. R. Civ. P. 23(c).  The Seventh Circuit has acknowledged, however, that

there are situations where it might be appropriate to rule on a motion for summary judgment prior to addressing class certification. *Cowen v. Bank United*, 70 F.3d 937, 941 (7th Cir. 1995) (Rule 23(c) "requires certification as soon as practicable, which will usually be before the case is ripe for summary judgment. But 'usually' is not 'always,' and 'practicable' allows for wiggle room.").

One situation in which ruling on a motion for summary judgment before class certification may be appropriate is where the plaintiff's claims lack merit. *Chavez v. Ill. State Police*, 251 F.3d 612, 630 (7th Cir. 2001); *see also Robinson v. Sheriff of Cook Cnty.*, 167 F.3d 1155, 1158 (7th Cir. 1999) ("But if the [plaintiff's] claim is a *clear* loser at the time he asks to be made class representative, then approving him as class representative can only hurt the class.") (emphasis in original). Because Plaintiff's claims are barred by the statute of limitations, the court finds it in the interest of justice to decide the NCAA's motion for summary judgment prior to addressing class certification.

### III. Summary Judgment Standard

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine dispute of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Skiba v. Ill. Cent. R.R.*, 884 F.3d 708, 717 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The court views the facts in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor. *Id.*

### IV. The NCAA's Motion for Summary Judgment

### A. Standing

The NCAA first argues Plaintiff lacks standing to assert injunctive relief.

To establish Article III standing, a plaintiff must show: "(1) injury in fact, which must be concrete and particularized, and actual and imminent; (2) a causal connection between the injury and the defendant's conduct; and (3) redressability." *Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1074 (7th Cir. 2013) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). The injury-in-fact prong requires a plaintiff seeking prospective injunctive relief to show a "real and immediate" threat of future violations of his rights. *Id.* (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)).

As the NCAA points out, Plaintiff's DI basketball career ended when he finished collegiate basketball in March 2017 and graduated from SSU in December 2017. He did not file suit until long after he became ineligible to play college basketball. Consequently, Plaintiff will never again be subject to the NCAA rules as a student-athlete. Accordingly, because he cannot show a "real and immediate" threat of future violations of his rights, Plaintiff lacks standing to seek injunctive relief. Therefore, his request for injunctive relief fails as a matter of law.

### B. Statute of Limitations

Second, the NCAA argues Plaintiff's claims are barred by the statute of limitations. "Section 1981 claims must be filed within four years of the alleged discriminatory act." *Riley v. Elkhart Cmty. Schs.*, 829 F.3d 886, 891 (7th Cir. 2016) (citing 28 U.S.C. § 1658); *East v. Dimon*, No. 2:19-CV-451-HAB, 2021 WL 929668, at *2 (N.D. Ind. Mar. 11, 2021) ("Plaintiff's claims must be limited to conduct occurring

8

within four years of the filing of her suit."). For § 1985 claims, "the statute of limitations is determined by the law of the state in which the violation took place." *Hoagland v. Town of Clear Lake, Ind.*, 415 F.3d 693, 699–700 (7th Cir. 2005). Section 1985 claims are subject to the statute of limitations for personal injury claims. *Mann v. Arnos*, 186 N.E.2d 105, 115-16 (Ind. Ct. App. 2022); *Higdon v. Tusan*, 746 F. App'x 805, 814 (11th Cir. 2018) (same). In both Indiana and Georgia, the statute of limitations for personal injury claims is two years. Ind. Code § 34-11-2-4; Ga. Code § 9-3-33. Accordingly, Plaintiff's § 1981 claim is governed by a four-year statute of limitations, and his § 1985 claim is governed by a two-year statute of limitations.

### 1. Plaintiff's Claims Accrued on April 26, 2016

The parties dispute when the period of limitation accrued. The NCAA argues Plaintiff's claims accrued on April 26, 2016, when he learned his team would not be able to play in the 2016-17 postseason. (Manassa Dep. at 106 ("Q: So April of 2016. Is that when you found out that you were—that SSU men's basketball team had received a post-season penalty? A: Yeah, this is the date that I—that I found out."); Pl.'s Response to Def.'s Second Set of Interrogatories, Answer No. 10 (Plaintiff confirming that he learned that SSU's men's basketball team did not meet the APR on April 26, 2016)). Plaintiff responds his claims accrued no later than "October 2020, when he first became aware that the NCAA discriminated against him on the basis of race via the APP." (Filing No. 243-1, Pl.'s Resp. at 55; *see also* Manassa Decl. ¶¶ 10–11 (stating he first learned in October 2020 that the penalties related to the APP, including the postseason ban, were potentially

9

discriminatory when a former teammate contacted him about a possible lawsuit related to the same)).

"A plaintiff's cause of action accrues when he discovers that he has been injured, not when he determines that the injury was unlawful." *Thelen v. Marc's Big Boy Corp.*, 64 F.3d 264, 267 (7th Cir. 1995) (discrimination claim accrued when plaintiff was terminated even though he did not suspect age discrimination at the time). Under this rule, § 1981 claims accrue when the act of which the plaintiff complains occurs, not when the plaintiff learns or suspects that the act was allegedly discriminatory, or when the effects of the alleged discrimination are felt. *Del. State Coll. v. Ricks*, 449 U.S. 250, 258 (1980) (Section 1981 claim accrued "at the time the tenure decision was made and communicated to [plaintiff] . . . even though one of the *effects* of the denial of tenure—the eventual loss of a teaching position—did not occur until later.").

Here, Plaintiff's claims accrued when he learned of the postseason penalty, not when he claims he first learned of a potential lawsuit that the APP might be discriminatory. Consequently, his claims accrued on April 26, 2016. Because he did not file the present action until more than four years later, on December 10, 2020, his §§ 1981 and 1985 claims are time-barred.

### 2. Continuing Violation Doctrine

Plaintiff tries to avoid this conclusion by arguing, in the alternative, that his claims are timely under the continuing violation doctrine. "The continuing violation doctrine allows a plaintiff to get relief for a time-barred act by linking it with an act that is within the limitations period." *Selan v. Kiley*, 969 F.2d 560, 564 (7th Cir. 1992). "For purposes

of the limitations period, courts treat such a combination as one continuous act that ends within the limitations period." *Id.*; *see also Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002) (holding the continuing violation doctrine applied to hostile environment claims because "[t]heir very nature involves repeated conduct" that "occurs over a series of days or perhaps years"). Importantly, the doctrine does not apply to discrete acts that are easy to identify, such as termination, failure to promote, denial of transfer, or refusal to hire. *Nat'l R.R. Passenger Corp.*, 536 U.S. at 114; *see also Greenhill v. Vartanian*, 917 F.3d 984, 988 (7th Cir. 2019) (rejecting plaintiff's attempt to invoke the continuing violation doctrine for discrete event because "discrete wrongs hav[ing] continuing consequences do not extend the time to sue").

Plaintiff argues the continuing violation doctrine applies because the harm, which he says is the denial of equal treatment resulting from the APP—"continued the entire time he was subject to the APP, beyond the postseason ban, until he graduated in 2017." (Pl.'s Resp. at 58). But the only wrong Plaintiff has claimed in this action is the postseason penalty that was applied to SSU's 2016-17 men's basketball team. (First Am. Class Action Compl. ¶¶ 163, 165–66, 169, 217).[2] Imposition of the postseason penalty was a discrete event that was announced and occurred at an easily identifiable time. Indeed, Plaintiff indisputably knew about the penalty on April 26, 2016. Since Plaintiff's claims are based on a discrete alleged wrong, the continuing violation doctrine cannot save his claims.

---

[2] SSU transitioned to Division II in 2019, so the SSU basketball team is no longer subject to the APP. (First Am. Class Action Compl. ¶ 31).

### 3. Tolling Doctrines

Lastly, Plaintiff argues there is a genuine issue of material fact as to whether equitable tolling and equitable estoppel apply to toll the statute of limitations.

"Equitable tolling permits a plaintiff to avoid the bar of the statute of limitations if despite the exercise of all due diligence he is unable to obtain vital information bearing on the existence of his claim." *Shropshear v. Corp. Couns. of the City of Chi.*, 275 F.3d 593, 595 (7th Cir. 2001). A plaintiff "is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Socha v. Boughton*, 763 F.3d 674, 683 (7th Cir. 2014) (quoting *Holland v. Florida,* 560 U.S. 631, 649 (2010)). Plaintiff bears the burden of establishing both elements. *Id.* Plaintiff cannot satisfy this burden with "mere conclusory allegations of diligence"; instead, he must offer "specific evidence." *Mayberry v. Dittmann*, 904 F.3d 525, 531 (7th Cir. 2018).

Here, Plaintiff asserts he "could not have gathered sufficient information to discover his injuries without the assistance of experts and discovery." (Pl.'s Resp. at 59). This conclusory allegation is insufficient to show he qualifies for equitable tolling. Plaintiff has not explained, nor shown with specific evidence, his efforts to discover information necessary to file his claim. Moreover, Plaintiff wholly fails to address the "extraordinary circumstances" that prevented him from timely filing suit. Accordingly, Plaintiff's claims are not subject to equitable tolling.

Equitable estoppel—sometimes called fraudulent concealment—applies "if the defendant takes active steps to prevent the plaintiff from suing in time, as by promising

not to plead the statute of limitations." *Shropshear*, 275 F.3d at 595.  In the law of limitations, fraudulent concealment "denotes efforts by the defendant, above and beyond the wrongdoing upon which plaintiff's claim is founded, to prevent, by fraud or deception, the plaintiff from suing in time."  *Id.*; *Obiefuna v. Hypotec, Inc.*, 451 F. Supp. 3d 928, 942 (S.D. Ind. 2020) (same).

Plaintiff asserts that "the NCAA took active steps to represent to the public time and time again that its program was not discriminatory against Black HBCU students." (Pl.'s Resp. at 59).  But he does not specify what "active steps" the NCAA took and how those steps prevented *him* from suing on time.  *Cada*, 920 F.2d at 451.  Accordingly, Plaintiff's claims are not subject to equitable estoppel, and his §§ 1981 and 1983 claims are time-barred as a matter of law.

**V.     Plaintiff's Motion for Class Certification**

Federal Rule of Civil Procedure 23 prescribes a two-step analysis to determine whether class certification is appropriate.  First, a plaintiff must satisfy Rule 23(a)'s requirements of numerosity, commonality, typicality, and adequacy of representation.  *Lacy v. Cook Cnty., Ill.*, 897 F.3d 847, 864 (7th Cir. 2018).  The failure to meet any one of these requirements precludes certification of a class.  *Retired Chi. Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir. 1993).  Second, the action must also satisfy one of the conditions of Rule 23(b).  *Lacy*, 897 F.3d at 864.

At issue is whether Plaintiff is an adequate representative of the class.  To be an adequate representative, the "named plaintiff must be a member of the putative class and have the same interest and injury as other members."  *Beaton v. SpeedyPC Software*, 907

F.3d 1018, 1027 (7th Cir. 2018)). A named plaintiff "might be inadequate if he is subject to a substantial defense unique to him." *Id.*

Plaintiff is subject to a unique defense—the statute of limitations, which bars his §§ 1981 and 1985 claims. Accordingly, he is not an adequate class representative of the liability class. *See Payne v. Abbott Labs.*, 999 F. Supp. 1145, 1151 (N.D. Ill. 1998) (holding plaintiff could not represent class because his race discrimination claim was time-barred); *Robinson v. Sheriff of Cook Cnty.*, No. 95 C 2205, 1996 WL 417559, at *2 (N.D. Ill. July 22, 1996) (plaintiff could not represent class because she did not file a charge of discrimination with the EEOC).

As for the injunctive relief class, Plaintiff seeks to appoint J'Ta Freeman, who was dismissed for lack of standing on September 13, 2021. Plaintiff cannot have Freeman appointed as class representative because he has neither sought to reverse the court's September 2021 Order dismissing Freeman, nor successfully moved to amend the Complaint with Freeman included.³ Consequently, there is no named representative of the putative injunctive relief class.⁴

---

³ In Plaintiff's brief in support of his Motion for Class Certification, he requests leave to add an additional class representative in a footnote. "However, by failing to raise this issue other than by a passing reference in a footnote, [Plaintiff] has waived [the issue]." *See White v. United States*, 8 F.4th 547, 552 (7th Cir. 2021); *Chi. Joe's Tea Room, LLC v. Village of Broadview*, 894 F.3d 807, 817 (7th Cir. 2018).

⁴ Notably, Plaintiff's counsel filed a new putative class action with a new named plaintiff. *See McKinney v. NCAA*, No. 1:23-cv-01372-RLY-MJD. The *McKinney* Class Action Complaint asserts the same claims and seeks the same injunctive relief as those presented in this putative class action but includes a different class period—"during the academic year 2022-23 through the date of class certification." (No. 1:23-cv-01372, Filing No. 1, *McKinney* Compl. ¶ 163).

14

Because there are no adequate representatives of the putative liability or injunctive relief classes, Plaintiff's motion for class certification must be **DENIED**.

## VI.  Conclusion

For the reasons explained above, the NCAA's Motion for Summary Judgment (Filing No. 228) is **GRANTED**.  Plaintiff's §§ 1981 and 1985 claims are **DISMISSED WITH PREJUDICE**.  Plaintiff's Cross Motion for Partial Summary Judgment (Filing No. 239) is **DENIED AS MOOT**, and Plaintiff's Motion for Class Certification (Filing No. 177) is **DENIED**.  Plaintiff's Motion for Leave to File a Surreply (Filing No. 275), which seeks to address the NCAA's argument that Plaintiff changed his theory of injury in his response brief, is **DENIED AS MOOT**.

**SO ORDERED** this 19th day of October 2023.

                                                RICHARD L. YOUNG, JUDGE
                                                United States District Court
                                                Southern District of Indiana

Distributed Electronically to Registered Counsel of Record.